# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAZE CLAN INC., | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| TURNER TENNEY p/k/a "TFUE" | |
| Defendant. | **Jury Trial Demanded** |

FaZe Clan Inc. ("Plaintiff" or "FaZe Clan"), by its attorneys, Dentons US LLP, for its Complaint against Turner Tenney p/k/a "TFue" ("Defendant" or "Tenney"), states as follows:

## INTRODUCTION

1.      FaZe Clan is compelled to bring this litigation because Tenney, a member of FaZe Clan's Fortnite esports team, has not only betrayed FaZe Clan and his teammates, he has caused them serious damage and stands to do more.

2.      Tenney joined FaZe Clan in April 2018.  He was an exciting prospect, so  FaZe Clan offered Tenney a written contract—the Gamer Agreement, which Tenney negotiated and signed.  FaZe Clan welcomed Tenney and promptly began the process of training, promoting, endorsing and supporting him in his gaming career.  As part of the FaZe Clan team – and free from the distractions that burden many solo players – FaZe Clan taught Tenney how to be more than just a skilled gamer.  FaZe Clan taught him to be a professional.  It schooled Tenney in the business, social media and gaming practices that have made FaZe Clan successful.  And he certainly has been successful.  It is understood that Tenney has earned over $20 million since joining FaZe Clan in April 2018, when he was earning virtually nothing.

3.      Tenney's social media statistics demonstrate the massive impact FaZe Clan has had on his career.  The announcement that Tenney had joined FaZe Clan went out on April 30,

2018.  The news of Tenney's falling out with Faze Clan went public in May of 2019.  The

following chart shows Tenney's Twitter followers per month during this time:



The chart below shows Tenney's YouTube subscribers during the same period:







The chart below shows Tenney's Twitch subscribers during the same period:





4.      Tenney's contract with FaZe Clan proved extremely lucrative for Tenney, who began leveraging FaZe Clan's name and reputation to generate deals.  Indeed, FaZe Clan believes that Tenney has generated – and secreted away – over $20 million dollars from gaming, endorsements and sponsorships over the course of his relationship with FaZe Clan.  However, Tenney shared almost none of this income with FaZe Clan.

5.      In an effort to maintain a positive relationship with Tenney, FaZe Clan offered several revised versions of the Gamer Agreement beginning just five months after entering into the agreement.  Some of these versions included a seven-figure annual salary, or no revenue split for FaZe Clan at all.  Tenney, however, wanted more – much more – and rejected each of these offers.

6.      Though a rookie athlete, Tenney was an adult when he signed his contract.  An initial rookie contract is a risk that the organization takes; most young players' careers never take off.  The revenue splits in Tenney's Gamer Agreement reflected those risks, and the reality that Tenney was still in a learning and growing phase of his career.  If Tenney was able to establish himself as a bona fide, consistent, professional and successful esports athlete with a strong social media following, then he would have the opportunity to negotiate more favorable terms (or even to leave FaZe Clan after his contract, if he so chose).  In this respect, Tenney was like so many other young athletes and professionals.

7.      FaZe Clan valued Tenney as one of its early stars and a talented esports athlete.  Hoping to set a great example for the team and the growing gaming community, FaZe Clan offered Tenney substantial increases in his revenue shares and expressed its willingness to relieve Tenney of many of his formal obligations.  Tenney was still not satisfied.  In fact, after trying time and again to communicate with Tenney, his father and his lawyers, it became clear

that nothing would satisfy Tenney and his advisors.  It turns out, Tenney wanted nothing less than to tear up the agreement he made with FaZe Clan so he could take all he had learned from FaZe Clan, and all that FaZe Clan had helped to build, and keep everything for himself.

8.      **Tenney does not hide from these facts.  To the contrary, he recently posted a YouTube video with the caption: "I want to make it very clear that I tried multiple times for multiple months to get out of this contract.  This is what had to be done."**

9.      Tenney will stop at nothing to get his way.  In breach of the Gamer Agreement, Tenney has:  filed lawsuits in the improper forum of California, after Tenney agreed in the Gamer Agreement that litigation would occur exclusively in New York; disparaged FaZe Clan; stolen FaZe Clan's confidential information; interfered with FaZe Clan's contracts and business relationships; and he is advocating for others to leave and compete against FaZe Clan.

10.     Against this backdrop, FaZe Clan brings the instant lawsuit to enforce its rights, and to hold Tenney to account for his choices and actions.

