UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAZE CLAN, INC.,

                *Plaintiff,*

        -v-

TURNER TENNEY p/k/a "TFUE"

                *Defendant.*

Civil Action No. 19-cv-07200 (JSR)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR STAY THE ACTION**

Joshua D. Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel:  (646) 755-3601
Fax:  (646) 755-3599
jliston@blmllp.com

*Attorneys for Defendant
Turner Tenney p/k/a "TFUE"*

Dated:  New York, New York
       October 8, 2019

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES......................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND .....................................................................................................................4

      A.  The Labor Commissioner Proceeding .............................................................4

      B.  The LASC Proceeding.....................................................................................7

      C.  The SDNY Action .........................................................................................10

ARGUMENT..........................................................................................................................11

I.      The Court Should Abstain Under *Colorado River* From Entertaining
      This Duplicative and Vexatious Federal Suit......................................................11

      A.  The *Colorado River* Factors Warrant Abstention..........................................12

      B.  This Lawsuit's Vexatious Nature Compels Abstention ..............................17

II.     In the Alternative, the Court Should Stay This Action.......................................18

III.    Alternatively, and Subject to a Ruling in the LASC Action, the Court Lacks Personal
      Jurisdiction over Tenney ...................................................................................19

CONCLUSION .......................................................................................................................20

## TABLE OF AUTHORITIES

PAGE

CASES

*Abe v. N.Y. Univ.*, No. 14-cv-9323, 2016 WL 1275661
(S.D.N.Y. Mar. 30, 2016) ................................................................................. 17

*Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84 (2d Cir. 1988) .......................................... 11, 15

*Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001) ........................................... 17

*Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881 (1998) ...................................... 8

*Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545 (1983) .............................................. 15

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
762 F.2d 205 (2d Cir. 1985) ...................................................................... 12

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .............................................................................. 5

*Banks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336 (2009) ....................................................... 5, 14

*Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC,
2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ........................................................ 19

*Buchwald v. Superior Court*, 254 Cal. App. 2d 347 (1967) ......................................................... 5, 14

*Chiba v. Greenwald*, 156 Cal. App. 4th 71 (2007) ...................................................................... 7-8

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ............................................................................ 4, 11-18

*Cong. Talcott Corp. v. Roslin*, No. 95-cv-7698 (LAP), 1996 WL 499337
(S.D.N.Y. Sept. 4, 1996) ........................................................................... 18

*Continental Indus. Grp., Inc. v. Equate Petrochemical Co.*,
586 Fed. App'x 768 (2d Cir. 2014) ............................................................... 19

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) ............................................................ 12, 15

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ...................................................... 8

*Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668 (1971) .................... 8

*In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219
    (S.D.N.Y. 2015) ............................................................................................ 19

*Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285 (7th Cir. 1988) ............................... 18

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .................................................................................... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................... 12, 17, 18

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ..................................................................................... 11, 12

*Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190 (S.D.N.Y. 2001) ................................. 19

*REO Broad. Consultants v. Martin*, 69. Cal. App. 4th 489 (1999) .................................................. 7

*Styne v. Stevens*, 26 Cal. 4th 42 (2001) ............................................................................. 5, 18, 14

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*,
    765 F.2d 356 (2d Cir. 1985) .................................................................................. 11, 16, 17

*Verdugo v. Alliantgroup, L.P.* 237 Cal. App. 4th 141 (2015) ....................................................... 17

*Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 645 (1997) ......................................................... 8

*Yoo v. Robi*, 126 Cal. App. 4th 1089 (2005) .................................................................................. 6

### STATUTES & RULES

18 U.S.C. §§ 1836 *et seq.* ....................................................................................................... 10, 16

Ca. Bus. & Profs. Code § 16600 .............................................................................................. 8, 17

Ca. Civ. Code § 3513 ...................................................................................................................... 8

Ca. Labor Code § 1700.5 ................................................................................................... 2-3, 5, 6

Ca. Labor Code § 1700.33 .............................................................................................................. 6

Ca. Labor Code § 1700.36 .............................................................................................................. 6

Ca. Labor Code § 1700.44 ..................................................................................................... 5, 7, 14

Federal Rule of Civil Procedure 12 .............................................................................................. 19

Defendant Turner Tenney p/k/a "Tfue" ("Tenney") respectfully submits this memorandum of law in support of his motion to dismiss the Complaint filed by Plaintiff FaZe Clan Inc. ("FaZe Clan") or stay this action.

