**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FAZE CLAN INC.,

                    Plaintiff,

vs.

TURNER TENNEY p/k/a "TFUE"

                    Defendant.

Case No. 1:19-cv-07200-JSR

**OPPOSITION OF PLAINTIFF FAZE CLAN INC. TO DEFENDANT'S MOTION TO DISMISS OR STAY THE ACTION**

**Jury Trial Demanded**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      The Parties ................................................................................................ 3

        B.      The Gamer Agreement and its Mandatory Forum Selection Clause ..................... 3

        C.      Tenney's California Administrative Proceeding .................................................. 4

        D.      Tenney's California State Court Action ("LASC Action") ................................... 5

        E.      The Instant Federal Action ............................................................................ 6

III.    ARGUMENT ...................................................................................................... 7

        A.      The Colorado River Abstention Doctrine Provides No Basis for a
                Dismissal .................................................................................................... 7

                1.      The Colorado River Standard ................................................................ 7

                2.      None of the Six Colorado River Factors Weigh in Favor of a
                        Dismissal ........................................................................................... 8

                        a.      This Controversy Does Not Involve a "Res" -- Much Less a
                                Res Over which Another Court Has "Assumed
                                Jurisdiction" ............................................................................. 8

                        b.      The "Convenience" Factor Weighs Against Abstention ............... 9

                        c.      Retaining Jurisdiction Will Not Create Piecemeal Litigation....... 10

                        d.      The State Court Action Is in its Infancy -- Faze Clan Has
                                Yet to Even File a Responsive Pleading ..................................... 12

                        e.      The Federal and New York Law at Issue Weigh Against
                                Abstention ............................................................................... 13

                        f.      The Adequacy of the State Court Is "Largely Irrelevant" to
                                the Abstention Calculus ............................................................ 13

                        g.      If Any Party Has Been "Vexatious," It Is Tenney ....................... 14

                3.      A Stay Is Not Warranted ....................................................................... 15

        B.      Tenney's Personal Jurisdiction Argument Lacks Merit........................................ 16

IV.     CONCLUSION................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abe v. New York Univ.*,
  2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) ................................................................12, 15

*Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*,
  800 F.2d 325 (2d Cir. 1986)..........................................................................................13

*Chiba v. Greenwald*,
  156 Cal. App. 4th 71 (2007) ...........................................................................................5

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..............................................1, 2, 7, 8, 9, 10, 11, 13, 14, 15

*Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*,
  923 F. Supp. 2d 590 (S.D.N.Y. 2013)....................................................................12, 13

*De Cisneros v. Younger*,
  871 F.2d 305 (2d Cir. 1989)....................................................................................10, 11

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)......................................................................................16, 17

*Estee Lauder Companies Inc. v. Batra*,
  430 F. Supp. 2d 158 (S.D.N.Y. 2006).............................................................................11

*Exploration II, Inc. v. Biallas*,
  2009 WL 1066244 (S.D.N.Y. Apr. 21, 2009)...........................9, 10, 11, 12, 13, 14

*Iacovacci v. Brevet Holdings, LLC*,
  2019 WL 2992165 (S.D.N.Y. July 9, 2019) ..................................................................14

*Kaplan v. Reed Smith LLP*,
  919 F.3d 154 (2d Cir. 2019) (applying *Colorado River*)................................7, 13, 14

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)......................................................................................................16

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*,
  896 F.3d 174 (2d Cir. 2018)...........................................................................................9

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................8, 14, 15

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  673 F.3d 84 (2d Cir. 2012)..........................................7, 8, 9, 10, 11, 12, 13, 14

*Orix Credit Alliance, Inc. v. Bell Realty, Inc.*,
  1994 WL 86394 (S.D.N.Y. Mar. 16, 1994) ......................................................8, 9, 10, 11, 15

*RECAP Investments XI-Fund A, L.P. v. McCullough Harris, LLC*,
  760 F. Supp. 2d 368 (S.D.N.Y. 2010)..................................................................................8, 10

*Tee Vee Toons, Inc. v. Grendel Prods., LLC*,
  1999 WL 988177 (S.D.N.Y. Nov. 1, 1999) .................................................................................16

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*,
  765 F.2d 356 (2d Cir. 1985).............................................................................................14, 15

*Village of Westfield v. Welch's*,
  170 F.3d 116 (2d Cir. 1999).....................................................................................................14

*Wells Fargo Century, Inc. v. Brown*,
  475 F. Supp. 2d 368 (S.D.N.Y. 2007).......................................................................................17

*Woodford v. Community Action Agency*,
  239 F.3d 517 (2d Cir. 2001)........................................................................................................8

**Statutes**

Cal. Code Civ. Proc. § 418.10 ..........................................................................................................6

Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*) ...............................................................13

**Other Authorities**

Federal Rule of Civil Procedure 12 ...................................................................................2, 16, 17

# I.    INTRODUCTION

In the instant motion, defendant Turner Tenney ("Tenney") asks the Court to abstain from exercising its rightful jurisdiction so that this case can be heard instead in a California state court.  However, the contract at the heart of this case contains a ***mandatory*** and ***exclusive*** forum selection clause that requires it to be adjudicated in New York, under New York law.  As discussed in detail below, there is no basis for the Court to abstain from exercising its jurisdiction in this case.

