UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAZE CLAN, INC.,

        *Plaintiff,*

    -v-

TURNER TENNEY p/k/a "TFUE"

        *Defendant.*

Civil Action No. 19-cv-07200 (JSR)

ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Joshua D. Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel:  (646) 755-3601
Fax:  (646) 755-3599
jliston@blmllp.com

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*

Dated: New York, New York
      March 5, 2020

# TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF AUTHORITIES.................................................................................................ii

BACKGROUND .............................................................................................................1

ARGUMENT..................................................................................................................2

I.   Summary Judgment Standards ...............................................................................2

II.  Tenney Is Entitled to Partial Summary Judgment On FaZe Clan's First, Second, and
     Third Causes of Action for Breach of Contract Because the Gamer Agreement Expired
     on October 27, 2018 and Was Not Renewed.....................................................4

     A.  The Gamer Agreement Expired on October 27, 2018 Because FaZe Clan Failed to
         Satisfy a Condition Precedent to the Automatic Renewal Provision ...........................5

     B.  The Gamer Agreement Expired on October 27, 2018 Because FaZe Clan Failed to
         Satisfy New York General Obligations Law Section 5-903.........................................7

III. Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Fifth Cause of Action
     for Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C.
     § 1836 *et seq.* .................................................................................................8

IV.  Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Sixth Cause of Action
     for Intentional Interference with Contract .........................................................11

     A.  Contracts with "Gamers and Media Personalities Other Than Tenney" ....................12

     B.  Contracts with "Brand Deal Partners"................................................................13

V.   Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Seventh Cause of
     Action for Intentional Interference with Prospective Business Advantage.....................14

VI.  Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Eighth Cause of
     Action for Commercial Disparagement...............................................................15

VII. Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Ninth Cause of
     Action for Unjust Enrichment ..........................................................................18

CONCLUSION .............................................................................................................19

# TABLE OF AUTHORITIES

PAGE

CASES

*600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 589 N.Y.S.2d 825,
603 N.E.2d 930 (1992) ......................................................................................... 16

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612 (2d Cir. 1998) ......................... 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................... 3

*Angio–Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269 (S.D.N.Y. 1989) ....................... 15, 17, 18

*Bishop v. Porter*, No. 02 Civ. 9542 (JSR) (GWG), 2003 WL 21032011 (May 8, 2003) .............. 14

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83 (2d Cir. 2002) ........................... 3

*Caddlerock Joint Venture, L.P. v. Rubenstein*, 26 A.D.3d 219 (1st Dep't 2006) .......................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317  (1986) .............................................................................. 3

*China Privatization Fund (Del), L.P. v. Galaxy Entertainment Group Ltd.*,
95 A.D.3d 769, 945 N.Y.S.2d 659 (1st Dep't 2012) ............................................................. 7

*Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 Civ. 2628, 2002 WL 31398933
(S.D.N.Y. Oct. 24, 2002) ................................................................................... 15, 17

*Davis v. Boeheim*, 24 N.Y.3d 262, 998 N.Y.S.2d 131 (2014) .............................................. 16-17

*Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435 (1960) ............................................ 17-18

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ............................................................. 3

*Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559 (S.D.N.Y. 2016) ...................................... 8-11

*G–I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233 (S.D.N.Y. 2001) .............................. 14

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995) ............................................. 11

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001) ...................................................... 18

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 807 N.Y.S.2d 583,
841 N.E.2d 742 (2005) ......................................................................................... 18

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002)................................................6

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993)...............16

*Int'l Minerals v. Pappas*, 1992 WL 354504 (S.D.N.Y. Nov. 17, 1992).........................................13

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525
　　(S.D.N.Y. 2004)................................................................................................10

*Kirby v. Wildenstein*, 784 F. Supp. 1112 (S.D.N.Y. 1992) ......................................................17, 18

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) .........................................................16

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (1993)..........................................................................11

*Lane's Floor Coverings, Inc. v. Ardex, Inc.*, 1996 WL 19181
　　(E.D.N.Y. Jan. 4, 1996) ....................................................................................15

*Mann v. MediaNet Digital, Inc.*, CV 13-5269, 2013 WL 1214398
　　(C.D. Cal. Nov. 27, 2013)...................................................................................8

*Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113 (2d Cir. 1994) ...............................6

*Morales v. Quintel Entm't, Inc.*, 249 F.3d 115 (2d Cir. 2001) .......................................................3

*Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232 (2d Cir. 2002) ................................3

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (1996).............................14

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999)....................................................10

