**FREEDMAN + TAITELMAN, LLP**
ATTORNEYS AT LAW

1901 AVENUE OF THE STARS, SUITE 500
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 201-0005
FAX: (310) 201-0045
E-MAIL: bfreedman@ftllp.com

BRYAN J FREEDMAN

OUR FILE NUMBER
2046.1

March 4, 2020

*Via Electronic Mail*

Honorable Jed. S. Rakoff
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1340
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/9/20
```

Re:   *Faze Clan, Inc. v. Turner Tenney, p/k/a/ "TFUE"*
Civil Action No. 19-cv-07200(JSR)

Dear Judge Rakoff:

Defendant Turner Tenney ("Tenney") respectfully submits this letter in response to plaintiff FaZe Clan, Inc.'s ("FaZe") challenge to CAA's 3rd Party Privilege Log (Ex. B of the Spray Letter). Please note that Tenney is not asserting any privilege or work product objections to the following documents identified on CAA's 3rd Party Privilege Log: Nos. 50, 52, 53, 59-61, 82-85, 89-95, 98-107, 114-115, 134, 136 140 and 150. This letter will focus on the work product doctrine.

**The CAA Communications are Protected by the Work Product Doctrine**

The work product doctrine, codified in Rule 26(b)(3), provides a qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 383 (2d Cir.2003). The work product doctrine is designed to create a "zone of privacy" in which a lawyer can prepare and develop legal theories and strategy "free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510–11 (1947); *In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir.2000). The doctrine is broader than the attorney-client privilege. *See United States v. Nobles,* 422 U.S. 225, 238 n. 11, (1975).

Here, CAA's communications with Tenney's counsel can be grouped into two phases:

Hon. Jed S. Rakoff
March 4, 2020
Page 2 of 4

- **Communications with the Felker Firm and the Phillips Firm**

Beginning in February 2019, CAA began communicating in confidence with Tenney's counsel at Felker Toczek Suddleson Abramson LLP (the "Felker Firm") and David R. Philips, P.A. (the "Philips Firm"). Those communications included e-mails through April 2019. (3rd Party Privilege Log, Nos. 1-109).[1] The Felker and Philips Firms' e-mails with CAA, included attorney work product. In particular, those e-mails discussed analysis and strategy about the dispute with FaZe concerning the Gamer Agreement and issues raised by the Gamer Agreement.[2] These communications were designed to assist counsel in formulating strategy concerning the dispute. Ultimately, CAA assisted counsel in the negotiation and preparation of draft agreements/amendments with FaZe designed to resolve that dispute. Those draft agreements were negotiated with FaZe in the spring of 2019. Those efforts to resolve the dispute between Tenney and FaZe, however, were ultimately unsuccessful.

- **Communications with the Freedman Firm**

Once Tenney commenced litigation against FaZe, CAA communicated in confidence with Tenney's counsel about the pending matters. On May 15, 2019, Tenney filed a Petition To Determine Controversy against before the California Labor Commissioner, Case No. 52704 (the "CLC Proceeding"). On May 20, 2019, Tenney also filed a civil action against FaZe in Los Angeles Superior Court, Case No. 19STCV17341 (the "LASC Action"). Freedman + Taitelman, LLP (the "Freedman Firm") was counsel of record for Tenney in both the CLC Proceeding and LASC Action (collectively, the "Litigation"). Beginning around May 2019, the Freedman Firm began communicating with CAA concerning matters related to the Litigation. This included e-mail communications between Freedman Firm attorneys and CAA, typically Shelsea Jacobs, a CAA talent agent who ran point on the Tenney account. (3rd Party Privilege Log, Nos. 110-247).[3]

The Freedman Firm's e-mails with CAA included attorney work product. In particular, these e-mails discussed analysis and strategy about the Litigation or issues that were relevant to the Litigation. These communications were designed to assist the Freedman Firm in formulating strategy concerning the Litigation, including how issues raised in the Litigation might impact Tenney's career. For example, there were protected discussions concerning jurisdictional issues in the Litigation. Another example are protected discussions concerning the Litigation's impact on Tenney's ability to move forward with potential sponsorship or business opportunities. **The Work Product Protection was not Waived.**

---