## PARTIES

11.     FaZe Clan is a Delaware corporation with its principal place of business at 1800 Vine Street, 3rd Floor, Los Angeles, CA 90028.

12.     Tenney is an individual.  Upon information and belief, Tenney currently resides in Florida.  However, recent information and press reports suggest that Tenney may be changing his residence to New Jersey.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, because the parties

are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     Venue is appropriate because the parties have agreed that the state and federal courts of New York City are the <u>exclusive</u> venues for any dispute brought under the Gamer Agreement.  In the Gamer Agreement, Tenney consented to personal jurisdiction in this Court:

> This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of laws principles.  The Parties submit ***exclusively*** to the state or federal courts located in ***New York, NY*** for any claim hereunder and each Party ***consents to the jurisdiction*** thereof. [Emphasis added.]

At the time of the Gamer Agreement, Tenney lived in Florida and FaZe Clan was headquartered in California.  New York is a predictable and neutral venue for the enforcement of the Agreement, and specifically permits non-residents to choose New York jurisdiction.

## GENERAL ALLEGATIONS

**A.     Background on FaZe Clan and its Trade Secrets**

15.     FaZe Clan is an esports and entertainment organization that competes in video game tournaments and creates social media content.  FaZe Clan has millions of followers on various social media platforms.

16.     FaZe Clan was founded in 2010, and it came to prominence as videos of its members playing video games became popular on the internet.  Presently, FaZe Clan is one of the most popular esports organizations in the world, with a devoted fan base that follows FaZe Clan and its members on social media, watches FaZe Clan's videos and media content, and supports FaZe Clan at esports competitions.

17.     FaZe Clan's relationship with its gamers and media personalities is a cornerstone of the organization.  While it is true that each gamer's individual talents and personalities are important to FaZe Clan's success, it also is true that FaZe Clan's investment in and support of its gamers are important to their success as well.  Indeed, FaZe Clan has a track record of creating and/or improving the profile of esports stars and personalities.

18.     FaZe Clan's innovativeness and its trade secret, confidential and proprietary processes and information are critical to its success.  For example, FaZe Clan has developed innovative ways to create and cross-promote videos and media content, including techniques for identifying content that its fans will want to view.  FaZe Clan has unique training methods and distinctive approaches to team-building and gaming strategy that maximize the team's chances of success.  FaZe Clan has also developed groundbreaking methods and techniques for enhancing (and in some cases, creating) the popularity of gaming-related media personalities and professionalizing their approach.  Moreover, FaZe Clan has cultivated, through diligent efforts over time, relationships with numerous business partners, sponsors and advertisers, and it has obtained non-public information about its business partners, sponsors and advertisers, including information concerning their contracts, preferences, business practices and contact information.  FaZe Clan also has valuable non-public information about gamers, industry members, contracts, business plans and forecasts.  The foregoing techniques, methods and information have independent economic value, are not readily known or ascertainable by FaZe Clan's competitors, and are kept secret by FaZe Clan.  This trade secret and/or confidential and proprietary information is expressly protected by the Gamer Agreement.

B.      **The Gamer Agreement**

19.      Tenney is a talented esports gamer, who is especially skilled at playing the game

Fortnite.

20.      In April of 2018, FaZe Clan invited Tenney to join FaZe Clan and signed Tenney

to a "rookie" contract: the April 27, 2018 Gamer Agreement.  Under the Gamer Agreement,

Tenney became an independent contractor (*see* Gamer Agreement at 3-4) who would provide

professional services to FaZe Clan, including playing on FaZe Clan's team, participating in

training activities, and participating in various promotional, marketing and social media activities

(*see* Gamer Agreement at 1-2).  Tenney was not required to provide those services from any

particular location; indeed, it is believed that he provided such services from multiple locations,

including his then-home in Florida.  FaZe Clan agreed to pay compensation to Tenney in the

form of: (1) a monthly fee, (2) a share of income from cash prizes won at esports tournaments,

and (3) a share of revenue from certain merchandise, apparel, brand deals, and other activities.

21.      The Gamer Agreement had an initial term of six-months, which was automatically

extended in October 2018 for an additional three years.  The term of the Gamer Agreement lasts

through October 27, 2021.