## PRELIMINARY STATEMENT

This is a case about esports – a new and rapidly growing entertainment format. Unlike traditional "sports," significant revenue in the esports entertainment industry is driven by creative content and performances, namely videos, featuring and created by the gamers themselves. These gamers are artists, entertainers, and content creators. They perform, they act, they direct, they edit, and they stream these videos to their audiences. The content created by these games is typically not found on traditional broadcast media such as network or cable televisions. Instead, these gamer content creators "stream" their videos on online platforms such as YouTube and Twitch. The videos creator by these content creator/streamers have become increasingly popular, especially amongst younger viewers. Millions subscribe to the content creators/streamers' online channels and view these videos. As a result, these videos can be extremely profitable. *See* Compl., *Tenney v. FaZe Clan, Inc.*, Case No. 19STCV17341 (Cal. Sup. Ct., filed May 20, 2019) (hereinafter "LASC Action"), Liston Aff.,[1] Ex. 1, ¶ 1.

Because the esports industry is so new, there is little to no regulation or oversight. There are no real organizations such as unions or guilds to help protect the content creators/streamers that drive the industry. Most of these content creators/streamers are also very young, and are often unsophisticated, unseasoned, and trusting. As a result, these young content creators/streamers are susceptible to being taken advantage of and exploited – often by those that

---

[1] "Liston Aff." refers to the Affirmation of Joshua D. Liston in Support of Defendant's Motion to Dismiss or Stay the Action, dated Oct. 8, 2019, and submitted herewith.

are supposed to be looking out for their best interests.  Unfortunately, this has become industry standard.  *Id.* ¶ 2.

Defendant Tenney, professionally known as "Tfue," is a twenty-one year old professional gamer and content creator/streamer.  Tenney performs in and creates popular videos that he streams online.  Because Tenney's videos are viewed by millions, sponsors are willing to pay for Tenney to perform in and create videos that will, at least in part, promote their goods, services, and brands.  *Id.* ¶ 3.

Plaintiff FaZe Clan is a so-called esports entertainment company.  Through Tenney's brief relationship with FaZe Clan, he has come to learn that FaZe Clan subscribes to a shady and illegal business model.  FaZe Clan's goal is essentially to "own" Tenney and other content creators/streamers and professional gamers.  Tenney signed a "Gamer Agreement" with FaZe Clan when Tenney was only twenty (20) years old.  *Id.* ¶ 4.

The Gamer Agreement is currently the subject of two separate proceedings in California – both of which were filed months before this action.  The first proceeding began on or about May 15, 2019, when Tenney filed a Petition to Determine Controversy before the California Labor Commissioner (the "Labor Commissioner Proceeding").  *See* Pet. To Determine Controversy, Case No. 52704 (Ca. Labor Comm'r filed May 15, 2019), Liston Aff., Ex. 2. Tenney instituted the Labor Commissioner Proceeding because the Gamer Agreement is illegal under California's Talent Agency Act (the "TAA").  The TAA protects artists, like Tenney, from those, like FaZe Clan, that act as an unlicensed talent agency.  *Id.* ¶ 4.  Though FaZe Clan does not hold the requisite talent agency license, FaZe Clan, a company with its principal place of business in Los Angeles, California, has continuously and systematically procured and attempted to procure employment and engagements for Tenney as an artist in violation of California Labor

2

Code § 1700.5. *Id.* In the Labor Commissioner Proceeding, Tenney seeks a determination, <u>inter</u> <u>alia</u>, that FaZe Clan's purported Gamer Agreement is void *ab initio* and unenforceable based on FaZe Clan's violation of the TAA. *Id.* at Prayer for Relief ¶ 2. It is well settled that the California Labor Commissioner has ***exclusive, original jurisdiction*** over controversies colorably under the TAA. After FaZe Clan was served with the Petition and Notice to Answer in the Labor Commissioner Proceeding, FaZe Clan failed to answer or otherwise respond to the Petition, which likely amounts to a waiver of any defenses to the Petition, including jurisdictional defenses. In any event, the Labor Commissioner Proceeding is moving forward; the Commissioner is in the process of setting an evidentiary hearing date, likely to be held between November 18, 2019 and March 31, 2020. *See* Order re Notice of Unavailability, Labor Commissioner Proceeding (Oct. 2, 2019), Liston Aff., Ex. 3.

The second proceeding began on or about May 20, 2019, when Tenney filed a civil action in Los Angeles Superior Court against FaZe Clan (the "LASC Action"), in which Tenney asserted several causes of action against FaZe Clan, including FaZe Clan's breaches of the Gamer Agreement and violations of California's prohibition on competitive restraints, each of which provide independent bases to terminate the Gamer Agreement, and FaZe Clan's breach of its fiduciary duty to Tenney. *See* Liston Aff., Ex. 1. On August 1, 2019, FaZe Clan filed a motion to dismiss the LASC action on *forum non conveniens* grounds, principally on the basis of a purported mandatory forum selection clause in the agreement that purports to designate New York as the agreed upon forum. *See* Defendant FaZe Clan Inc.'s Motion to Dismiss or Stay for Forum Non Conveniens, LASC Action (Aug. 1, 2019), Liston Aff., Ex. 4. Tenney filed an opposition to the motion, but FaZe Clan withdrew the motion before it could be decided. After Tenney served an amended complaint in the LASC Action on August 27, 2019, *see* Am. Compl.,