Tenney, a Florida resident, is a celebrity who is well known for competing in esports as a member of FaZe Clan's Fortnite esports team.  Beginning several months ago, Tenney began denying his contractual obligations to FaZe Clan, and instead sought to compete against FaZe Clan and keep the parties' shared revenue streams for himself.  However, Tenney did not commence an action a New York court, as required by the contract's forum selection clause.  Rather, Tenney commenced an action against FaZe Clan in a California state court and filed a petition with the California Labor Commissioner.

FaZe Clan responded by commencing the instant action in New York, consistent with the forum selection clause.  Tenney now seeks to wrest this case back to California.  But Tenney does not, and cannot, argue either that the contract's forum selection clause is invalid, or forum *non conveniens*.  Rather, Tenney asks the Court to decline its valid jurisdiction under the exceptional *Colorado River* abstention doctrine.

In so moving, Tenney bears a heavy burden of persuasion because a federal court's "obligation" to hear and decide a case is "virtually unflagging."  (*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).)  Indeed, abstention is "the exception, not the rule" and only the "clearest of justifications will warrant dismissal."  (*Id.)*  As

discussed in greater detail herein, Tenney falls far short of discharging his heavy burden.  For

example, Tenney fails to explain how any of the six "*Colorado River* factors" supposedly weigh

in favor of a dismissal and, collectively, they overwhelmingly counsel against it because:

- This is not an *in rem* dispute in which both the federal and state court need to take physical control of the same property "to give effect to their jurisdiction" (*see infra* § III(A)(2)(a));

- Tenney waived any right to argue that New York is "inconvenient" by contractually agreeing to a mandatory New York forum selection clause, which is presumptively valid for purposes of an abstention analysis (*see infra* § III(A)(2)(b));

- There is no "risk of inconsistent outcomes *not preventable by principles of res judicata and collateral estoppel*" because the only two parties to this action (Tenney, and Faze Clan) are also the only two parties to the state court action (*see infra* § III(A)(2)(c));

- The state court action is in its infancy -- Faze Clan has not answered the California state court complaint, the initial case management conference in California has not yet occurred, and neither party has responded to any discovery (*see infra* § III(A)(2)(d));

- The Complaint raises issues of Federal law and New York law, not California law (*see infra* § III(A)(2)(e));

- The "adequacy of the state court" factor is "largely irrelevant" here and does not support abstention (*see infra* § III(A)(2)(f)).

Under these circumstances, abstention is not warranted.

Tenney's "alternative" motion to dismiss for lack of personal jurisdiction, pursuant to

Federal Rule of Civil Procedure 12(b)(2) fails for two reasons.  First, as the Complaint alleges, it

is indisputable that Tenney agreed in the Gamer Agreement to the jurisdiction in New York.

(*See infra* § III(B).)  Second, Tenney presents no evidence to show that his submission to New

York's jurisdiction is unenforceable.  Instead, Tenney merely argues that a California state court

may someday address the question of jurisdiction when it "determine[s] [whether] the forum

selection clause is unenforceable."  This is not a valid basis for a Rule 12(b)(2) motion.

For all of these reasons, Tenney's motion should be denied.

## II.     BACKGROUND

### A.     The Parties

FaZe Clan is a premier esports and entertainment organization.  (Complaint ¶¶ 15.)  It is a Delaware corporation that presently maintains its headquarters in California (*id.* ¶ 11); however, it is registered to do business in New York (Declaration of Manny J. Caixeiro ¶ 5, Ex. B, Anderson Decl. ¶ 7), it has one or more full-time employees located in New York (*id.* ¶ 7), it maintained office space in New York through mid-2018 (*id.* ¶ 5), and it views New York as an important location for its business (*see id.* ¶¶ 7, 8.)