*Odeon Cap. Grp. v. Ackerman*, 16 civ. 274, 2018 WL 1089749
　　(S.D.N.Y. Feb. 2, 2018).......................................................................................7

*Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663 (1981) .............................................17

*Saks Inc. v. Attachmate Corp.*, No. 14 CIV. 4902 CM, 2015 WL 1841136
　　(S.D.N.Y. Apr. 17, 2015) ...................................................................................10

*Silipos, Inc. v. Bickel*, No. 1:06–CV–02205, 2006 WL 2265055
　　(S.D.N.Y. Aug. 8, 2006)......................................................................................10

*Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.*, 2000 WL 1772599
　　(S.D.N.Y. Nov. 28, 2000)....................................................................................13

*Steinhilber v. Alphonse*, 68 N.Y.2d 283,
  508 N.Y.S.2d 901, 501 N.E.2d 550 (1986) ........................................................16

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE,
  2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ........................................................8

*Waisbren v. Peppercord Prods., Inc.*, 41 Cal. App. 4th 246 (2002) ............................19

*W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157 (1990)...........................................6

*Yoo v. Robi*, 126 Cal. App. 4th 1089 (2005) ..........................................................19

### STATUTES & RULES

18 U.S.C. § 1836. ..................................................................................... 8-11

18 U.S.C. § 1839 ......................................................................................... 8-9

Federal Rule of Civil Procedure 56 ............................................................... 2-4

New York Gen. Obligations Law § 5-903........................................... 4-5, 7-8

Defendant Turner Tenney p/k/a "Tfue" ("Tenney") respectfully submits this memorandum of law in support of his motion for partial summary judgment on the claims against him set forth in the Complaint filed by Plaintiff FaZe Clan Inc. ("FaZe Clan").

## BACKGROUND

This is a case about esports – a new and rapidly growing entertainment format. Unlike traditional "sports," significant revenue in the esports entertainment industry is driven by creative content and performances, namely videos, featuring and created by the gamers themselves. These gamers are artists, entertainers, and content creators. They perform, they act, they direct, they edit, and they stream these videos to their audiences. The content created by these games is typically not found on traditional broadcast media such as network or cable televisions. Instead, these gamer content creators "stream" their videos on online platforms such as YouTube and Twitch. The videos creator by these content creator/streamers have become increasingly popular, especially amongst younger viewers. Millions subscribe to the content creators/streamers' online channels and view these videos. As a result, these videos can be extremely profitable.

Defendant Tenney, professionally known as "Tfue," is a twenty-two year old professional gamer and content creator/streamer. Tenney performs in and creates popular videos that he streams online. Because Tenney's videos are viewed by millions, sponsors are willing to pay for Tenney to perform in and create videos that will, at least in part, promote their goods, services, and brands.

Plaintiff FaZe Clan is an esports entertainment company. Tenney signed a "Gamer Agreement" with FaZe Clan with an effective date of April 27, 2018. Defendant's Statement of Uncontested Facts ("SUF") ¶ 1. The Gamer Agreement expired on October 27, 2018, *id.* ¶ 2,

and was not renewed under the terms of its "automatic" renewal provision in part because FaZe Clan failed to timely pay Tenney the $2,000.00 monthly fee to which he was entitled under the Contract, *id.* ¶¶ 2-9.  Tenney was rightfully concerned about the financial condition of FaZe Clan given its trouble paying these small amounts.  Tenney Aff. ¶ 2.  Following the expiration of the Gamer Agreement, Tenney and FaZe Clan spent several months in non-public negotiations to see if their business relationship could be salvaged under a new arrangement, but that process came to an end in May 2019.

On May 15, 2019, Tenney filed a Petition to Determine Controversy before the California Labor Commissioner (the "Labor Commissioner Proceeding").  Tenney instituted the Labor Commissioner Proceeding because the Gamer Agreement is illegal under California's Talent Agency Act (the "TAA").  The Labor Commissioner Proceeding is still pending.

On August 1, 2019, FaZe Clan filed the complaint in this action, alleging nine causes of action – four breach of contract claims, a claim for misappropriation of trade secrets, two tortious interference claims, a claim for commercial disparagement, and an unjust enrichment claim. Dkt. No. 1.

Tenney brings this motion for partial summary judgment on the first three breach of contract claims, and summary judgment on all the non-contract claims.