[1] These e-mails often included attachments that have been separately identified on the Privilege Log. Some of the e-mails also included Tenney's father who was also assisting his son in the dispute with FaZe. (3rd Party Privilege Log, Nos. 19, 23, 31, 48, 62, 86, 89 and 96).

[2] In doing so, counsel provided CAA with information and documents that were material to the dispute.

[3] Again, these e-mails often included attachments that have been separately identified on the Privilege Log. Some of the e-mails also included Tenney. (3rd Party Privilege Log, Nos. 134, 162, 165 and 239). Some of these e-mails were internally forwarded at CAA (3rd Party Privilege Log, Nos. 190, 195-197, 210, 212, 215, 231, 232-233, 237, 246).

Hon. Jed S. Rakoff
March 4, 2020
Page 3 of 4

There was no waiver of the work product protection for two independent but related reasons: (1) CAA and Tenney had a common interest in Tenney's success in the Litigation and dispute with FaZe; and/or (2) CAA was assisting and advising Tenney's counsel in connection with issues that were germane to the dispute and Litigation. Sharing information with a "third-party" does not necessarily waive work product protection. *See In re Refco Sec. Litig.*, 280 F.R.D. 102, 105 (S.D.N.Y. 2011); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y.2000). A waiver will not occur if Tenney and CAA shared a "common interest" in developing legal theories or analyzing information. *S.E.C. v. Gupta*, 281 F.R.D. 169, 171–72 (S.D.N.Y. 2012); *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) ("[I]t is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine."). Additionally, there will be no waiver where the disclosure is made in confidence to someone who is consulting with and/or assisting counsel in connection with litigation related matters. *See In re Refco Sec. Litig.*, 280 F.R.D. at 105 (no waiver if former hedge fund manager was being consulted to obtain feedback on litigation strategy and advise clients); *Calvin Klein Trademark*, 198 F.R.D. at 53, 55-56 (no waiver of work product protection where attorney shared litigation strategy with PR firm in confidence).

Here, Tenney, who was both relatively young (21 years old at the time) and unsophisticated, brought in CAA, a full-service and licensed talent agency, to assist him in his career and business/artistic affairs.[4] As Tenney's talent agency (or soon to be talent agency) and fiduciary, CAA shared a common interest with Tenney – the interest in resolving the dispute with FaZe so that Tenney would be free to move forward with potential opportunities. It was therefore integral that Tenney's counsel would be able to speak with CAA in confidence about matters that pertained to the dispute with FaZe and the Litigation. While CAA was not formally retained by counsel, CAA acted much like counsel's "consultant". CAA communicated with Tenney's counsel because it was helping to formulate attorney strategy and legal advice concerning Tenney's career/business needs and the impact of the dispute with FaZe and the Litigation on the market for Tenney and his services. These were matters that Tenney and his counsel needed assistance with, especially since CAA's job was to advise Tenney on such career related matters.

For example, prior to the Tenney's initiation of the Litigation, CAA assisted counsel (the Felker Firm and the Phillips Firm in connection with the analysis of issues potentially created by the Gamer Agreement in dispute and if and how those issues could be resolved. Again, CAA was heavily involved in assisting the Felker Firm and the Phillips Firm negotiate and prepare an agreement with FaZe that was designed to resolve the dispute between Tenney and FaZe that arose out of the Gamer Agreement. Once Tenney commenced the Litigation, CAA maintained that advisory role with the Freedman Firm.

///

///

///

---

[4] FaZe argues that Tenney did not sign CAA's "Agency Representation Oral Acknowledgement" until July 2019. This document, however, merely confirms the existence of a prior oral agreement. CAA was at least informally acting in an advisory role to Tenney as early as February 2019.

Hon. Jed S. Rakoff
March 4, 2020
Page 4 of 4

Tenney respectfully requests that the Court deny FaZe application to release documents identified on the privilege log (other than those identified in the first paragraph of this letter).

Respectfully submitted,

Bryan J. Freedman, Esq.