22.      The Gamer Agreement provides that, during the term of the agreement, Tenney

would not compete against FaZe Clan or its sponsors and advertisers.  Paragraph 5 of the Gamer

Agreement's Terms & Conditions states, in relevant part:

> a.  Throughout the Term (the "Exclusivity Period"), unless Gamer
> has obtained Company's prior written consent, Gamer shall not: (i)
> provide services or otherwise work for or be employed by a
> gaming company or other gaming brands or any companies that
> already have an agreement with Company; (ii) appear in, sponsor
> or be sponsored by, or otherwise promote or endorse, directly or
> indirectly, any brands, products or services other than the brands,
> products and services approved in writing by Company; (iii)

promote, sponsor, endorse (using Gamer's Name and Likeness or otherwise) or render services for or on behalf of any companies with products or services competitive with a product or service of Company or a sponsor or advertiser of Company.

23.     The Gamer Agreement also required Tenney to avoid disparaging FaZe Clan, bringing negative attention to FaZe Clan or making unauthorized public statements about FaZe Clan.  For example, paragraph 9.b. of the Terms & Conditions states in relevant part: "Other than as provided for in this subparagraph (b), Gamer and Gamer's representatives shall not issue any press releases nor make any other statements about Gamer's Services, the Team, Company, its affiliates, agents and/or employees, or any other party involved in the Services (e.g. the sponsors) in any media (including, without limitation, any online or print communications) without Company's prior written consent."  Furthermore, FaZe Clan's Social Media Policy (attached as Schedule I to the Gamer Agreement, to which Tenney expressly agreed to abide in paragraph 2.b. of the Gamer Agreement) states in relevant part:

1.  You will not bring Company (or any of its employees, agents, clients, talent, representatives or partners ("Affiliates")) into public disrepute, contempt, scandal or ridicule. …

4.  You will not post any inappropriate, defamatory … potentially libelous or slanderous, infringing, harmful, harassing, threatening, illegal…or other material or information that any site views as objectionable to such site, including but not limited to text, graphics, audio and video files.

5.  You will not defame, abuse, harass, stalk, threaten, embarrass, cause distress, unwanted attention or discomfort or otherwise violate the legal rights (including without limitation rights of privacy and publicity) of any other user or representative of such site, or Company. …

10.  You will not directly or indirectly disparage any other Team member, Company or any of its affiliates.

24.     In the Gamer Agreement, Tenney also acknowledged that he would receive access to FaZe Clan's confidential information, and Tenney became obligated to maintain the secrecy of that confidential information.  Specifically, paragraph 9 of the Terms & Conditions states:

> a.  Gamer acknowledges and agrees that Gamer will be provided with and/or gain access to and become acquainted with non-public, proprietary and/or confidential information concerning the finances, operations, sponsors, technology, sales and marketing techniques, customers, suppliers, knowhow, business plans, prospects of and other information related to: (i) the Company's business, operations and/or sponsors, (ii) the Company's business partners, including without limitation: (A) confidential personal and/or business information and business secrets of the Company; (B) trade secrets of the Company; (C) plans, prospects, policies, practices, and procedures of the Company; (D) licenses and agreements of any nature; (E) the existence of discussions between the parties related to the Agreement and (iii) all other proprietary and confidential information of every nature and source (collectively, the "Confidential Information").  Gamer shall not disclose to any third party any information with respect to such Confidential Information, except: (i) where such information has already been released to the public by Company; (ii) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction or government agency, provided Gamer notifies Company of said law or order; or (iii) on a must-know basis to Gamer's representatives upon the express condition that Gamer shall in such cases secure said representatives' agreement to comply with this confidentiality restriction.  The terms of the Agreement shall be deemed Confidential Information of the Company.
>
> b. … Gamer and/or Gamer's representatives may not disclose any Confidential Information relating to Gamer's Services or the Agreement. …

25.     Tenney's confidentiality obligations set forth in the Gamer Agreement "shall survive the Term and/or any termination of the Agreement for a period of three (3) years from such expiration or termination date."  *See* Terms & Conditions ¶ 9.d.

26.     The Gamer Agreement contains provisions concerning FaZe Clan's rights to certain intellectual property, including Tenney's name and likeness.  For example, in the Gamer

Agreement, Tenney granted to FaZe Clan an exclusive license to use Tenney's "name(s), voice, image, photograph, personal characteristics, signature, actual or simulated likeness, expressions, performance, attributes, personal experiences and biographical information" in connection with FaZe Clan's business and Tenney's services." This exclusive license lasts for the duration of the Gamer Agreement. The Gamer Agreement also gives FaZe Clan exclusive ownership of Tenney's work (and the products thereof). *See* Terms & Conditions ¶ 4.a.