3

LASC Action (Aug. 27, 2019), Liston Aff. Ex. 5, FaZe Clan filed new *forum non conveniens* motion on substantially the same grounds on September 30, 2019, *see* Defendant FaZe Clan Inc.'s Motion to Dismiss or Stay for Forum Non Conveniens and, in the Alternative, Demurrer to the First Amended Complaint, LASC Action (Sept. 30, 2019), Liston Aff., Ex. 4.  FaZe Clan's motion is scheduled to be heard in the LASC Action very soon – on October 28, 2019.  *Id.* at 1.

Almost two and half months after Tenney initiated both the Labor Commissioner Proceeding and the LASC Action, FaZe Clan filed this federal court action, primarily alleging that Tenney has breached the Gamer Agreement in various ways.  *See* Compl., Dkt. No. 1.  But FaZe Clan's attempt to shift this dispute to what it perceives as more favorable grounds should be rejected under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  That doctrine permits a federal court to stay or dismiss a federal case in deference to a parallel state proceeding involving the same parties and based on the same underlying controversy.  Careful examination of the *Colorado River* factors warrants complete abstention here, or at the very least, a stay of proceedings until the Labor Commissioner Proceeding is concluded and a final, unappealable decision on FaZe Clan's pending *forum non conveniens* motion is rendered in the LASC Action.  Those decisions will resolve both whether the Gamer Agreement on which this new action is based is void *ab initio* because it is illegal and also whether the forum selection clause applies.  Those decisions will also resolve whether this Court has personal jurisdiction over Tenney.

**BACKGROUND**

**A.  THE LABOR COMMISSIONER PROCEEDING**

On May 15, 2019, Tenney initiated the Labor Commissioner Proceeding because FaZe Clan has acted as Tenney's unlicensed California talent agency in violation of California's

Talent Agency Act (the "TAA").  *See* Liston Aff., Ex. 2; Ca. Labor Code. § 1700.5 ("No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner.").  It is well settled that California Labor Code § 1700.44 provides the Labor Commissioner ***exclusive*** original jurisdiction over controversies colorably arising under the TAA.  *See Styne v. Stevens*, 26 Cal. 4th 42, 52–56 (2001); *Banks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 360–63.  Critically, the TAA, a remedial statute designed to protect those seeking employment, is **not waivable**.  *See Buchwald v. Superior Court*, 254 Cal. App. 2d 347, 350 (1967); *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 100 (2000) (noting that, under California law, a right or cause of action created for a public purpose cannot by private agreement be waived, contravened, burdened, or subjected to procedural shortcomings that would preclude its vindication)

As stated in the Labor Commissioner Proceeding Petition, "FaZe Clan, which is not a licensed talent agency, exploits young artists like Tenney through oppressive and predatory long-term contracts whereby FaZe Clan essentially 'owns' the artist and the artist's career."  Liston Aff., Ex. 2, ¶ 3.  When sponsors pay for Tenney to perform in and create online content and/or to model apparel featuring the sponsors' brands, FaZe Clan retains a grossly unconscionable commission for sourcing the deal – up to eighty percent (80%).  *Id.*

Because FaZe Clan is unlicensed, it has thus far avoided regulation by California's Labor Commissioner.  But the Labor Commissioner Proceeding seeks to change that.  As set forth in the Petition, "The need for licensure and regulation, however, is dire," *id.* ¶ 5, as FaZe Clan has violated several other provisions of California's Labor Law.

FaZe Clan moved Tenney to Los Angeles, California and directed him to live in one of FaZe Clan's homes in Hollywood Hills with other young "YouTubers" on FaZe Clan's roster.

5

FaZe Clan continuously pressured and encouraged Tenney and others to undertake dangerous stunts while performing in videos.  During one video, Tenney suffered an injury to his arm while skateboarding which resulted in permanent disfigurement.  Following Tenney's injury, FaZe Clan did not even seek appropriate medical attention.  During another video, Tenney was hit by a car while skateboarding.  *Id.* ¶¶ 15-16.  Such conduct by FaZe Clan was in violation of California Labor Code § 1700.33 ("No talent agency shall send or cause to be sent, any artist to any place where the health, safety, or welfare of the artist could be adversely affected, the character of which place the talent agency could have ascertained upon reasonable inquiry.").

It has also widely publicized that FaZe Clan has recently signed an eleven year old gamer/artist.  As stated in the Petition, "[u]pon information and belief, FaZe Clan has not only lied about the minor's age, but has also pressured the minor and his family to do so."  Liston Aff., Ex. 2, ¶ 17.  Such conduct by FaZe Clan was in violation of California Labor Code § 1700.36 ("No talent agency shall accept any application for employment made by or on behalf of any minor, as defined by subdivision (c) of Section 1286, or shall place or assist in placing any such minor in any employment whatever in violation of Part 4 (commencing with Section 1171).").