Tenney is an esports gamer who was a member of FaZe Clan's Fortnite esports team. (*Id.* ¶ 1.)  He is, and at all times has been, a resident of Florida. (*Id.* ¶ 11; *see also* Caixeiro Decl. ¶ 5, Ex. C, Ali Decl. ¶ 8.)[1]

### B.     The Gamer Agreement and its Mandatory Forum Selection Clause

Under the parties' Gamer Agreement of April 27, 2018, Tenney agreed to provide various services to FaZe Clan in exchange for, *inter alia*, monetary consideration and permission to affiliate himself with FaZe Clan's powerful brand. The Gamer Agreement does not require the services to be provided from any particular location, and it is understood that to the extent Tenney performed the agreement he generally did so from outside of California.  FaZe Clan alleges that Tenney has breached the Gamer Agreement by withholding revenues he is required to share with FaZe Clan (Complaint at First Cause of Action), competing against FaZe Clan during the term of the Gamer Agreement (*id.* at Second Cause of Action), misappropriating FaZe

---

[1] While Tenney makes much ado of his temporary business travels to California, he never took steps consistent with becoming a California resident (*e.g.*, leasing or owning real property in California, obtaining a California driver's license, registering a car in California, registering to vote in California, or changing his mailing address to California).  (Caixeiro Decl., Ex. C, Ali Decl. ¶¶ 3-4.)

Clan's confidential information (*id.* at Third Cause of Action) and disparaging FaZe Clan (*id.* at Fourth Cause of Action.)[2]  Tenney has engaged in this conduct in part because he is seeking to get out of the Gamer Agreement and start a new esports organization or otherwise compete against FaZe Clan.  (*Id.* ¶ 32.)

The Gamer Agreement contains a mandatory forum selection clause, in which Tenney and FaZe Clan expressly agreed that any dispute under the Gamer Agreement must be exclusively brought in a New York City court, and that New York law would apply:

> **This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of law principles.  The Parties submit exclusively to the state or federal courts located in New York, NY for any claim hereunder and each Party consents to the jurisdiction thereof.**

(Caixeiro Decl., Ex. A (Gamer Agreement at 4) (emphasis added).)  In the above-referenced forum selection clause, Tenney also "consent[ed] to the jurisdiction" of this Court.  (*Id.*)  Tenney's motion to dismiss does not challenge the enforceability of this clause.[3]

## C.    Tenney's California Administrative Proceeding

In direct contravention of the Gamer Agreement, on May 15, 2019, Tenney commenced proceedings before the Labor Commissioner of the State of California, seeking a declaration that the Gamer Agreement is supposedly unenforceable because it allegedly involves FaZe Clan

---

[2] A copy of the Gamer Agreement is attached as Exhibit A to the Declaration of Manny J. Caixeiro.

[3] While Tenney has challenged the enforceability of this clause in his opposition to FaZe Clan's California state court motion to dismiss for *forum non conveniens* (*see* Liston Aff., Exs. 6 & 8), Tenney does not assert those same challenges in *this* motion.  Although the question of the clause's enforceability is not currently before this Court, there can be no doubt that the provision is, in fact, enforceable.  (*See* Liston Aff., Ex. 6 at pp. 6-11 (explaining the parties' justifications for a New York venue and New York law).)

providing unlicensed talent agency services to Tenney.[4]  (Liston Aff., Ex. 2.)  Contrary to Tenney's characterization of that proceeding as "moving apace" (Mot. at 7), virtually nothing has happened in the past six months--likely because the Labor Commissioner wants to avoid interfering with the parties' pending litigation.  (Smiley Decl. ¶ 5.)  A hearing date has not been set, and while the assigned hearing officer recently inquired into counsel's availability for a hearing sometime prior to March 31, 2020, that is likely because the Labor Commissioner had not been updated on the status of this case or the California action described below.  (*Id.*, Liston Aff., Ex. 3.)

Notably, FaZe Clan at no time has conceded that the Labor Commissioner has jurisdiction over the Gamer Agreement.  (Smiley Decl. ¶ 4.)  The Labor Commissioner presently has not made any findings in this regard.  Assuming, for the sake of argument, the Labor Commissioner accepts jurisdiction and renders a decision, that decision would then be appealable to a trial court for *de novo* review.  (*Id.* ¶ 6.)  At that point, the matter would be in the hands of the California state court system, and it would likely be additional months or years before it is finally resolved.  (*Id.*)

D.    **Tenney's California State Court Action ("LASC Action")**

On May 20, 2019, Tenney filed what he now describes as a "preemptive" lawsuit against FaZe Clan in a California state court.[5]  (Liston Aff., Ex. 1.)  The LASC Action seeks a declaratory judgment that the Gamer Agreement has been terminated, a declaratory judgment

---

[4] FaZe Clan denies these allegations and denies any liability in the LASC Action, as defined below.