## ARGUMENT

### I.    Summary Judgment Standards

Summary judgment may be granted only if the submissions of the parties taken together show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Here, as the moving party, Tenney bears the burden of demonstrating the absence of a material question of fact, and he has "the initial

responsibility of ... identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which ... demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on the summary judgment motion the court must view all facts in the light most favorable to the Plaintiff as the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A]ll reasonable inferences must be drawn against the [moving] party," and summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).

If Tenney presents facts showing that he is entitled to summary judgment, Plaintiff must then set forth specific facts showing that there is a genuine issue for trial. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). But if Tenney has not presented a sufficient showing of entitlement to summary judgment, then Plaintiff has no obligation to present anything at all. *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 617 (2d Cir. 1998) ("Where the movant has the burden, its own submissions in support of the motion must entitle it to judgment as a matter of law.").

In reviewing a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Rule 56(c)(1) requires a party asserting that a fact is not genuinely disputed to support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(3) states

that the court is only required to consider the materials cited pursuant to (c)(1), but it is permitted

to go beyond the citations to consider other materials in the record. Finally, Rule 56(c)(4)

provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated."

## II.    Tenney Is Entitled to Partial Summary Judgment On FaZe Clan's First, Second, and Third Causes of Action for Breach of Contract Because the Gamer Agreement Expired on October 27, 2018 and Was Not Renewed

The Gamer Agreement contains an "Effective Date" of April 27, 2018, SUF ¶ 1, and

specifically provides that "the initial Term of this Agreement shall be six (6) months from the

Effective Date ('**Term**')," *id.* ¶ 2. The Agreement therefore ended on October 27, 2018 – six

months from the Effective Date of April 27, 2018.

FaZe Clan alleges that the Gamer Agreement "was automatically extended in October

2018 for an additional three years," *i.e.*, through October 27, 2021. *See* Compl. ¶ 21. FaZe Clan

further alleges that Tenney breached the Gamer Agreement after it was purportedly

"automatically extended" and seeks damages from Tenney for amounts he earned during that

"extended" period.

There are two independent bases for concluding, as a matter of law, that the Gamer

Agreement expired on October 27, 2018 and, therefore, that FaZe Clan cannot establish any

breach after the end of the initial Term and that FaZe Clan cannot recover any damages for any

alleged breach after the initial Term. First, there is no genuine issue of material fact that FaZe

Clan failed to satisfy a condition precedent to the Gamer Agreement's automatic renewal

provision. Second, there is no genuine issue of material fact that FaZe Clan failed to satisfy New

York General Obligations Law Section 5-903, a statutory condition precedent applicable to the Gamer Agreement's renewal provision.

### A.   The Gamer Agreement Expired on October 27, 2018 Because FaZe Clan Failed to Satisfy a Condition Precedent to the Automatic Renewal Provision

The Gamer Agreement, by its own terms, ended on October 27, 2018; however, the Agreement contains an "automatic" extension of an addition thirty six months, but only if certain conditions are met:

> At the end of the Term [October 27, 2018], and not withstanding anything to the contrary set forth in this Agreement (including the [Terms and Conditions]), this Agreement shall be automatically extended for an additional thirty-six (36) months, provided the following conditions have been met ("**Extended Term**"): (i) throughout the Term, [Tenney] has received the Monthly Fee (as defined below) from Company ***on a timely basis*** . . . . "

SUF ¶ 2 (emphasis added).

The "Monthly Fee" is later defined in the Gamer Agreement as "USD $2,000 per month," *id* ¶ 3, and is "payable by the Company on the 30th of each month during the Term for the Services provided during the prior month," *id* ¶ 4.  In other words, FaZe Clan was required to *timely pay* Tenney $2,000 per month each month for six months during the initial Term in order for the Agreement to extend.  The undisputed evidence in this case is that FaZe Clan did not timely make *any* of the Monthly Fee payments, and therefore the Gamer Agreement did not renew after it expired on October 27, 2018.