27. The Gamer Agreement is a valid and enforceable contract. FaZe Clan has performed and/or stands ready to perform all of its duties and obligations under the Gamer Agreement. In fact, on information and belief, Tenney has taken compensation in excess of the amounts FaZe Clan is obligated to pay him under the Agreement. Tenney has the contractual right to receive certain percentages of the revenue generated from certain activities. Upon information and belief, Tenney has received millions of dollars of such revenues, but has unilaterally retained all but $60,000; consequently, Tenney owes FaZe Clan the remaining portion of the revenues received by Tenney under the Gamer Agreement.

**C.     Tenney Disavows the Gamer Agreement, Sets Out to Create a Rival Esports Organization and Disparages FaZe Clan**

28. A few months after entering into the Gamer Agreement, Tenney's dissatisfaction with the contract became clear. FaZe Clan valued Tenney's contributions to the organization, so it made numerous proposals to renegotiate the Gamer Agreement and give Tenney the contractual right to receive more revenue. Tenney rejected all of FaZe Clan's offers.

29. Over the course of his relationship, including communications from Tenney on Thursday May 16, 2019, Tenney committed to a number of sponsorship deals FaZe Clan shared with him in accordance with the Gamer Agreement. Tenney had sponsorship deals that were national in scope, including New York.

30.     Nevertheless, on May 15, 2019, Tenney apparently commenced proceedings before the Labor Commissioner of the State of California, seeking a declaration that the Gamer Agreement is supposedly unenforceable because it allegedly involves FaZe Clan providing unlicensed talent agency services to Tenney.  Then, on May 20, 2019, Tenney filed a lawsuit against FaZe Clan (*Turner Tenney pka "TFue" v. FaZe Clan Inc.*, Case 19STCV17341, Superior Court of California, County of Los Angeles).  Despite the Gamer Agreement's <u>exclusive</u> New York choice of venue provision, Tenney and his attorneys improperly filed the lawsuit in a California State Court.  The California lawsuit seeks a declaratory judgment that the Gamer Agreement has been terminated, a declaratory judgment that certain provisions of the Gamer Agreement are void and unenforceable, and damages for FaZe Clan's alleged breach of the Gamer Agreement, among other causes of action.  Thus, the substance of the California lawsuit falls squarely within the Gamer Agreement's exclusive New York choice of venue and jurisdiction provisions.  As of the date of this Complaint, FaZe Clan has not filed an Answer in the California State Court.  Indeed, concurrent with the filing of this Complaint, FaZe Clan is filing a motion to dismiss the California action for *forum non conveniens*, based on the Gamer Agreement's exclusive and mandatory New York choice of venue clause.

31.     On May 20, 2019, Tenney's attorney also sent a letter to FaZe Clan, in which he falsely asserted that the Gamer Agreement was terminated as a result of unspecified alleged breaches by FaZe Clan.

32.     FaZe Clan has since come to learn and believe that Tenney's true objective for the past several months has been to get out of the Gamer Agreement at all costs so that he could start a new esports organization or otherwise compete against  FaZe Clan – and Tenney's lawsuits and public statements are all in service of that goal.  For example, Tenney posted a YouTube video

on May 22, 2019 with the caption: "I want to make it very clear that I tried multiple times for

multiple months to get out of this contract.  This is what had to be done."  On May 25, 2019,

Forbes reported that, "'Fortnite' Star Tfue Reportedly Starting His Own Team After FaZe Split."

The article refers to two sources, including a text attributed to Tenney's brother, which said:

> Turner [i.e. Tenney] wants to create his own org, work with the
> brands he wants, and overall be free to change the face of gaming
> forever.  Faze refused to allow him to do this.  Turner creating his
> own org is in his best interest.  Emotions and friendship aside, the
> corporate side of faze wouldn't let that happen.  Turner had no
> choice, this was his only option to get out of his contract to make
> his plans and dreams a reality.  Banks might be upset but turner
> doing this is going to help a lot more people that [sic] it hurt.