Tenney seeks several forms of relief in the Labor Commissioner Proceeding.  *See* Liston Aff., Ex. 2, at Prayer for Relief.  First, he asks for a determination that FaZe Clan has violated California Labor Code § 1700.5 by procuring and attempting to procure employment and engagements for Tenney as an artist. *Id.*  Second, he seeks a determination that the Gamer Agreement is void *ab initio* and unenforceable and that therefore Tenney owes no further monies to FaZe Clan. *Id.*; *see, e.g.*, *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1103 (2005) ("California courts have uniformly held a contract [in violation of the TAA] is void *ab initio*.").  Third, he

requests a determination that FaZe Clan may no longer work on Tenney's behalf. *See* Liston Aff., Ex. 2, at Prayer for Relief.  Fourth, he seeks an order requiring FaZe Clan to provide an accounting of, and to disgorge and repay to Tenney, all monies received by FaZe Clan as a result of the Gamer Agreement. *Id.* Finally, he requests an order permanently enjoining FaZe Clan from continuing to violate California's Labor Code. *Id.*

The Labor Commissioner Proceeding is moving apace.  After FaZe Clan was served with the Petition, FaZe Clan failed to answer or otherwise substantively respond to the Petition, which likely amounts to a waiver of any defenses to the Petition, including jurisdictional defenses. FaZe did request a stay of the Labor Commissioner Proceeding, but instead of granting the stay, the Commissioner just days ago asked Tenney and FaZe Clan for their availability for an evidentiary hearing, likely to be held between November 18, 2019 and March 31, 2020.  Liston Aff., Ex. 3.

## B. THE LASC ACTION

On May 20, 2019, Tenney filed the LASC Action, primarily for two reasons.  First, although the Labor Commissioner has exclusive ***original*** jurisdiction under the TAA, the California Superior Court also has exclusive (though not original) jurisdiction over any subsequent proceedings involving the TAA, in particular any *de novo* review.  *See* Ca. Labor Code § 1700.44(a).  The Superior Court *de novo* review process is "mandatory and jurisdictional." *See REO Broad. Consultants v. Martin*, 69. Cal. App. 4th 489, 495 (1999). Because the California Superior Court has exclusive jurisdiction to review the Labor Commissioner's determination of controversy, Tenney has preemptively filed for such relief under the TAA in the LASC Action, including *de novo* review.  Such preemptive lawsuits under the TAA are permissible while the Labor Commissioner Proceeding is pending.  *See Chiba v.*

7

*Greenwald*, 156 Cal. App. 4th 71, 75-76 (staying case pending Labor Commissioner determination); *Styne v. Stevens*, 26 Cal. 4th 42, 58-59 (2001).

Second, Tenney has asserted several causes of action against FaZe Clan not under the TAA but that also involve Tenney's relationship with FaZe Clan and the legal validity of the Gamer Agreement.  Liston Aff., Ex. 5.  For example, Tenney alleges that at least significant portions of the Gamer Agreement are unenforceable under California Business and Professions Code § 16600 ("Section 16600"), which provides: "Except as provided in this chapter, every contract by which **anyone** is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (emphasis added).  Subject to several narrow statutory exceptions, all anti-competitive provisions are unenforceable under California law.  *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008).  Because Section 16600 reflects such a strong California public policy, California courts do not enforce out of state choice of law provisions that are contrary to Section 16600.  *See Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900-03 (1998) (refusing to apply Maryland choice of law provision); *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 673 (1971) (refusing to apply New York choice of law provision).  Moreover, Tenney's rights under Section 16600 are ***not waivable*** by contract as the law was enacted to protect the public.  *See Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 645, 659 (1997) ("We are mindful of the admonition of the provision of the Civil Code section 3512 that '…a law established for a public reason cannot be contravened by public agreement.'  Also, we do not quarrel with the assertion that Business and Professions Code 16600 was adopted for a public reason.  It follows that Christian could not by agreement waive the benefit afforded under California law."); Ca. Civ. Code § 3513.

Tenney seeks several forms of relief in the LASC Action.  Primarily, he is seeking a declaration that the Gamer Agreement is void *ab initio* because FaZe Clan has violated the FAA and that, as a result, Tenney has no further obligations to FaZe Clan and FaZe Clan must disgorge and repay Tenney all amounts it collected under the Gamer Agreement.  Tenney is also seeking other compensatory damages, punitive damages, interest, and the costs of suit.  *See generally* Liston Aff., Ex. 5, at Prayer for Relief.