[5] Tenney cites *Chiba v. Greenwald*, 156 Cal. App. 4th 71, 75-76 (2007) for the proposition that "preemptive" lawsuits under the TAA are permissible.  (Mot. at 7-8.)  But in *Chiba* the state court lawsuit was deemed premature and ordered stayed until the Labor Commissioner could rule on the TAA dispute.  (*Id.* at 76.)

that certain provisions of the Gamer Agreement are void and unenforceable, and damages for

FaZe Clan's alleged breach of the Gamer Agreement, among other causes of action.  (*See id.*)

Thus, the substance of the LASC Action falls squarely within the Gamer Agreement's exclusive

New York choice of venue and jurisdiction provisions.

As of this date, FaZe Clan has not responded to the complaint in the LASC Action.

(Caixeiro Decl., ¶ 3.)  In fact, FaZe Clan has filed a motion to dismiss or stay the LASC Action

based on forum selection clause, which is scheduled to be heard on November 8, 2019.  (*See*

Liston Aff., Ex. 4.; Caixeiro Decl. ¶ 4.)  If Tenney somehow prevails on that motion, immediate

appellate (writ of mandate) proceedings are inevitable[6] so FaZe Clan will be not answering the

LASC Action in the foreseeable future. The state court has not yet held the initial case

management conference, which is scheduled for November 8, 2019, so there is no case schedule

in place and the parties are not moving forward with discovery.[7]  (*Id.* ¶ 6.)

**E.     The Instant Federal Action**

On August 1, 2019, consistent with the Gamer Agreement's forum selection clause, FaZe

Clan filed the instant Complaint in this Court.  Many of FaZe Clan's claims arise under and

relate to the Gamer Agreement.  (*See*, *e.g.*, Complaint ¶¶ 37-53.)  A Case Management

Conference is set for October 29, 2019 and the Court has ordered the parties to be ready for trial

---

[6] The California statute pursuant to which FaZe Clan filed its *forum non conveniens*  motion
(Cal. Code Civ. Proc. § 418.10(a)(2)) provides for immediate writ review of any adverse ruling.
Specifically, Section 418.10 states that if FaZe Clan's "motion is denied by the trial court," FaZe
Clan "may petition an appropriate reviewing court for a writ of mandate to require the trial court
to enter its order . . . staying or dismissing the action." (*Id.)*  The statute also provides that FaZe
Clan need not respond to the state court complaint "until 10 days after service . . . of a written
notice of the final judgment in the mandate proceeding."  (*Id.* § 418.10(c).)

[7] Tenney has attempted to serve third-party subpoenas in the California action, but they are being
held in abeyance.  Neither party has sought or obtained any discovery from the other party.

by February 28, 2020.  (Dkt. No. 13.)  Thus, this case will be ready for trial before FaZe Clan is even required to file a responsive pleading in the LASC Action.

### III.    ARGUMENT

**A.    The *Colorado River* Abstention Doctrine Provides No Basis for a Dismissal**

**1.    The *Colorado River* Standard**

"In *Colorado River,* the Supreme Court held that, in . . . 'exceptional circumstances,' a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources."  (*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100–01 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 813 (citations omitted) (underscored added); *see Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019) (applying *Colorado River*).)

"In evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction," *Niagara*, 673 at 100-01 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983) (emphasis added).)  Specifically,

> "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction;
>
> (2) whether the federal forum is less inconvenient than the other for the parties;
>
> (3) whether staying or dismissing the federal action will avoid piecemeal litigation;
>
> (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other;
>
> (5) whether federal law provides the rule of decision; and
>
> (6) whether the state procedures are adequate to protect the plaintiff's federal rights."

*(Id.)* (citation omitted).

"[N]one of these factors alone 'is necessarily determinative,' but, instead, 'a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.'" (*Id.* (quoting *Colorado River,* 424 U.S. at 818–19 (citation omitted).)  "Only the clearest of justifications will warrant dismissal." (*Id.* (quoting *Colorado River*); *see also Moses H. Cone*, 460 U.S. at 16.)

Where a *Colorado River* factor is facially neutral, that "is a basis for retaining jurisdiction, not for yielding it." (*Woodford v. Community Action Agency,* 239 F.3d 517, 522 (2d Cir. 2001).)  In evaluating abstention decisions like the present one, the court's "task ... is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." (*Moses H. Cone,* 460 U.S. at 25–26 (emphasis in original).)  In short, "[t]his exception is a narrow one, and the party arguing for abstention bears a heavy burden of persuasion." (*Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, 1994 WL 86394, at *2 (S.D.N.Y. Mar. 16, 1994) (citation omitted).)

> ### 2.    None of the Six *Colorado River* Factors Weigh in Favor of a Dismissal
>
> #### a.    This Controversy Does Not Involve a "*Res*" -- Much Less a *Res* Over which Another Court Has "Assumed Jurisdiction"

Tenney concedes, as he must, that this controversy "does not involve a *res*." (Mot. at 13.)  His attempt to analogize this action to *in rem* or quasi *in rem* proceedings (Mot. at 13) reflects a fundamental misunderstanding as to why abstention is favored in such proceedings: the impracticability of two different courts each trying to take physical control of the same tangible property -- the "res" -- in order to give effect to the court's jurisdiction.  (*See RECAP Investments XI-Fund A, L.P. v. McCullough Harris, LLC*, 760 F. Supp. 2d 368, 370 (S.D.N.Y.