Pursuant to the Gamer Agreement, FaZe Clan was required to pay Tenney $2,000 on May 30, 2018; June 30, 2018; July 30, 2018; August 30, 2018; September 30, 2018; and October 30, 2018.  SUF ¶ 5.  But FaZe Clan did not make any payments whatsoever until after Tenney's then attorney informed FaZe Clan, by letter dated September 26, 2018 (five months after the Effective Date) that FaZe Clan had failed to meet the automatic renewal requirements of the

Gamer Agreement.  SUF ¶ 6.  FaZe Clan thereafter made its first payment toward any of the Monthly Fees – a $10,000 payment on October 15, 2018, representing substantially late payments of the first five months' fees due Tenney, SUF ¶ 7; and then made a further late payment of the final $2,000 on November 20, 2018, SUF ¶ 8.  As set forth in the chart below, FaZe Clan did not timely pay any of the Monthly Fees, as it was required to do if the Gamer Agreement would automatically extend.  The payments of the Monthly Fee were not timely; they were anywhere from 15 to 138 days late:

| Month | Month Beginning | Month End | Payable Date | Timely? | Paid Date | Days Late |
|-------|-----------------|-----------|--------------|---------|-----------|-----------|
| 1 | April 27, 2018 | May 27, 2018 | May 30, 2018 | No | Oct. 15, 2018 | 138 |
| 2 | May 27, 2018 | June 27, 2018 | June 30, 2018 | No | Oct. 15, 2018 | 107 |
| 3 | June 27, 2018 | July 27, 2018 | July 30, 2018 | No | Oct. 15, 2018 | 77 |
| 4 | July 27, 2018 | Aug. 27, 2018 | Aug.30, 2018 | No | Oct. 15, 2018 | 46 |
| 5 | Aug. 27, 2018 | Sept. 27, 2018 | Sept. 30, 2018 | No | Oct. 15, 2018 | 15 |
| 6 | Sept. 27, 2020 | Oct.27, 2018 | Oct. 30, 2018 | No | Nov. 20, 2018 | 21 |

SUF ¶ 9.

FaZe Clan's failure to pay Tenney $2,000.00 per month in a timely manner forecloses any argument that the Gamer Agreement was automatically extended for thirty-six months after the initial Term ended.  Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."  *Greenfield v. Philles Records, Inc*., 98 N.Y.2d 562, 569 (2002).  Thus, where the language of the Agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms.  *Id.*; *see also W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("[C]lear, complete writings should generally be enforced according to their terms ....").  Whether a contract provision is ambiguous is a question of law to be decided by a court.  *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994).  An agreement is unambiguous if the language

used "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion."  On the other hand, a contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation."  *China Privatization Fund (Del), L.P. v. Galaxy Entertainment Group Ltd.*, 95 A.D.3d 769, 945 N.Y.S.2d 659 (1st Dep't 2012).

Here, the contractual requirement that the Monthly Fees be paid on a "timely basis" is unambiguous.  "Paid on a timely basis" means that the payments are made on or before the date the parties specified in their agreement.  *See, e.g.*, *Caddlerock Joint Venture, L.P. v. Rubenstein*, 26 A.D.3d 219, 220 (1st Dep't 2006); *see also Odeon Cap. Grp. v. Ackerman*, 16 civ. 274, 2018 WL 1089749, at *1, *5 (S.D.N.Y. Feb. 2, 2018) (Rakoff, *J.*) (observing that judgment was "timely paid" because it was paid before the deadline).

Because there is no ambiguity in the contractual language, and because there is no genuine issue of material fact about whether the Monthly Payments were paid on a timely basis, Tenney is entitled to judgment as a matter of law.  Accordingly, FaZe Clan should be precluded from recovering from Tenney for any alleged breaches after October 27, 2018.

### B.    The Gamer Agreement Expired on October 27, 2018 Because FaZe Clan Failed to Satisfy New York General Obligations Law Section 5-903

The Gamer Agreement failed to renew for a second, independent reason.  Under Section 5-903(2) of the New York General Obligations Law, automatic renewal provisions in "contract[s] for service, maintenance or repair to or for any real or personal property" are unenforceable unless the service provider gives prior written notice of automatic renewal.  Under this statute, the Gamer Agreement, as a contract involving a service for Tenney's property, FaZe Clan was required to provide the statutory notice of renewal, but did not.  Accordingly, the Gamer Agreement did not renew after it expired on October 27, 2018.

7

The Gamer Agreement includes a grant of a license by Tenney to FaZe Clan for the use of his name and likeness in connection with Tenney's performance of his services under the Gamer Agreement and for other uses that promote FaZe Clan.  SUF ¶ 10.  Such license agreements fall within the scope of Section 5-903.  *See Mann v. MediaNet Digital, Inc.*, CV 13-5269, 2013 WL 1214398, at *4-*5 (C.D. Cal. Nov. 27, 2013).  Because FaZe Clan did not provide any written notice of the auto-renewal provision of the Gamer Agreement as required, SUF ¶ 11, the provision is unenforceable under Section 5-903.