33.     On information and belief, Tenney is using FaZe Clan's trade secrets and

confidential information, as described above, to create a competing organization or otherwise

compete against FaZe Clan.  Tenney is taking the valuable information he learned from FaZe

Clan, which he is obligated to keep secret, and using it to create a rival to FaZe Clan or otherwise

support rival gamers and gaming organizations.  In perhaps the most public example of this

conduct, on or about May 22, 2018, Tenney began posting social media content demanding that

FaZe Clan publicly release the Gamer Agreement.  The next day, theblast.com – which had been

reporting on the dispute from Tenney's perspective – obtained and published a copy of the

Gamer Agreement from what it described as a "non-FaZe source" (while simultaneously

publishing a quote from Tenney's attorney and referring to information its "sources" provided

about "Tfue's team's" view of the dispute).  On information and belief, Tenney directly or

indirectly provided the Gamer Agreement to theblast.com.

34.     On information and belief, Tenney is directly or indirectly inducing other

members of FaZe Clan to reconsider their contracts with FaZe Clan and even their membership

in the organization entirely.  For example, on May 28, 2019, the website dexerto.com reported –

in an article entitled "Cloak hints at leaving FaZe after confirming details of Tfue's moving in" –
that Tenney was moving to New Jersey to live with another member of FaZe Clan (FaZe Cloak)
on May 29, 2019.  The article references Cloak "reading off a script" and saying he is "talking to
FaZe to figure out what I want to do."  Thus, FaZe Clan believes that Tenney is attempting to
induce FaZe Cloak (among others) to leave FaZe Clan.  FaZe Clan also believes that Tenney is
attempting to induce FaZe Cloak and other members of the team to join a competing venture.

35.     Beginning no later than May of 2019, FaZe Cloak began removing FaZe Clan's
name and logos from his gaming streams and social media accounts, and instead started
appearing in social media streams wearing merchandise representing one or more of FaZe Clan's
competitor teams.

36.     Tenney's conduct has caused damage to FaZe Clan, including the termination of
certain brand sponsorship deals and the forced renegotiation of brand deals on less favorable
terms.  Still other companies with which FaZe Clan has devoted substantial time and resources to
building business relationships were directly interfered with by Tenney.  Finally, companies that
FaZe Clan were deep in negotiations with pulled out of negotiations as a result of Tenney's
actions.  The damage caused by Tenney's conduct totals many millions of dollars.

## FIRST CAUSE OF ACTION
### (Breach of Contract -- Payments Owed to Plaintiff)

37.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1
to 36, above, and the same are incorporated herein by reference.

38.     The Gamer Agreement, at 2-3, requires Tenney to share percentages of certain
revenue streams with FaZe Clan.

39.     Tenney has breached the Gamer Agreement by withholding, retaining and/or failing to remit to FaZe Clan the portion of income that FaZe Clan is owed under the Gamer Agreement, with the exception of approximately $60,000.

40.     By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate.

**SECOND CAUSE OF ACTION**
**(Breach of Contract – Damages for Work with Other Organizations)**

41.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1 to 40, above, and the same are incorporated herein by reference.

42.     During the term of the Gamer Agreement, which lasts until October 27, 2021, Tenney is prohibited from: working or providing services to a gaming company other than FaZe Clan; appearing in, sponsoring, being sponsored by, promoting or endorsing, directly or indirectly, brands products or services other than those approved by FaZe Clan; promoting, sponsoring, endorsing or rendering services to companies that compete with FaZe Clan or its sponsors and advertisers.  *See* Terms & Conditions ¶ 5.  Moreover, during the term of the Gamer Agreement, FaZe Clan received an exclusive license to Tenney's name and likeness.  *See* Terms & Conditions ¶ 4(c).

43.     Tenney has repudiated these obligations and has expressed his intent to perform work or services prohibited by the Gamer Agreement's exclusivity provision, including without limitation by starting a competing organization, by using his name and likeness to benefit or endorse organizations other than FaZe Clan, and, on information and belief, by entering into certain third party agreements without FaZe Clan's consent and in direct opposition to the organization's interests.  Accordingly, Tenney has breached the Gamer Agreement.

44. By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate.

### THIRD CAUSE OF ACTION
**(Breach of Contract -- Confidentiality Obligations)**

45. FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1 to 44, above, and the same are incorporated herein by reference.

46. Under the Gamer Agreement, Tenney is required to maintain the secrecy of FaZe Clan's confidential information, which includes, without limitation, non-public information concerning FaZe Clan's finances, operations, sponsors, technology, sales, marketing, customers, suppliers, know-how, business plans, prospects, business partners, trade secrets, policies, practices, procedures, licenses, and agreements--including all information concerning the Gamer Agreement. In this regard, Tenney's confidentiality obligations last for the duration of the Gamer Agreement *plus* an additional three years. *See* Terms & Conditions ¶ 9.d.