In and around July 2019, Tenney served subpoenas seeking discovery from numerous non-parties to the LASC Action,[2] and in the weeks that followed, Tenney's California attorneys met-and-conferred with many of the non-parties regarding the scope of the subpoenas.  Several nonparties have responded to the subpoenas.  *See* Plaintiff Turner Tenney's Opposition to Defendant FaZe Clan Inc.'s Motion for Protective Order, or Alternatively, to Stay Third-Party Discovery, LASC Action (Sept. 3, 2019), Liston Aff., Ex. 7, at 3.

On August 1, 2019, FaZe Clan filed a motion to dismiss the LASC Action on *forum non conveniens* grounds, principally on the basis of a purported mandatory forum selection clause in the Gamer Agreement that purports to designate New York as the exclusive forum.  Liston Aff., Ex. 4.  After Tenney served an amended complaint in the LASC Action on August 27, 2019,

---

[2] The following entities were served with document and deposition subpoenas: 1661, Inc.; American Future Technology Corp.; Andrew Wu; Buffalo Wild Wings, Inc.; Electronic Arts, Inc.; Facebook, Inc.; Frito-Lay North America, Inc.; G Fuel, LLC dba Gamma Labs aka Gamma Enterprises, LLC; General Mills, Inc.; Google, LLC; Gucci America, Inc.; Hanaps Enterprises; Hanes Brands, Inc.; HTC America, Inc. (which will do business in California as HTC America, Sales & Marketing aka HTC Corporation); Hulu, LLC; Jockey International, Inc.; Kingston Technology Company, Inc.; Netflix, Inc.; Nissan North America, Inc.; Pandora Media, LLC; Paypal, Inc.; PepsiCo, Inc.; PUBG Santa Monica, Inc.; Spotify USA, Inc.; Square, Inc.; SteelSeries North America Corporation; Tencent America, LLC; The Black Tux, Inc.; The Procter & Gamble Company; Turtle Beach Corporation; Uber Technologies, Inc.; Walmart, Inc.; Wix.com; and YouTube, LLC. The following entities were served solely with deposition subpoenas: Converse, Inc.; List Partners, LLC; Need for Seat USA (aka Need For Seat.com, LLC); Robert Kross; Scuf Gaming International, LLC; and Sebastian Geurts.

Liston Aff., Ex. 6, FaZe Clan filed a new *forum non conveniens* motion on substantially the same grounds on September 30, 2019, Liston Aff., Ex. 6.  Alternatively, FaZe Clan has requested in its motion a stay of the LASC Action pending a final judgment in this later filed federal action, and failing that, FaZe has moved to dismiss Tenney's cause of action for *de novo* review of the eventual Labor Commissioner decision.  *Id.*  FaZe Clan's motion is scheduled to be heard in the LASC Action on October 28, 2019.  A decision on the motion is expected on or shortly after the October 28, 2019 hearing date.

### C.  THE SDNY ACTION

Almost two and half months after Tenney filed the Labor Commissioner Proceeding and the LASC Action, on August 1, 2019, citing the Gamer Agreement's purported forum selection clause – which is the subject of current motion practice in the LASC Action – FaZe Clan filed the complaint in this action.  As FaZe Clan acknowledges, "Many of the causes of action in the Southern District of New York Case arise under and relate to the Gamer Agreement."  Liston Aff., Ex. 6, at 11.  Indeed, *all* nine of FaZe Clan's causes of action relate to its relationship with Tenney; eight of the claims are common law claims, and the ninth is a claim for misappropriation of trade secrets under 18 U.S.C. §§ 1836, *et seq*.  *See generally* Compl.  FaZe Clan is free to file all of these claims as counterclaims or defenses in the LASC Action.

The initial conference in this case is currently scheduled for October 29, 2019, the day after the hearing in the LASC Action on FaZe Clan's motion to dismiss.  No other dates are currently scheduled.

**ARGUMENT**

**I.    The Court Should Abstain Under *Colorado River* from Entertaining This Duplicative and Vexatious Federal Suit**

Tenney respectfully requests that this federal case should be dismissed in favor of the ***two*** parallel California proceedings under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "In 'exceptional circumstances,' and in deference to parallel state court proceedings, the court may decline to exercise jurisdiction over a properly presented federal claim in order to further the interests of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (quoting *Colorado River*, 424 U.S. at 817) (alteration omitted).

This action is parallel to each of the Labor Commissioner Proceeding and the LASC Action, meeting that condition of *Colorado River* abstention. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotation marks omitted). Where that is so, the required parallelism exists even if the federal plaintiff raises "an alternative theory of recovery" that could have been "raised in state court." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985). FaZe Clan can raise all of its claims against Tenney in the Labor Commissioner Action and/or the LASC Action. Instead, and without raising defenses in the Labor Commissioner Action or waiting for a decision in the LASC Action on its motion to dismiss, FaZe Clan filed this action.