2010) (for purposes of *Colorado River* abstention, *in rem* and quasi *in rem* proceedings include "cases where property has been actually seized under judicial process" and "suits brought to marshal assets, administer trusts, or liquidate estates" and other suits "where, to give effect to its jurisdiction, the court must control the property") (quotation omitted); *Exploration II, Inc. v. Biallas*, 2009 WL 1066244, at *2 & n.1 (S.D.N.Y. Apr. 21, 2009) (for purposes of *Colorado River* "that the controversy may involve disputed property ownership is not the same thing as a court's exercise of jurisdiction over that property"); *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 192 (2d Cir. 2018) ("The logical and practical difficulty of two courts simultaneously vying for possession or control of the same property is the key to the conflict.") (quotations omitted); *Niagara*, 673 F.3d at 101 ("there is no property or res at issue"); *Orix*, 1994 WL 86394, at *3 (same).)

Tenney's argument that the California state court has "assumed control" over the legal question of "whether FaZe Clan is required to be licensed" (Mot. at 13) is nonsensical and not supported by any case authority. A disputed legal question is not a "res." If it were, every proceeding would automatically become an *in rem* proceeding. This factor weighs against abstention.

### b.   The "Convenience" Factor Weighs Against Abstention

Tenney's assessment of the relevant convenience of New York and California forums (*see* Mot. at 15-16) ignores the existence of the mandatory forum selection clause. By agreeing to a New York forum, Tenney waived his right to now argue that New York is not "convenient" for him. As one district court explained:

> [D]efendants' allegation that New York is an inconvenient forum must fall on deaf ears, given that the [contract] that is the basis of plaintiff's action contains a forum selection clause by which defendants consent to venue in New York and expressly waive any objection to venue. Because "defendants have waived any right to have the court consider

the inconvenience to them of litigating here," "to the extent
convenience figures into the calculus, therefore, it figures against
[*Colorado River*] abstention."

(*Exploration II*, 2009 WL 1066244, at \*2 (quotation omitted); *see RECAP Investments,* 760 F.

Supp. 2d at 371 (for purposes of a *Colorado River* analysis, "[b]y agreeing to the exclusive

jurisdiction of New York courts, the parties necessarily acknowledge that New York is not an

inconvenient forum."); *Orix*, 1994 WL 86394, at \*3 ("Absent good cause to invalidate [the

forum selection] provisions, the Court will not deprive [plaintiff] of their benefit, which is what

abstention here would do.").)

Notably, Tenney's motion does not present any legal argument that the forum selection

clause is unenforceable.  This may be because Tenney wants to avoid a substantive ruling by this

Court.  In any case, the forum selection clause is indisputably enforceable for purposes of the

instant motion.

### c.    Retaining Jurisdiction Will Not Create Piecemeal Litigation

The "primary context" in which the Second Circuit has "affirmed *Colorado River*

abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of

inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."

(*Niagara*, 673 F.3d at 101-02 (quoting *Woodford*, 239 F.3d at 522).)  "The classic example arises

where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit,

one defendant seeks a declaration of nonliability and the other potentially liable defendants are

not parties."  (*Id.* (quoting *Woodford*); *cf. De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir.

1989) (finding abstention appropriate where defendant could "face liability in two forums with

the risk of inconsistent results, and the same state plaintiffs would be unable to be joined in the

pending federal action because their presence would defeat diversity jurisdiction").)

Here, res judicata and/or collateral estoppel are available to avoid inconsistent outcomes. The only two parties to this action (Tenney, and FaZe Clan) are identical to the only two parties to the LASC Action.  (*See Niagara*, 673 F.3d at 102 (no "risk of inconsistency" where plaintiff and defendant "are both named in the state-court actions and in the federal suit").)  This is not an instance in which one suit or the other includes different parties that might not be subject to res judicata at the end of the day.  Nor is this a situation in which Tenney's participation in this federal lawsuit would defeat subject matter jurisdiction.  (*See, e.g., De Cisneros*, 871 F.2d at 308.)

At best, Tenney identifies legal questions purportedly common to both this action and the LASC Action.  (Mot. at 12-13.)  But if the mere existence of common questions were enough to warrant abstention, "dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court."  (*Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 168 (S.D.N.Y. 2006) (quoting  *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997).)  That is unquestionably not the law.