### III. Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Fifth Cause of Action for Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

FaZe Clan's complaint alleges that Tenney violated the federal Defend Trade Secrets Act ("DTSA") by allegedly "disclosing the Gamer Agreement to the public" and by "otherwise us[ing]" unspecified trade secrets of FaZe Clan.  (Compl. ¶ 58.)  Tenney is entitled to judgment as a matter of law on the DTSA claim.

As this Court noted in *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559 (S.D.N.Y. 2016), "under the DTSA, a party must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'"  *Id.* at 565 (citing *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (quoting 18 U.S.C. § 1839(3) (A)–(B)).

The Gamer Agreement is not a trade secret.  Under the DTSA, a "trade secret" is defined as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information

18 U.S.C.A. § 1839(3).

Neither the Gamer Agreement as a whole, nor any specific part of the Gamer Agreement, fits within this definition.  In addition, Tenney, as a party to the Gamer Agreement, did not use any "improper means" to obtain the Gamer Agreement  Finally, Tenney did not make any unauthorized disclosure of the Gamer Agreement.  FaZe Clan's Complaint alleges that Tenney disclosed the Gamer Agreement to the public, but Tenney denies doing so, SUF ¶¶ 8-9, and FaZe Clan has adduced no evidence otherwise.  Indeed, days after the Gamer Agreement was published online by a gaming news site, FaZe Banks, one of the highest profile FaZe Clan members and a part owner of FaZe Clan, responded to the publicity around the Gamer Agreement by posting this message on his popular Twitter account: "With all that being said, we had every intention on releasing the contract.  I have nothing to hide and I've made the mistake of allowing shit people to run my business. We've solved those issues & are trying our best.  The contract was trash.  There's no denying that."  SUF ¶ 14.  In other words, even FaZe Clan knew the Gamer Agreement was not a trade secret ("we had every intention on releasing the contract").

During discovery, FaZe Clan identified other information it now claims are "trade secrets."  Specifically, during the deposition of Lee Trink, FaZe Clan's CEO and the 30(b)(6)

witness on issues related to trade secrets, testified that the following FaZe Clan processes are "trade secrets": (1) ; (2) ████████████████████████; (3) ███████████████████████; (4) ████████████; ; (5) ███████████; and (6) ███████. SUF ¶ 15.

None of these come close to meeting the test of a "trade secret." As a threshold matter, FaZe Clan has not provided any evidence that, with respect to its processes for ███████, the "company uses some type of proprietary formula that gives it a unique advantage, such as a complex pricing or trading algorithm in a financial business." *Free Country*, 235 F. Supp. 3d at 567 (citing *Saks Inc. v. Attachmate Corp.*, No. 14 CIV. 4902 CM, 2015 WL 1841136, at *18 (S.D.N.Y. Apr. 17, 2015); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 537–38 (S.D.N.Y. 2004)). Additionally, FaZe Clan videos that use these processes are made public and any technique that draws people to view their videos are therefore "otherwise readily ascertainable." *Free Country*, 235 F. Supp. 3d at 566 (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999)). ███████████████████████ ███████████████ may be discerned by anyone watching the videos. *Cf. Free Country*, 235 F. Supp. 3d at 567 ("[I]nformation relating to Free Country's underlying mechanics, such as the prices of materials and costs of manufacturing, are not trade secrets because 'any seller's publicly-available prices signal to competitors some information about the underlying mechanics of the seller's pricing structure.'" *Silipos, Inc. v. Bickel*, No. 1:06–CV–02205, 2006 WL 2265055, at *4–*5 (S.D.N.Y. Aug. 8, 2006)).

Moreover, even assuming this information constitutes "trade secrets," there is no evidence whatsoever that Tenney has either stolen proprietary information, or that he will inevitably disclose such information.  SUF ¶¶ 17-18; *see Free Country*, 235 F. Supp. 3d at 567.

Finally, there is no evidence that FaZe Clan has been damaged.  FaZe Clan's complaint alleges that Tenney's purported violations of the DTSA "has caused and will continue to cause FaZe Clan's gamers, social media content professionals and business partners to seek to withdraw from their deals, renegotiate their deals and/or avoid doing further business with FaZe Clan." (Compl. ¶ 59.)  This makes no sense.  There is no logical connection between what Tenney is alleged to have done – disclosed the Gamer Agreement publicly and used techniques to make his videos more popular – and any person or company disassociating from FaZe Clan. *See* 18 U.S.C. § 1836(b)(3)(B).