47. Tenney has breached the Gamer Agreement by disclosing and misappropriating FaZe Clan's confidential information. Among other things, Tenney has directly or indirectly disclosed the Gamer Agreement to the public and he has otherwise used FaZe Clan's confidential information described above in an effort to compete against FaZe Clan both in esports and in the marketplace.

48. Tenney's breaches have caused and will continue to cause FaZe Clan's gamers, social media content professionals and business partners to withdraw from their deals, seek to withdraw from their deals, renegotiate their deals and/or avoid doing further business with FaZe Clan.

49. By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate. Furthermore, the Court should

enter an injunction to prevent Tenney from violating the Gamer Agreement's confidentiality

provisions by revealing, divulging or otherwise making use of FaZe Clan's confidential

information until three years after the Gamer Agreement's term ends.

## FOURTH CAUSE OF ACTION
### (Breach of Contract -- Non-Disparagement Obligations)

50.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1

to 49, above, and the same are incorporated herein by reference.

51.     The Gamer Agreement, at section 2.b., 9.b. and Schedule I, prohibits Tenney from

disparaging, bringing negative attention to, or making unauthorized public statements about,

FaZe Clan.  Tenney has breached the Gamer Agreement through numerous public statements –

including but not limited to those specifically identified above, statements to the effect that FaZe

Clan's relationship with gamers is unlawful or oppressive, statements to the effect that FaZe

Clan has promoted unlawful behavior among its gamers, and statements made on or around on

May 17, 2019 on Tenney's Twitch stream in which Tenney advises other gamers not to sign with

organizations such as FaZe Clan and states that such organizations are "not doing anything like

worth the cut they're taking," among other slanderous comments.  In addition, Tenney and his

representatives have made unauthorized and false statements and disclosure about the Gamer

Agreement and FaZe Clan's business practices. Such statements have, at minimum, been

unauthorized and cast FaZe Clan in a negative light.

52.     Tenney's breaches have resulted in substantial harm to FaZe Clan; indeed, they

have caused FaZe Clan's gamers, social media content professionals and business partners to

withdraw from their deals, seek to withdraw from their deals, renegotiate their deals and/or avoid

doing further business with FaZe Clan.  In addition, Tenney's disparagement of FaZe Clan has

caused certain fans to perceive FaZe Clan negatively, thereby interfering with FaZe Clan's relationship with those fans and associated revenue streams.

53.     By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate.  Furthermore, the Court should enter an injunction preventing Tenney from further disparaging or bringing negative attention to FaZe Clan.

### FIFTH CAUSE OF ACTION
**(Misappropriation of Trade Secrets under
Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.)**

54.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1 to 53, above, and the same are incorporated herein by reference.

55.     FaZe Clan owns and possesses the trade secrets, as alleged above, which are valuable.  The value of such trade secrets stems from the fact that they are maintained in confidence.  FaZe Clan takes reasonable steps to maintain the confidentiality of such trade secrets--including by requiring independent contractors such as Tenney to sign agreements containing confidentiality clauses.

56.     During the course of the Gamer Agreement, the trade secrets were communicated to Tenney.  Such communication was pursuant to Tenney's agreement to maintain the confidentiality of such trade secrets.

57.     Access to the trade secrets allows Tenney to know the inner-workings of FaZe Clan's business, revenue streams, commercial relationships, and deals with gamers and social media personalities.  Tenney would have the ability to undermine and undercut FaZe Clan's position through the benefit of such secret information.  Armed with this knowledge, Tenney

could harm and undermine FaZe Clan's relationship with advertisers, sponsors, gamers, social media personalities, and fans.

58.     Tenney has disclosed and made improper use of--and/or will inevitably will disclose and make improper use of--such trade secrets.  For example, Tenney has directly or indirectly disclosed the Gamer Agreement to the public and he has otherwise used FaZe Clan's trade secrets in an effort to compete against FaZe Clan both in esports and in the marketplace.

59.     Tenney's misappropriation has resulted in substantial harm to FaZe Clan; indeed, it has caused and will continue to cause FaZe Clan's gamers, social media content professionals and business partners to seek to withdraw from their deals, renegotiate their deals and/or avoid doing further business with FaZe Clan.