For the reasons that follow, FaZe Clan's overlapping federal lawsuit should be dismissed.

11

### A.    The *Colorado River* Factors Warrant Abstention.

A court looks to the following criteria when deciding whether to abstain under *Colorado River*: (1) avoidance of piecemeal litigation; (2) whether the cases involve property under one court's control; (3) the actions' order of filing and relative progress; (4) the forums' convenience; (5) whether federal or state law governs; and (6) whether the state proceeding is adequate to protect the federal plaintiff's rights. *See Niagara Mohawk*, 673 F.3d at 100–01; *De Cisneros v. Younger*, 871 F.2d 305, 307–08 (2d Cir. 1989). A party's vexatious behavior also factors into the decision. *See infra* Part I.B. These criteria are not a "mechanical checklist," but rather require "careful balancing" in a case's specific circumstances. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). Careful examination of these factors warrants abstention here.

First, these parallel cases present a "danger of piecemeal litigation," a "paramount" consideration in any *Colorado River* analysis. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19; *Arkwright-Boston Mfrs.*, 762 F.2d at 211. In the Labor Commissioner Proceeding, the primary issues are whether FaZe Clan has acted in violation of the TAA and, if so, whether the Gamer Agreement with Tenney is void *ab initio*. In the LASC Action, the issues include whether the Labor Commissioner's ultimate decision is correct and the respective parties' rights and obligations resulting therefrom. In this action, FaZe Clan is seeking to avoid any determination about its conduct under the TAA and simply proceeds as if this were a garden-variety breach of contract case, which it assuredly is not. "The central problem with piecemeal adjudication in this case . . . is that a potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 308 (quotation marks omitted). Already, there is a risk of inconsistent and

12

mutually contradictory determinations on issues such as the validity of the Gamer Agreement and the applicability of the purported forum selection clause.  If the Labor Commissioner determines that the Gamer Agreement is void *ab initio* because FaZe Clan is operating as an illegal Talent Agency, and that determination is upheld after *de novo* review, then FaZe Clan would have no claims against Tenney.  Similarly, if the court in the LASC Action denies FaZe Clan's motion to dismiss on *forum non conveniens* grounds, then FaZe Clan must litigate its claims in the LASC Action, rather than seek a second bite at the apple in this action.

Second, although this case does not involve a *res*, the principle that favors abstention when a court has assumed jurisdiction over a *res* is present here.  California has assumed control over whether FaZe Clan is required to be licensed under the TAA.  FaZe Clan is a California based company.  Plaintiff's Opposition to Motion to Dismiss or Stay for Forum Non Conveniens, LASC Action (Aug. 28, 2019), Liston Aff., Ex. 8, at 3-4.  Its offices have always been located in Los Angeles.  *Id.*  It appears that FaZe Clan's entire upper management team, talent management team, merchandise/e-commerce team, eSports business team, human resources team, marketing team, and business development team were located in California.  *Id.*  It does not appear that FaZe Clan ever had offices outside of California.  *Id.*  FaZe Clan's corporate documents on file with the California Secretary of State also indicate that FaZe Clan's principal executive office is in Los Angeles.  *Id.*  The Gamer Agreement states that FaZe Clan's principal place of business is located in Los Angeles, and the Complaint in this action states the same.  *Id.*

FaZe Clan's relationship with Tenney was primarily connected to California.  In 2018, Tenney traveled to and spent several days in Los Angeles meeting with FaZe Clan about a potential business opportunity.  Declaration of Turner Tenney in Support of Opposition to Motion to Dismiss or Stay for Forum Non Conveniens, LASC Action (Aug. 26, 2019), Liston

13

Aff., Ex. 9, ¶ 2.  During that trip, Tenney stayed at Faze Clan's "Clout House," a house in Los Angeles rented by FaZe Clan and occupied by talent who were represented by FaZe Clan.  *Id.* ¶ 3.  Tenney met with various FaZe Clan personnel, including FaZe Clan's management and owners.  *Id.*  The Gamer Agreement was negotiated in and entered into in Los Angeles.  *Id.* ¶¶ 3-4.  Indeed, FaZe Clan requested that and persuaded Tenney to move to Los Angeles and into FaZe Clan's Clout House.  *Id.* ¶ 5.  FaZe Clan told Tenney that his move to Los Angeles would permit collaboration with the other FaZe Clan talent that also lived in Los Angeles.  *Id.*  Tenney lived in Los Angeles for several months from the summer of 2018 through approximately December 2018.  *Id.* ¶ 6.