To the extent any duplication of effort does occur, that is a problem of Tenney's own making.  He filed suit in California despite full knowledge that, in the Gamer Agreement, he had agreed to a New York forum.  (*See Orix*, 1994 WL 86394, at *4 (defendant "instituted suit in the Pennsylvania forum, and it did so with full awareness that the terms of the [contract] gave [defendant] the right to insist that any claim . . . be brought in New York.").)  The *Orix* court aptly characterized just such a jurisdictional objection as "akin to one who has set his neighbor's house on fire complaining that ash blows onto his lawn."  (*Id., see Exploration II,* 2009 WL 1066244, at *3 (any duplication was of defendant's "own making in bringing the additional California action").)

**d.      The State Court Action Is in its Infancy -- Faze Clan Has Yet to Even File a Responsive Pleading**

The fourth factor, the relative progression of the federal and state actions, "turns not just on 'on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions.'" (*Niagara*, 673 F.3d at 102 (quoting *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (internal quotations omitted).)  Even where, as here, "a state action was commenced before the federal suit, that factor will carry 'little weight' if 'there has been limited progress in [the] state court suit.'" (*Id.* (quoting *Village of Westfield*); *see also Exploration II*, 2009 WL 1066244, at *2 ("if neither the federal nor state action has progressed the "neutrality of this factor . . . favors retention of jurisdiction"); *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 601 (S.D.N.Y. 2013) (where "the federal and state proceedings seem to be in a holding pattern pending the resolution of the instant [abstention] motion and the progress of the two actions is substantially equal" then "this factor is neutral") and neutrality "is a basis for retaining jurisdiction, not for yielding it.") *Cf. Abe v. New York Univ.*, 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016) (abstention appropriate where nearly twenty motions had been litigated in the state action, thousands of pages of documents had been produced, hundreds of interrogatories had been answered, and by contrast the federal action, filed nearly five years later, had not progressed past the abstention motion).)

Here, the state court action is in its infancy.  As explained above (*see* Caixeiro Decl. at ¶¶ 3-4; 6) the California state court has yet to determine whether it has jurisdiction over this dispute, FaZe Clan has not filed a responsive pleading, and will not be required to in the foreseeable future.  The parties have not responded to any written discovery, and no depositions have taken place.  (*See id.*)  At best, this is a situation in which "the progress of the two actions is substantially equal" and thus the neutrality favors abstention.

e.   **The Federal and New York Law at Issue Weigh Against Abstention**

The fifth factor under *Colorado River* looks to whether state or federal law applies to the merits of the case.  (*Niagara*, 673 F.3d at 102.)  "When the applicable substantive law is federal, abstention is disfavored."  (*Id.* (quotation omitted).)

Here, FaZe Clan's Complaint includes a federal cause of action for violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*) (Complaint ¶¶ 54-60.)  Moreover, the Gamer Agreement at the center of this dispute contains a New York choice of law provision and that provision is presumptively valid and enforceable given Tenney's failure to even attempt to establish otherwise as part of this motion.  (*See* Ex. A at p. 4.)  Thus, even if the Complaint were limited solely to state law causes of action, which it is not, "there is no comparative advantage in having New York law applied by a state court *in California*, which is presumably less familiar with New York law than is this Court." *(Exploration II*, 2009 WL 1066244, at *3 (emphasis in original).)  This factor weighs against abstention as well.

f.   **The Adequacy of the State Court Is "Largely Irrelevant" to the Abstention Calculus**

Finally, "the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*."  (*Exploration II*, 2009 WL 1066244, at *3 (quoting *Estee Lauder*, 430 F. Supp. 2d at 169); *see Dalzell Mgmt.*, 923 F. Supp. 2d at 602. ("The fact that the state court is competent to adjudicate plaintiff's claims is largely irrelevant.") (quotation omitted).)

It is only upon a showing that a state court is <u>not</u> adequate, that this factor meaningfully comes into play, in which case it weighs <u>against</u> abstention.  (*See Kaplan v. Reed Smith LLP*, 919 F.3d 154, 158-59 (2019) ("This factor is more important when it weighs in favor of federal jurisdiction") (citing *Niagara*, 673 F.3d at 103 and *Village of Westfield*, 170 F.3d at 124); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (the

13

"adequacy" factor "is more important when it weighs in favor of federal jurisdiction"; it is "of little weight" for the party seeking to avoid jurisdiction); *Exploration II*, 2009 WL 1066244, at *3 ("it is only the inadequacy of a state forum that matters significantly, in favoring federal jurisdiction, in a *Colorado River* determination").)  Thus, this factor is either neutral or "largely irrelevant."

> g.    **If Any Party Has Been "Vexatious," It Is Tenney**

Tenney's characterization of this federal action as "vexatious" (Mot. at 17) is factually incorrect and legally irrelevant.