## IV.  Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Sixth Cause of Action for Intentional Interference with Contract

FaZe Clan's complaint alleges that Tenney tortiously interfered with two sets of FaZe Clan contracts: (1) Contracts with "gamers and media personalities other than Tenney" (Compl. 62); and (2) Contracts with "brand deal partners" (Compl. ¶¶ 63-64.)  Tenney is entitled to judgment as a matter of law with respect to both sets of contracts.

To establish a claim for tortious interference with contractual relations under New York law a plaintiff must demonstrate: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to the plaintiff." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993); *accord G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767 (2d Cir. 1995).

### A.  Contracts with "Gamers and Media Personalities Other Than Tenney"

In the Complaint, FaZe Clan alleges that Tenney tortiously interfered with its contract with only one identified "gamer or media personality": a gamer known as FaZe Cloak, whose given name is Dennis Lepore.  (Compl. ¶ 62).  With respect to Mr. Lepore, FaZe Clan has adduced no evidence of the third or fourth element of a tortious interference claim, and therefore Tenney is entitled to judgment as a matter of law.

The third element of a tortious interference claim requires FaZe Clan to prove Tenney's "intentional inducement of [Mr. Lepore] to breach or otherwise render performance impossible." *Kronos*, 81 N.Y.2d at 94.  There are at least two reasons why FaZe Clan cannot satisfy this element.  First, Tenney never induced Mr. Lepore to leave FaZe Clan.  SUF ¶ 19.  Second, there is no evidence that Mr. Lepore actually breached his contract or rendered performance impossible.  Lee Trink, Faze Clan's CEO, testified that Mr. Lepore ███████████████ ████████████████████████████████████████████████.  SUF ¶ 20.  In fact, on June 22, 2019, FaZe Clan publicly stated on one of its official Twitter accounts that FaZe Clan and FaZe Cloak "are in agreement to work towards his future departure from our team.  We will be open to transfer proposals from other organizations as we explore our options moving forward."  SUF ¶ 21.  FaZe Clan's consensual agreement with FaZe Cloak regarding his future does not show that Tenney played any direct role in inducing FaZe Cloak to breach a contract (especially given the lack of evidence of any breach).

The fourth element requires FaZe Clan to prove that Tenney's alleged tortious interference with FaZe Clan's contract with FaZe Cloak caused "damages to [FaZe Clan]." *Kronos*, 81 N.Y.2d at 94.  During discovery, FaZe Clan has not produced any evidence or calculation of damages it allegedly suffered, and its most recent supplement of its initial

disclosures does not identify any damages resulting from any alleged interference by Tenney with FaZe Clan's contract with FaZe Cloak.  SUF ¶ 22.  In the absence of any damages, Tenney is entitled to judgment as a matter of law.

### B.  Contracts with "Brand Deal Partners"

The Complaint also alleges that Tenney tortiously interfered with contracts between FaZe Clan and certain unspecified "brand deal partners" (Compl. 63-64.)  In its most recent disclosures, FaZe Clan identifies eight brand deal partners,[1] although it is unclear whether FaZe Clan had actual contracts with all eight of these companies.  SUF ¶¶ 23, 25.  In any event, there is no evidence that Tenney tortiously interfered with these contracts.

As to the second element of a claim – defendant's knowledge of the contract – other than a contract with ███████ , FaZe Clan has adduced no evidence that Tenney was aware of any contracts with the seven other brand deal partners.  SUF ¶ 24; *Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.*, 2000 WL 1772599, at *9 (S.D.N.Y. Nov. 28, 2000) ("'Although a defendant need not be aware of all the details of a contract ... it must have actual knowledge of a specific contract.'") (quoting *Int'l Minerals v. Pappas*, 1992 WL 354504, at *3 (S.D.N.Y. Nov. 17, 1992)) (citation omitted).

As to the third element of a claim – defendant's intentional inducement of the third party to breach or otherwise render performance impossible – FaZe Clan has adduced no evidence whatsoever that Tenney induced any of the brand deal partners to breach or render performance impossible.  SUF ¶ 26.  There is no evidence that Tenney communicated with any brand deal partner about breaching its contracts with FaZe Clan, SUF ¶ 27, and there is no evidence that any

---

[1] The eight are identified by Faze Clan as ████████████████████████
███████████████████████████ .  SUF ¶ 23.

brand deal partner actually breached its contracts with FaZe Clan, SUF ¶ 23.  At most, FaZe Clan believes that Tenney's public announcement in May 2019 that he would no longer work with FaZe Clan caused Faze Clan's brand deal partners to reassess their business relationships with FaZe Clan.  But, as a matter of law, such evidence cannot support a tortious interference claim. *See, e.g.*, *Bishop v. Porter*, No. 02 Civ. 9542 (JSR) (GWG), 2003 WL 21032011, *8 (May 8, 2003) ("While Bishop's claim alleges his contract was terminated because the third party learned of the allegations of the Petition, . . . this does not show that Porter played a direct role in inducing the third party to breach the contract.").