60.     By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate, as well as exemplary damages and attorneys' fees.  Furthermore, the Court should grant an injunction to prevent Tenney from revealing, divulging, using or otherwise misappropriating FaZe Clan's trade secrets.

**SIXTH CAUSE OF ACTION**
**(Intentional Interference with Contract)**

61.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1 to 60, above, and the same are incorporated herein by reference.

62.     FaZe Clan is party to valid contracts with gamers and media personalities other the Tenney, including FaZe Cloak and others.  Tenney is aware of the contracts and, through at minimum his conduct alleged herein, has intentionally interfered with those contracts by inducing and/or motivating such gamers and media personalities to disavow and/or renegotiate such contracts.

63.     FaZe Clan is party to and/or has a pecuniary interest in its brand deals.  Tenney is aware of these contracts and, through, at minimum, his conduct alleged herein, has intentionally interfered with several of those contracts by inducing and/or motivating such companies to disavow, stop performing and/or renegotiate such contracts.

64.     Tenney's conduct was unjustified and was intended to hurt FaZe Clan and enhance Tenney's position in his contractual dispute with FaZe Clan.  Tenney's conduct was further intended to induce the relevant gamers, media personalities and brand deal partners to leave FaZe Clan and instead do business with Tenney and/or his new esports organization.

65.     Tenney's conduct was wrongful in that, among other things, it involved the breach of Tenney's Gamer Agreement, the disclosure and misappropriation of FaZe Clan's confidential information and trade secrets, violation of FaZe Clan's intellectual property rights and the other tortious, inequitable and/or wrongful conduct set forth herein.

66.     Tenney's conduct has resulted in substantial harm.  Indeed, it has caused and may continue to cause FaZe Clan's gamers, social media content professionals and business partners to withdraw from their deals, seek to withdraw from their deals, renegotiate their deals and/or avoid doing further business with FaZe Clan.

67.     By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate and exemplary damages.  Furthermore, because monetary damages are inadequate to compensate FaZe Clan for Tenney's intentional interference with contracts, the Court should enter preliminary and permanent injunctive relief preventing Tenney from further interfering with FaZe Clan's contractual relationships.

## SEVENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Business Advantage)

68.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1
to 67, above, and the same are incorporated herein by reference.

69.     Prior to Tenney's interference, FaZe Clan had a reasonable expectation that it
would enter into and/or obtain an interest in brand contracts with several companies.  Tenney is
aware of such expectations and, through at minimum his conduct alleged herein, has
intentionally interfered with those expectations by inducing and/or motivating such companies to
cease negotiation and/or withdraw from the negotiation of such contracts.

70.     Tenney's conduct was unjustified and was intended to hurt FaZe Clan and
enhance Tenney's position in his contractual dispute with FaZe Clan.  Tenney's conduct was
further intended to induce the relevant deal partners to do business with Tenney and/or his new
esports organization.

71.     Tenney's conduct was wrongful in that, among other things, it involved the
breach of Tenney's Gamer Agreement, the disclosure and misappropriation of FaZe Clan's
confidential information and trade secrets, violation of FaZe Clan's intellectual property rights
and the other tortious, inequitable and/or wrongful conduct set forth herein.

72.     Tenney's conduct has resulted in substantial harm; indeed, it has caused and will
continue to cause FaZe Clan's prospective business partners to avoid doing further business with
FaZe Clan.

73.     By reason of the foregoing, FaZe Clan has been damaged in the amount according
to proof at trial, together with interest thereon at the legal rate and exemplary damages.
Furthermore, because monetary damages are inadequate to compensate FaZe Clan for Tenney's
intentional interference with contracts, the Court should enter preliminary and permanent

injunctive relief preventing Tenney from further interfering with FaZe Clan's prospective

business relationships.

## EIGHTH CAUSE OF ACTION
### (Commercial Disparagement)

74.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1

to 73, above, and the same are incorporated herein by reference.

75.     As discussed herein, Tenney has published false statements about FaZe Clan,

including that FaZe Clan does not bring value to its gamers, that FaZe Clan's contracts are

improper or oppressive and that FaZe Clan does nothing to earn any portion of the gamers'

revenues.  In addition, Tenney and his representatives have made unauthorized and false

statements and disclosures about the Gamer Agreement and FaZe Clan's business practices.

Such statements occurred, for example, on or around May 17, 2019 on Tenney's Twitch stream,

in which Tenney advises other gamers not to sign with organizations such as FaZe Clan, and that

such organizations are "not doing anything like worth the cut they're taking," among other

slanderous comments.