During his relationship with FaZe Clan, Tenney only interacted with FaZe Clan personnel who were located in Los Angeles.  *Id.* ¶ 7.  While in Los Angeles, Tenney performed in a number of videos, all of which were shot in Los Angeles between April and December 2018.  *Id.* ¶ 8.  Tenney made streaming videos and YouTube videos from Los Angeles on an almost daily basis.  *Id.*

Given that that the FaZe Clan/Tenney relationship was centered on California and that FaZe Clan's breaches of the TAA occurred in California, it is not a surprise that the California Labor Commissioner is proceeding ahead with its consideration of whether FaZe Clan illegally acted as Tenney's talent agency without a license.  As described earlier, it is well settled that California Labor Code § 1700.44 provides the Labor Commissioner **exclusive** jurisdiction over controversies colorably arising under the TAA.  *See Styne*, 26 Cal. 4th at 52–56; *Banks*, 171 Cal. App. 4th at 360–63.  By virtue of the Gamer Agreement, FaZe Clan tried to circumvent California law, but critically, the TAA, a remedial statute designed to protect those seeking employment, is **not waivable**.  *See Buchwald*, 254 Cal. App. 2d 347, 350.  In light of esports'

14

rapid escalation in popularity, especially among youths, and in light of FaZe Clan's presence in California, it is essential that California's duly enacted procedures for determining and remediating violations of the TAA be permitted to continue.  Accordingly, these New York proceedings "are likely to be duplicative and wasteful, generating 'additional litigation through permitting inconsistent dispositions of property.'" *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983) (quoting *Colorado River*, 424 U.S. at 819).

Third, the relative progress of this case compared to the Labor Commissioner Proceeding and the LASC Action favors abstention.  *See, e.g.*, *De Cisneros*, 871 F.2d at 308 (advising that progress of parallel actions "must be carefully examined").  As described above, the first-filed proceeding was the Labor Commissioner Proceeding, which was filed May 15, 2019.  The Labor Commissioner Proceeding is moving forward; the Commissioner in the process of setting an evidentiary hearing date, likely to be held between November 18, 2019 and March 31, 2020. The second-filed action was the LASC Action, which was filed on May 20, 2019.  Around July 2019, Tenney served subpoenas seeking discovery from numerous non-parties to the LASC Action, and in the weeks that followed, Tenney's California attorneys met-and-conferred with many of the non-parties regarding the scope of the subpoenas, in advance of the non-parties' responses.  In addition, FaZe Clan has filed a motion to dismiss the LASC Action, which is likely to be resolved on or shortly after the May 28, 2019 hearing.  Since May 2019, the Labor Commissioner and the California state court have grown familiar with the parties' dispute.  By contrast, at least initially, this action will have "concentrated on the propriety of bringing suit in federal court at all." *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 88 (2d Cir. 1988).

Fourth, the California forum is significantly more convenient.  As described above, FaZe Clan's principal place of business is in Los Angeles, and nearly all relevant FaZe Clan corporate

15

witnesses and documents are located in Los Angeles. FaZe Clan's primary attorneys in its dispute with Tenney are located in Los Angeles. Although Tenney is a resident of Florida, he resided in California during part of his relationship with FaZe Clan, and he has submitted to the jurisdiction of California by instituting both the Labor Commissioner Proceeding and the LASC Action. He has no meaningful connection to New York. *See* Liston Aff., Ex. 9, ¶ 9.

Fifth, virtually all of the claims at issue in the dispute between FaZe Clan and Tenney are state law claims, which further recommends abstention. In the Labor Commission Proceeding, at issue is California's TAA. *See Telesco*, 765 F.2d at 363 ("Another added factor is that federal law does not provide the rule of decision in this case, but, on the contrary, it is provided by the state law involving a novel state law theory . . . ."). In the LASC Action, all nine of Tenney's claims against FaZe are state law claims. And, in this action, eight of FaZe Clan's claims against Tenney are state law claims; only one, a claim for misappropriation of trade secrets under 18 U.S.C. §§ 1836, *et seq.* is a federal claim, but the state court can fairly adjudicate that claim.

Sixth, the two state proceedings are more than adequate to protect FaZe Clan's rights. FaZe Clan has filed a motion to dismiss the LASC Action, and there is no reason to believe the capable judge in that action cannot appropriately rule on the issue of *forum non conveniens*. Nor is there reason to believe that FaZe Clan would be deprived of any rights it may have in either the LASC Action or the Labor Commissioner Proceeding, especially given the fact that it can raise all of the claims in this action as counterclaims in the LASC Action. Conversely, given the California Labor Commissioner's exclusive original jurisdiction regarding Tenney's FAA claim, and the Superior Court's exclusive jurisdiction to review the Commissioner's decision, Tenney's right to challenge the validity of the Gamer Agreement on those grounds in this lawsuit would be compromised – which is exactly the reason FaZe Clan brought this action.

16

### B.   This Lawsuit's Vexatious Nature Compels Abstention

The Supreme Court and Second Circuit have "found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or the state litigation may influence'" the *Colorado River* calculus.  *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20).  So too have "numerous courts in this circuit." *Abe v. N.Y. Univ.*, No. 14-cv-9323, 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016).  Given that the preceding factors already favor abstention, the vexatious nature of this action confirms this result.