As a matter of legal precedent, the Supreme Court has never endorsed "vexatious conduct" as a separate (seventh) factor under the *Colorado River* analysis, which is how Tenney tries to frame the issue.  (Mot. at 17.)  (*See Moses H. Cone*, 460 U.S. at 17 n.20  (noting in dicta, without deciding, that the Courts of Appeal's decision to consider "the vexatious or reactive nature of either the federal or the state litigation" had "considerable merit" but "[w]e need not rely on such reasoning here . . .").)  Presumably because the *Moses H. Cone* footnote was only dicta, the Second Circuit's recent *Colorado River* jurisprudence contains no mention of "vexatious" conduct, whether as a separate (seventh) factor or otherwise.  (*See*, *e.g.*, *Kaplan*, 919 F.3d at 158-59; *Niagara*, 673 F.3d at 100-04; *Village of Westfield*, 170 F.3d at 117; *see also Iacovacci v. Brevet Holdings, LLC*, 2019 WL 2992165, at *4 (S.D.N.Y. July 9, 2019) ("the Second Circuit has 'never formally cited this factor in its enumeration of the relevant considerations under *Colorado River.*'") (quotation omitted).)  To the best of FaZe Clan's knowledge, only a single (1985) Second Circuit opinion (*Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) -- quoting only the *Moses H. Cone* dicta as

"authority" -- has even mentioned the "vexatious nature" of litigation as part of a *Colorado River* analysis.  (*See* Mot. at 17 (citing *Telesco*).)[8]

In any event, even assuming this is a proper factor for consideration, Tenney has made no showing whatsoever of any vexatious litigation conduct.  FaZe Clan has merely filed suit in the forum to which the parties contractually agreed.  That is not "vexatious" at all, much less akin to the conduct at issue in *Telesco*, in which the *same plaintiff* that had sued in state court subsequently sued in federal court, *five years later*, after he had "suffered" multiple substantive "failures in the earlier state court action."  (*Id.* at 363.)

### 3.      A Stay Is Not Warranted

Tenney's "alternative" request for a *Colorado River* <u>stay</u> -- as opposed to a *Colorado River* <u>dismissal</u> (Mot. at 18) -- is a distinctions without a difference.  "[T]he abstention analysis is the same whether a party seeks stay or dismissal."  (*Orix*, 1994 WL 86394, at *2 (citing *Bethlehem Contracting*, 800 F.2d at 327 n.1 (noting that the Supreme Court has "rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the [*Colorado* River] exceptional circumstances test." (citing *Moses H.*, 460 U.S. at 28).)  For all the reasons stated above, the *Colorado River* factors counsel against abstention, whether in the form of a dismissal, a stay, or otherwise.

Tenney also asks this Court to stay this action based on the Court's "inherent power" to "control the disposition" of its docket.  (Mot. at 18 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).)  In essence, Tenney asks this Court to bypass a robust body of *Colorado River*

---

[8] Tenney also cites the district court opinion in *Abe v. N.Y. Univ.*, 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016) for the proposition that any "vexatious conduct" should "influence" the *Colorado River* calculus.  (Mot. at 17.)  The only appellate authority *Abe* cites is the 1986 *Telesco* opinion, which in turn cites only to the *Moses H. Cone* dicta.  *See Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*).

jurisprudence based on a single 1936 case authority (*Landis*) having nothing to do with parallel federal and state proceedings -- *Landis* involved concurrent federal proceedings, not state proceedings.  (*See id.* at 254.)

Lack of legal authority aside, a stay is entirely inappropriate given the slow pace of the LASC Action, and the unavoidable delays that are bound to arise.  As noted above, FaZe Clan has not filed a responsive pleading in the LASC Action, no discovery between the parties has occurred, and, even in the likely event Tenney were to prevail on FaZe Clan's yet-to-be heard *forum non conveniens* motion, FaZe Clan would have a right to an immediate, interlocutory appeal of any adverse ruling (*see* Caixeiro Decl., ¶ 4).  *See Tee Vee Toons, Inc. v. Grendel Prods., LLC*, 1999 WL 988177, at *1 (S.D.N.Y. Nov. 1, 1999)(no stay warranted because, *inter alia*, the "federal lawsuit will be concluded before any appeal from the California dismissal is even decided.")  Conversely, this Court has required that the case be trial-ready by February 28, 2020.

## B.    Tenney's Personal Jurisdiction Argument Lacks Merit

Tenney's half-hearted request to dismiss this action pursuant to Rule 12(b)(2) (Mot. at 19) fails for at least two reasons.  FaZe Clan does not dispute that, as the plaintiff opposing a Rule 12(b)(2) motion to dismiss, it must make a "*prima facie*" showing of personal jurisdiction. But "the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  (*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quotation omitted).)  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction."  (*Id.* at 84-85.)  "At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." (*Id.*)  It is only "after discovery"  that "the *prima facie* showing must be factually supported."