Accordingly, Tenney is entitled to summary judgment on FaZe Clan's claim for tortious interference with contract.

### V.    Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Seventh Cause of Action for Intentional Interference with Prospective Business Advantage

Tenney is also entitled to summary judgment on FaZe Clan's claim for tortious interference with prospective business advantage.  (Compl. 68-73.)  A claim for this tort requires four elements: "(1) a prospective contractual relation or business with a third party; (2) defendants' interference with that relation; (3) defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair or improper means; and (4) injury to the plaintiff."  *See G–I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253–54 (S.D.N.Y. 2001).  FaZe Clan does not distinguish between the eight brand deal partners who are the subject of its tortious interference with contract claim and those that are subject to this claim, SUF ¶¶ 23, 28, although this tort cannot apply if FaZe Clan actually had a contract with the deal partner.  *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 621 (1996).

In any event, "a higher degree of interference is required" for this tort than a claim for tortious interference with contract.  *See G–I Holdings*, 179 F. Supp. 2d at 254  (citing *Lane's Floor Coverings, Inc. v. Ardex, Inc.*, 1996 WL 19181, at \*3 (E.D.N.Y. Jan. 4, 1996)); *see also NBT Bancorp.*, 87 N.Y.2d at 621 (1996) ("Where there has been no breach of an existing contract, but only interference with prospective contract rights ... plaintiff must show more culpable conduct on the part of the defendant") (citation omitted).  Again, however, FaZe Clan cannot adduce any evidence that Tenney knew of the prospective business relationships or interfered with those relationships.  SUF ¶¶ 28-30.  Tenney's public announcement in May 2019 that he would no longer work with FaZe Clan does not constitute the higher degree of interference required for a claim of tortious interference with prospective business advantage. *See, e.g.*, *G.K.A. Beverage Corp.*, 55 F.3d at 768 ("The distributors thus make no allegations that appellees had any contact with the distributors' customers or that appellees tried to convince the customers to make contracts with them rather than the distributors.").

## VI.   Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Eighth Cause of Action for Commercial Disparagement

Tenney is entitled to summary judgment on FaZe Clan's claim for commercial disparagement.

Under New York law, "[t]rade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property."  *Angio–Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989).  To prevail on a claim of trade libel, a plaintiff must adequately demonstrate "(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) [ ] special damages."  *Id.* at 274 (citation omitted); *Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 Civ. 2628, 2002 WL 31398933, at \*5 (S.D.N.Y. Oct. 24, 2002).

The only specific statement set forth in the Complaint that is alleged to constitute commercial disparagement is an alleged statement by Tenney, on or around May 17, 2019, in which "Tenney advises other gamers not to sign with organizations such as FaZe Clan, and that such organizations are 'not doing anything like worth the cut they're taking." (Compl. ¶ 75.) This statement cannot support a commercial disparagement claim because, first, it is protected opinion, and second, because FaZe Clan utterly fails to establish any special damages.

First, Tenney's advice to gamers not to sign with organization such as FaZe Clan and statement that such organization are "not going anything like worth the cut they're taking" is pure opinion.  SUF ¶ 32.  "New York law absolutely protects statements of pure opinion, such that they can never be defamatory." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (internal quotation marks and citation omitted). "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly be the subject of a defamation action.'" *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152–53, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) (quoting *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825, 603 N.E.2d 930 (1992)).

Whether a challenged statement is fact or opinion is a question of law to be decided by the Court.  *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986).  The core inquiry is "whether a reasonable listener ... could have concluded that [the defendant] was conveying facts about the plaintiff."  *Von Gutfeld*, 80 N.Y.2d at 139, 589 N.Y.S.2d 825, 603 N.E.2d 930.  In making this determination, courts consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Davis v. Boeheim*, 24 N.Y.3d 262, 270, 998 N.Y.S.2d 131 (2014) (internal quotation marks,

citations, and alterations omitted).  Here Tenney's statement about the value that esports gaming

organizations in general bring to individual gamers who are under contract is not capable of

being proven true or false, and thus is protected opinion.