76.     Tenney made the foregoing statements with the intent to cause financial harm to

FaZe Clan, and at minimum with the knowledge that publication of the statements would likely

cause such harm to FaZe Clan.  Tenney's conduct was malicious and unjustified, and was

intended to hurt FaZe Clan and enhance Tenney's position in his contractual dispute with FaZe

Clan.  Tenney's conduct was further intended to induce fans, gamers, social media personalities,

and actual and prospective business partners to turn away from FaZe Clan and instead to do

business with Tenney and/or his new esports organization

77.     Tenney's disparagement of FaZe Clan has caused FaZe Clan's gamers, social

media content professionals and business partners to seek to withdraw from their deals,

renegotiate their deals and/or avoid doing further business with FaZe Clan. In addition, Tenney's disparagement of FaZe Clan has caused certain fans to perceive FaZe Clan negatively, thereby interfering with FaZe Clan's relationship with those fans and associated revenue streams.

78.     By reason of the foregoing, FaZe Clan has been damaged in the amount according to proof at trial, together with interest thereon at the legal rate. Furthermore, the Court should enter an injunction to prevent Tenney from further disparaging FaZe Clan.

### NINTH CAUSE OF ACTION
### (Unjust Enrichment)

79.     FaZe Clan repeats and re-alleges each of the allegations set forth in paragraphs 1 to 78, above, and the same are incorporated herein by reference.

80.     At Tenney's request, FaZe Clan provided valuable services and benefits to Tenney, including in connection with promoting Tenney; helping Tenney to build his brand; allowing Tenney to associate himself publicly with FaZe Clan; assisting Tenney with obtaining income from lucrative prizes, merchandise and apparel deals, brand deals, and appearances; and teaching and training Tenney about esports and social media business practices.

81.     As a result of such services and benefits provided by FaZe Clan, Tenney became entitled to receive substantial amounts of money.

82.     Tenney's enrichment was at FaZe Clan's expense, as FaZe Clan reasonably expected to be compensated for its services.

83.     Tenney has failed and refused to pay FaZe Clan a reasonable amount for its services.

84.     Under the circumstances, equity and good conscience require Tenney to pay to FaZe Clan the reasonable value of its services, in an amount according to proof at trial, plus interest at the legal rate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action of all issues so triable.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant as follows:

1.      On the First Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate.

2.      On the Second Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate.

3.      On the Third Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate, and permanent injunctive relief to prevent Defendant from revealing, divulging or otherwise making use of FaZe Clan's confidential information until three years after the Gamer Agreement's term ends.

4.      On the Fourth Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate, and permanent injunctive relief to prevent Defendant from further disparaging or bringing negative attention to Plaintiff.

5.      On the Fifth Cause of Action, for damages in the amount according to proof at trial, interest at the legal rate, exemplary or punitive damages, attorneys' fees and permanent injunctive relief to prevent Defendant from revealing, divulging, using or otherwise misappropriating FaZe Clan's trade secrets.

7.      On the Sixth Cause of Action, for damages in the amount according to proof at trial, interest thereon at the legal rate, exemplary or punitive damages, and permanent injunctive relief to prevent Defendant from further interfering with FaZe Clan's contractual relationships.

8.     On the Seventh Cause of Action, for damages in the amount according to proof at trial, interest thereon at the legal rate, exemplary or punitive damages, and permanent injunctive relief to prevent Defendant from further interfering with FaZe Clan's prospective business relationships.

9.     On the Eighth Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate, and permanent injunctive relief to prevent Defendant from further disparaging Plaintiff.

10.    On the Ninth Cause of Action, for damages in the amount according to proof at trial, plus interest at the legal rate.

12.    On all causes of action, for costs of suit herein; and

13.    For such other and further relief as the Court may deem just and proper.


Dated:  August 1, 2019

By: /s/Justin N. Kattan

DENTONS US LLP
Justin Kattan
   (Justin.kattan@dentons.com)
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700

Joel D. Siegel
   (joel.siegel@dentons.com)
Manny J. Caixeiro
   (manny.caixeiro@dentons.com)
Paul M. Kakuske
   (paul.kakuske@dentons.com)
601 S. Figueroa Street, Ste. 2500
Los Angeles, CA 90017
(213) 623-9300

Attorneys for Plaintiff FaZe Clan Inc.