FaZe Clan is seeking to deprive Tenney of two ***unwaivable*** rights created by California statutes – his rights under the TAA and Section 16600.  As has been briefed in the LASC Action, the California court should refuse to enforce the New York forum selection clause because doing so would diminish Tenney's rights in a way that violates several of California's public policies. *See, e.g.*, *Verdugo v. Alliantgroup, L.P.* 237 Cal. App. 4th 141, 147 (2015); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12 (2001).  Several California courts have held that coupling a foreign choice of law clause with a foreign forum selection clause necessarily would violate an unwaivable statutory right. *See, e.g.*, *Am. Online*, 90 Cal. App. at 14-15 (holding that enforcing the clauses would "inevitab[ly] . . . eliminate" the specific protections the California Legislature enacted and made unwaivable).

FaZe Clan, a California company, is simply using a New York forum selection clause and a New York choice of law provision to circumvent and avoid compliance with the TAA and the legal consequences of such compliance.  By filing this action instead of waiting for a ruling in the LASC on its *forum non conveniens* motion, FaZe Clan is creating unnecessary and duplicative litigation.

17

*Colorado River* abstention is especially appropriate where, as here, "the federal suit could be considered both vexatious and contrived," *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988).  FaZe Clan appears to have instituted this newer action to deprive Tenney of his unwaivable California rights and to have a new playing field should the Labor Commissioner Proceeding and the LASC Action turn out badly for it.  That is not a proper basis by which to claim federal judicial resources.  Accordingly, Tenney respectfully requests that the Court abstain and dismiss the action.

## II.    In the Alternative, the Court Should Stay This Action

In the alternative, the Court should stay this action *at least* until the Labor Commissioner Proceeding is concluded and a final, unappealable decision on FaZe Clan's pending *forum non conveniens* motion is rendered in the LASC Action.  At that point, the parties could confer about an appropriate way forward, if any, in this action.

There are two independently sufficient bases supporting a stay.  First, where, as here, "the movant has met its burden" of showing that abstention is warranted, "the *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate."  *Cong. Talcott Corp. v. Roslin*, No. 95-cv-7698 (LAP), 1996 WL 499337, at *9 (S.D.N.Y. Sept. 4, 1996) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28).  Second, the stay may be grounded upon "the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, the Court may enter a stay of these proceedings until there are further developments in the two earlier filed state matters.

### III.    Alternatively, and Subject to a Ruling in the LASC Action, the Court Lacks Personal Jurisdiction Over Tenney

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650, at *5 (S.D.N.Y. Mar. 7, 2014). To survive such a motion, the plaintiff must "make a prima facie showing through its pleadings and affidavits that jurisdiction exists." *Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 199 (S.D.N.Y. 2001) (citations omitted). While a plaintiff's pleadings "are construed in the light most favorable to the plaintiff," a court "will not, however, accept legally conclusory assertions or draw argumentative inferences." *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 229 (S.D.N.Y. 2015) (citations omitted).

Regardless of the theory of personal jurisdiction, Plaintiff must articulate some factual basis stating at least a prima facie claim of personal jurisdiction. *See Continental Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 Fed. App'x 768, 769 (2d Cir. 2014) (plaintiff "cannot establish jurisdiction through conclusory assertions alone" but must "establish[] jurisdiction with some factual specificity") (citation omitted). The Complaint alleges that the only basis for this Court's personal jurisdiction over Tenney is his consent to jurisdiction in the Gamer Agreement. Compl. ¶ 14. However, the Labor Commissioner Proceeding and the LASC Action both present the question – and will decide the question – of whether the Gamer Agreement is void *ab initio*. In addition, the court in the LASC Action is currently considering whether the forum selection clause in the Gamer Agreement is enforceable, and a decision is likely on or shortly after the October 28, 2019 hearing on FaZe Clan's motion. If the Gamer Agreement is deemed void *ab initio* or if the court in the LASC Action determines that the forum selection clause is unenforceable, then this Court lacks personal jurisdiction over Tenney.

19

## CONCLUSION

For the reasons set forth above, Tenney respectfully requests that the Court dismiss FaZe Clan's Complaint because it is a duplicative action that calls for abstention under *Colorado River*. Alternatively, Tenney requests a stay of this action or dismissal for lack of personal jurisdiction.


Dated:  New York, New York
        October 8, 2019

        BEYS LISTON & MOBARGHA LLP


By: */s/ Joshua D. Liston*

    Joshua D. Liston
       (jliston@blmllp.com)
    641 Lexington Ave., 14th Floor
    New York, New York 10022
    Tel:  (646) 755-3601
    Fax:  (646) 755-3599

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*

20