(*Id.*)  In short, "a Rule 12(b)(2) motion . . . assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency . . ."  (*Id.* at 85.)

Here, FaZe Clan's Complaint alleges that "Tenney consented to personal jurisdiction in this Court" and quotes verbatim the text of the Gamer Agreement provision to that effect. (Complaint ¶ 14.)  This allegation alone is sufficient to defeat Tenney's Rule 12(b)(2) motion. (*See id.* at 85-86 (in the context of a Rule 12(b)(2) motion "it was error for the district court to resolve the factual dispute" as to the validity of a contract's forum selection clause).)

Of course, even if this were an evidentiary hearing, or a summary judgment motion, which it is not, Tenney's motion is *still* meritless.  Tenney acknowledges the existence of the forum selection / consent-to-jurisdiction clause in the Gamer Agreement, which is presumptively valid and enforceable.  (*Wells Fargo Century, Inc. v. Brown*, 475 F. Supp. 2d 368, 371 (S.D.N.Y. 2007) (citing *Eslworldwide.com, Inc. v. Interland, Inc*., 2006 WL 1716881, at *2 (S.D.N.Y. June 21, 2006).)  It is the party seeking to prevent enforcement -- Tenney -- that "bear[s] the heavy burden of making a 'strong showing' in order to overcome the presumption of validity." (*Id.* (clauses should be enforced "unless it is clearly shown that enforcement would be unreasonable and unjust or that the clause was obtained through fraud or overreaching").)

Yet, Tenney's motion does not ask the Court to deem that provision unenforceable, much less does it advance legal arguments against enforceability.  Instead, Tenney argues that, at some future date, a California state court will "determine [whether] the forum selection clause is unenforceable," and in so doing will determine whether "this [federal] Court lack personal jurisdiction over Tenney."  (Mot. at 19.)  That is not a genuine attack on personal jurisdiction, but merely a re-hash of the abstention argument, and fails for all the same reasons.

## IV.    <u>CONCLUSION</u>

For all these reasons, Tenney's motion to abstain, and motion to dismiss for lack of personal jurisdiction, should be denied.

Dated:  October 17, 2019

By: */s/ Manny J. Caixeiro*
   DENTONS US LLP
   Justin Kattan
    (justin.kattan@dentons.com)
   1221 Avenue of the Americas
   New York, New York 10020-1089
   (212) 768-6700

   Joel D. Siegel
    (joel.siegel@dentons.com)
   Manny J. Caixeiro
    (manny.caixeiro@dentons.com)
   Paul M. Kakuske
    (paul.kakuske@dentons.com)
   601 South Figueroa Street, Suite 2500
   Los Angeles, California 90017-5704
   (213) 623-9300

   Attorneys for Plaintiff FaZe Clan Inc.

113417976

18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this case.  My business address is Suite 2500, 601 South Figueroa Street, Los Angeles, California 90017-5704.

A true and correct copy of the document, entitled <u>OPPOSITION OF PLAINTIFF FAZE CLAN INC. TO DEFENDANT'S MOTION TO DISMISS OR STAY THE ACTION</u>, was served in the manner stated below.

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document.  On October 17, 2019, I checked the CM/ECF docket for this case and determined that the following person/s is/are on the Electronic Mail Notice List to receive NEF transmission at the email address/es stated below.

Joshua D. Liston
Beys Liston & Mobargha LLP
641 Lexington Avenue, 14th Floor
New York, NY 10022-4503

Counsel for Defendant
T: 646 755 3600 / F: 646 755 3599
E: jliston@blmllp.com

**2.  SERVED BY UNITED STATES MAIL &/OR DIRECT EMAIL:**  On <u>October 17, 2019</u>, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows, and/or to the email addresses indicated. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, NEXT BUSINESS DAY, FACSIMILE TRANSMISSION OR EMAIL:**  Pursuant to F.R.Civ.P. 5 and/or controlling Local Rules, on <u>October 17, 2019</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal or next business day delivery to the judge <u>will be completed</u> no later than 12:00 noon after the document is filed.

Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 14B
New York, NY 10007-1312

☒ By Messenger to the Judge's Dropbox w/ NEF behind
    by 5pm the next court day
☐ By Next Business Day [Trkg# _____]
☐ By Facsimile to _____
☐ Proposed Order by Email to
    dmg_chambers@cacd.uscourts.gov

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 17, 2019 | Frederick Kalve | |
| *Date* | *Printed Name* | *Signature* |

---

Amended from USBC Form F 9013-3.1
113461990\V-1