Moreover, Tenney's statement is not very different than FaZe Clan's own statements

about its contract with Tenney.  For example, on May 23, 2019 (only six days after Tenney's

statement), FaZe Banks, one of the highest profile FaZe Clan members and a part owner of FaZe

Clan, responded to Tenney's public break from FaZe Clan by posting on his popular Twitter

account: "I have nothing to hide and I've made the mistake of allowing shit people to run my

business. We've solved those issues & are trying our best. [Tenney's] contract was trash. There's

no denying that."  SUF ¶ 33.

Tenney is also entitled to judgment as a matter of law on the commercial disparagement

claim because FaZe Clan has failed to establish any special damages.  SUF ¶ 34; *see Ruder &*

*Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 671 (1981).  "Language which merely

disparages a product is not actionable unless special damages are pleaded and it appears that

such damage is a natural and immediate consequence of the disparaging statements."  *Angio–*

*Med. Corp.*, 720 F. Supp. at 274 (citation omitted).  Special damages are "limited to losses

having pecuniary or economic value, and must be fully and accurately stated, with sufficient

particularity to identify actual losses."  *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y.

1992) (internal quotation marks and citations omitted). "The requirement of . . . ultimately

proving special damages goes to the cause of an action itself and not merely to the recovery...."

*Computech Int'l*, 2002 WL 31398933, at *6 (internal quotation marks and citation omitted). "If

the special damage was a loss of customers ... the persons who ceased to be customers, or who

17

refused to purchase, must be named." *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441 (1960) (internal quotation marks and citations omitted).

Here, FaZe Clan cannot identify any "fans, gamers, social media personalities, and actual and prospective business partners" who have "turn[ed] away from FaZe Clan."  (Compl. ¶ 76). In addition, at most, Tenney's statements as to the value that esports organizations provide to the gamers they have under contract would have only "natural and immediate consequences" affecting other gamers – not "fans, social media personalities, and actual and prospective business partners" of  FaZe Clan.  *See Angio–Med. Corp.*, 720 F. Supp. at 274.  FaZe Clan has not identified any gamer who did not sign with it as a result of Tenney's statements, and therefore FaZe Clan has not shown it was damaged by the statements, let alone shown any special damages.   *Kirby*, 784 F. Supp. at 1116, 1118 (where plaintiff claimed defendant made false and disparaging statements about painting that prevented its sale, "vague allegation[ ]" that plaintiff sustained $250,000 in damages, without specifying losses underlying that figure or identifying any person who did not bid on the painting because of the alleged disparagement, was "clearly inadequate" to plead special damages).

**VII.    Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Ninth Cause of Action for Unjust Enrichment**

Under New York law, to establish a claim of unjust enrichment, FaZe Clan "must establish (1) that [Tenney] was enriched; (2) that the enrichment was at the [FaZe Clan's] expense; and (3) that the circumstances are such that in equity and good conscience the [Tenney] should return the money or property to [FaZe Clan]." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001) (applying New York law).  An unjust enrichment claim cannot be maintained where a valid contract exists between the parties.  *See Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005).  Here, while there is a

dispute about whether the parties entered into a valid contract, either way, no unjust enrichment claim may be maintained.

If FaZe Clan is correct that the Gamer Agreement is valid, then, under *Goldman*, its unjust enrichment claim must be dismissed.  However, even if Tenney is correct that the Gamer Agreement is void *ab initio* under California's Talent Agency Act ("TAA"), a party that violates the TAA – here, FaZe Clan – is not entitled to seek an end-run around the TAA by bringing an unjust enrichment claim.  *See, e.g.*, *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1104 & n.30 (2005) ("The rationale [for denying payment when manager violates the TAA] is not limited to actions for breach of contract.  It also applies to actions seeking recovery on theories of unjust enrichment or quantum meruit.") (citing *Waisbren v. Peppercord Prods., Inc.*, 41 Cal. App. 4th 246, 250 n.2 (2002)).

## CONCLUSION

For the reasons set forth above, Tenney respectfully requests that the Court grant him summary judgment on the issues and claims set forth above.

Dated: New York, New York
       March 5, 2020

BEYS LISTON & MOBARGHA LLP

By: */s/ Joshua D. Liston*
    Joshua D. Liston
        (jliston@blmllp.com)
    641 Lexington Ave., 14th Floor
    New York, New York 10022
    Tel:  (646) 755-3601
    Fax:  (646) 755-3599

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*