UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAZE CLAN, INC., | Civil Action No. 19-cv-07200 (JSR) |
| *Plaintiff,* | ECF Case |
| -v- | |
| TURNER TENNEY p/k/a "TFUE" | |
| *Defendant.* | |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF FAZE CLAN INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Joshua D. Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel: (646) 755-3601
Fax: (646) 755-3599
jliston@blmllp.com

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*

Dated: New York, New York
March 19, 2020

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.    Summary Judgment Standards ........................................................................................... 2

II.   FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That the
      California TAA Does Not Apply to FaZe Clan's Alleged Conduct that Occurred Outside
      of California ........................................................................................................................ 3

III.  FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That Tenney
      Breached the Gamer Agreement by Not Paying FaZe Clan Its Share of "In-Game
      Merchandise". ................................................................................................................... 12

IV.   FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That Tenney's
      Claims and Defenses Based on California Business & Professions Code Section 16600, et
      seq., Are Meritless ............................................................................................................ 15

V.    FaZe Clan Is Not Entitled to Partial Summary Judgment on Tenney's Personal
      Jurisdiction Defense ......................................................................................................... 18

CONCLUSION ............................................................................................................................. 19

# TABLE OF AUTHORITIES

PAGE

### CASES

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612 (2d Cir. 1998)...................... 2-3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 2

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) .................................. 18

*Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049 (N.D. Cal. 2017) ...................................... 6-7

*Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336 (2009)........................................................ 4

*Buchwald v. Superior Court In & For City & Cty. of San Francisco*,
254 Cal.App.2d 347(1967) ................................................................................. 4-5

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83 (2d Cir. 2002).......................... 2

*Celotex Corp. v. Catrett*, 477 U.S. 317  (1986) ....................................................................... 2

*Chiba v. Greenwald*, 156 Cal.App.4th 71 (2007) ................................................................ 5

*Confederación Sudamericana de Fútbol v. International Soccer Marketing, Inc.*,
161 A.D.3d 581 (1st Dep't 2018) ....................................................................... 19

*CT Chems. v Vinmar Impex*, 81 N.Y.2d 174 (1993)................................................................ 14

*Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008).................................................... 15

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004)..................................................... 3

*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 N.Y.3d 96 (2006) ........ 14

*ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441 (9th Cir. 2017).................................................. 16

*Kelton v. Stravinski*, 138 Cal. App. 4th 941 (2006)........................................................... 16

*Lauwrier v. Garcia*, No. CV1207381MMMSHX, 2013 WL 11238497
(C.D. Cal. Mar. 8, 2013) ..................................................................................... 5

*Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974 (2008) ................................................... 4

*Morales v. Quintel Entm't, Inc.*, 249 F.3d 115 (2d Cir. 2001) ....................................... 2

*Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232 (2d Cir. 2002) ............................... 2

*Podwall v. Robinson*, No. 216CV06088ODWAJW, 2016 WL 9342609
    (C.D. Cal. Oct. 20, 2016) ........................................................................................... 5

*REO Broad. Consultants v. Martin*, 69 Cal.App.4th 489 (1999)..................................................... 5

*Siegel v. Su*, 2018 WL 1393984 (C.D. Cal. Mar. 16, 2018), *reconsideration denied*,
    2018 WL 1989521 (C.D. Cal. Apr. 25, 2018), *and aff'd*, 770 F. App'x 877
    (9th Cir. 2019)...................................................................................................... 8-9

*Sterling Natl. Bank v. Eastern Shipping Worldwide*, 35 A.D.2d 222
    (1st Dep't 2006) ....................................................................................................... 19

*Styne v. Stevens*, 26 Cal.4th 42 (2001)...................................................................................... 4-5

*Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011) ....................................................................... 11

*Techno Lite, Inc. v. Emcod, LLC*, 44 Cal.App.5th 462 (2020) ............................................... 16-17

*Travers v. Louden*, 254 Cal.App.2d 926 (1967) ......................................................................... 17

*Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal.4th 557 (1996)................................................... 7

<u>Statutes & Rules</u>

California Business & Professions Code § 16600 .............................................................. 15-18

California Business and Professions Code § 17200 .................................................................. 17

California Labor Code § 1700.44. .............................................................................................. 4

Federal Rule of Civil Procedure 56 ......................................................................................... 2-3

Defendant Turner Tenney p/k/a "Tfue" ("Tenney") respectfully submits this memorandum of law in opposition to the motion for partial summary judgment filed on March 5, 2020 by Plaintiff FaZe Clan Inc. ("FaZe Clan").

## PRELIMINARY STATEMENT

FaZe Clan and Tenney each signed the Gamer Agreement as of April 27, 2018, hoping that it would be the basis for a mutually productive relationship.  Importantly, the term of the Gamer Agreement was only six months; if FaZe Clan satisfied certain specific criteria, the term could extend, but in this case, FaZe Clan failed to pay, on a timely basis, the sum of $2,000 per month – one of the few requirements to extend the Gamer Agreement.  It was understandably alarming to Tenney that FaZe Clan could not even timely pay these small amounts.

After the Gamer Agreement ended on October 27, 2018, the parties negotiated outside public view to see if a new arrangement made sense for both parties, but when that effort failed, Tenney announced his public break with FaZe Clan in May 2019.  FaZe Clan has since engaged in an effort to claim millions of dollars that Tenney earned after the Gamer Agreement expired – revenue that even FaZe Clan has said has "nothing to do" with the Gamer Agreement and that FaZe Clan waived any right to collect.  FaZe Clan's goal appears to be to use this litigation against Tenney to exact revenge for his public breakup and to send a message to other gamers signed with FaZe Clan that the company will pursue even frivolous claims should they not sufficiently kowtow to Faze Clan.[1]

---

[1] Per Stipulation, FaZe Clan has dismissed its claims against Tenney for misappropriation of trade secrets, commercial disparagement, and intentional interference with contract to the extent FaZe Clan alleged that Tenney interfered with FaZe Clan's contracts with other gamers and media personalities.

## ARGUMENT

### I.      Summary Judgment Standards

Summary judgment may be granted only if the submissions of the parties taken together show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Here, as the moving party, FaZe Clan bears the burden of demonstrating the absence of a material question of fact, and it has "the initial responsibility of ... identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which ... demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In ruling on the summary judgment motion the court must view all facts in the light most favorable to Tenney as the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "[A]ll reasonable inferences must be drawn against the [moving] party," and summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).

If FaZe Clan presents facts showing that it is entitled to summary judgment, Tenney must then set forth specific facts showing that there is a genuine issue for trial. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).  But if FaZe Clan has not presented a sufficient showing of entitlement to summary judgment, then Tenney has no obligation to present anything at all. *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 617 (2d

Cir. 1998) ("Where the movant has the burden, its own submissions in support of the motion must entitle it to judgment as a matter of law.").

In reviewing a motion for summary judgment, a court "may rely only on admissible evidence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Rule 56(c)(1) requires a party asserting that a fact is not genuinely disputed to support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(3) states that the court is only required to consider the materials cited pursuant to (c)(1), but it is permitted to go beyond the citations to consider other materials in the record. Finally, Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

## II.    FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That the California TAA Does Not Apply to FaZe Clan's Alleged Conduct that Occurred Outside of California

FaZe Clan is not entitled to summary judgment on its argument that California's TAA does not apply to FaZe Clan's alleged conduct that occurred outside of California. FaZe Clan incorrectly contends that because the wrongful conduct at issue – the procurement or attempted procurement of employment or engagements for Tenney without a California license – allegedly occurred outside of California, the TAA does not apply. FaZe Clan's argument fails for several independent reasons.

First, until the California Labor Commissioner ("CLC"), which has original jurisdiction, rules on Tenney's pending Petition to Determine Controversy concerning the same subject matter and issues, any adjudication by this Court is premature.

Second, even if ripe for adjudication, Tenney has presented ample evidence that FaZe Clan is subject to California's licensing requirements under the TAA. That is, there is ample evidence that FaZe Clan engaged in conduct within or related to California that is subject regulation under the TAA. That FaZe Clan had a single employee working remotely from the east coast is of no avail.

### A. FaZe Clan's Motion Is Premature as the Parties Must First Seek Relief from the California Labor Commissioner

The portion of FaZe Clan's Motion as to the TAA claims or defenses is premature as the CLC, which has exclusive original jurisdiction, must first rule on Tenney's claim(s) under the TAA. Consequently, any affirmative claims or defenses arising out of the TAA should be stayed pending a final ruling by the CLC.

Under California law, Tenney's claims under the TAA must first be adjudicated by the CLC. It is well settled that the CLC has exclusive **original** jurisdiction over controversies colorably arising under the TAA. *See Styne v. Stevens*, 26 Cal.4th 42, 54–56 (2001); *Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336, 360-63 (2009); *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 981 n.2 (2008). The CLC's exclusive original jurisdiction is codified in Labor Code § 1700.44(a), which reads in part: "In cases of controversy arising under this chapter, the parties involved **shall** refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo." *Id.* (emphasis added). The CLC's jurisdiction under Labor Code § 1700.44(a) is "mandatory". *Buchwald v. Superior Court In & For City & Cty. of*

*San Francisco*, 254 Cal.App.2d 347, 358 (1967).  "Disputes must be heard by the Commissioner, and all remedies before the Commissioner must be exhausted before the parties can proceed to the superior court."  *Styne*, 26 Cal.4th at 54; *REO Broad. Consultants v. Martin*, 69 Cal.App.4th 489, 494–95 (1999).  Indeed, "[t]he [Labor] Commissioner's exclusive jurisdiction to determine his jurisdiction . . . thus empowers him alone to decide, **in the first instance**, whether the facts do bring the case within the [TAA]."  *Styne*, 26 Cal.4th at 55 n.6 (Emphasis added).

Once a controversy under the TAA arises, it is appropriate to stay the case until the CLC has considered and ruled on the matter.  *See Styne*, 26 Cal.4th at 58–59; *Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336, 360–61 (2009); *Chiba v. Greenwald*, 156 Cal.App.4th 71, 75–76 (2007); *Podwall v. Robinson*, No. 216CV06088ODWAJW, 2016 WL 9342609, at *2 (C.D. Cal. Oct. 20, 2016); *Lauwrier v. Garcia*, No. CV1207381MMMSHX, 2013 WL 11238497, at *9 (C.D. Cal. Mar. 8, 2013).

Here, FaZe Clan has stipulated that California law applies to Tenney's claims and defenses in this action based on the TAA.[2]  (Kaplan Aff., Ex. A).  In May 2019, Tenney filed a Petition to Determine Controversy against FaZe Clan before the CLC (the "CLC Proceeding"). (Counterclaim, Ex. 1).  In the CLC Proceeding, Tenney has asserted a claim against FaZe Clan based on its unlicensed procurement and/or attempted procurement of employment or engagements for Tenney in violation of the TAA, in particular California Labor Code § 1700.5 which required FaZe Clan to obtain a license.  The CLC Proceeding is pending and a three-day evidentiary hearing/trial is currently scheduled for late April 2020.  Following the completion of the evidentiary hearing in the CLC Proceeding, the CLC will issue a Determination of

---

[2] FaZe Clan entered into this stipulation when a California Court ruled that the Gamer Agreement's mandatory forum selection clause would be unenforceable as to the certain California statutory claims, unless FaZe Clan stipulated that California law applies.

Controversy and rule on whether FaZe Clans' actions, extraterritorial  or otherwise, required licensure under the TAA.  Until the CLC rules, however, the portion of FaZe Clan's Motion concerning the TAA is premature.

**B.  FaZe Clan Is Subject to the TAA's Licensing Requirements**

Even if the Court determines that this portion of FaZe Clan's Motion is not premature, Tenney has presented evidence that FaZe Clan's conduct is sufficiently connected to California so as to subject it California's licensing requirements under the TAA.  Indeed, such evidence confirms that FaZe Clan's procurement related activities occurred in California.  FaZe Clan's attempt to limit such activities to an individual who worked remotely from home in New Jersey is nothing short of misleading.  At a minimum, Tenney's evidence creates a genuine issue of material fact as to whether FaZe Clan is subject to regulation under the TAA.  Likewise, any suggestion by FaZe Clan that an unlicensed Californian can procure employment or engagements that will ultimately be performed by the talent outside of California is simply wrong.  The location of the ultimate employment or engagement performed by the talent does not vitiate FaZe Clan's obligation to obtain a license under the TAA.

In the Motion, FaZe Clan attempts to take an overly narrow legal interpretation of the application of the TAA to a company that indisputably operates out of California.  Even if FaZe Clan's "wage and hour" authority was directly applicable to claims under the TAA, which it is not, FaZe Clan's own authority supports the application of California's licensing law where, as here, FaZe Clan operates out of California and/or the regulated conduct occurred within or is connected to California.

FaZe Clan relies heavily on *Bernstein v. Virgin Am., Inc*., 227 F. Supp. 3d 1049, 1061 (N.D. Cal. 2017).  In *Bernstein*, plaintiffs were flight attendants who worked primarily outside

6

California, yet the court permitted them to seek relief under the California wage and hour laws, reasoning in part that their employer, Virgin America, committed unlawful acts in California. *See id*. (denying summary judgment to defendant in action arising from California wage and hour violations as to flight attendants working primarily outside California). FaZe Clan even acknowledges that *Bernstein* permits application of wage and hour laws largely based on evidence that some unlawful conduct occurred in California, even if the plaintiff performed the work at issue elsewhere. (Motion, p. 12.)

*Bernstein* explained that the three factors cited in *Sullivan v. Oracle Corp*., 51 Cal.4th 1191 (2011) and *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal.4th 557, 578 (1996), are not all mandatory prerequisites to the assertion of California Labor Code protections. *Bernstein* noted that "[t]he *Tidewater* court simply explained that an employee who 'resides in California, receives pay in California, and works exclusively, or principally, in California,' presumptively enjoys the protections of California's wage orders," but expressly rejected any inference that all three of those factors were required. *Id*. In fact, after reciting a litany of reasons why California has a strong public policy interest in liberally construing and enforcing its labor laws, *Bernstein* ruled that a defendant's connections to California are material to the application of California's labor laws. *See id.* at 1060. Specifically, *Bernstein* reasoned that "Virgin's significant connections to California are also relevant considerations when determining whether to apply California's wage and hour laws." *Id. Bernstein* even noted that the *Tidewater* court "left room for the possibility that California's labor laws may apply extraterritorially 'in limited circumstances . . . .'" *Id*. In sum, *Bernstein* rejects any argument that California labor laws apply only to protect either Californians or non-Californians working in California. Stated

7

differently, that Tenney was arguably not a California resident does not mean that the TAA does not apply to FaZe Clan, which operates almost exclusively in California.

*Sullivan*, 51 Cal. 4th 1191, also cited by FaZe Clan, is equally unhelpful to FaZe Clan's position.  In *Sullivan*, the California Supreme Court held that California wage and hour laws applied to non-Californians for work performed in California for as few as 20 days in California over a 3-year period.  *Id.*; *see also Bernstein*, 227 F. Supp. 3d at 1060 (describing that "central holding").  In *Sullivan*, out-of-state workers travelled in various states, including California, for the purpose of training defendant's customers on the use of defendant's software products. *Sullivan* held that wage and hour laws could apply to conduct committed in California that relates to non-resident employees who work primarily outside the state.  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1196–97 (2011).

Moreover, even if the wage and hour laws could never apply to protect non-Californians for work performed outside California (and, as set forth above, that is not a correct description of California law), the same would not be true for the TAA.  Tenney still can overcome the presumption against extraterritorial application because the TAA has broader reach than the wage and hour laws in protecting non-Californians.  *See Siegel v. Su*, 2018 WL 1393984, at *7 (C.D. Cal. Mar. 16, 2018), *reconsideration denied*, 2018 WL 1989521 (C.D. Cal. Apr. 25, 2018), *and aff'd*, 770 F. App'x 877 (9th Cir. 2019) at *7 (interpreting the TAA to suggest that it protects non-California artists and explaining that such application of the TAA still would be proper because the TAA meets Constitutional requirements for assertion of jurisdiction in that it applies only to defendants with sufficient contacts in California).  *Siegel* explained that, "To the extent the TAA regulates California residents, even if some aspects of the regulated activity occurs outside California, such regulation is permissible because 'a state may regulate commercial

relationships in which at least one party is located in California.'" *Id.* (citing *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (internal quotation marks omitted)).

*Siegel*'s ruling reflects an important distinction between California's wage and hour laws and California's TAA.  Namely, the TAA, unlike the wage and hour laws, is a regulatory scheme for licensing of professionals that seeks to promote the honest conduct of the business of procuring employment for artists, whereas the wage and hour laws do not relate to maintaining the integrity of a profession.  *See* California Labor Code § 1700.5 ("No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner"); § 1700.7 ("Upon receipt of an application for a license the Labor Commissioner may cause an investigation to be made as to the character and responsibility of the applicant . . . .")  As such, California has an interest in regulating the conduct of people within its borders who work in that profession, even when the victim of the conduct is a non-California resident who works mostly, or even entirely, outside California.   If FaZe Clan was correct, California's licensing laws could easily be sidestepped by California businesses when those businesses conduct interstate commerce.  Obviously, that cannot be.

Here, the evidence demonstrates that there is sufficient conduct within or connected to California to subject FaZe Clan to the TAA's licensing requirements.  Notably, Youssef Ali, was designated as FaZe Clan's corporate representative on the following topic: "The location where FaZe Clan and Tenney actually performed under the Gamer Agreement as well as where FaZe Clan intended that the parties would perform under the Gamer Agreement." Ali confirmed that almost all work that FaZe Clan performed for Tenney was performed out of FaZe Clan's Los

Angeles Office.[3]  (Liston Opp. Aff., Ex. 1 (Y. Ali Tr.) at 10:15-12:1, 12:2-17, 19:11-13, 28:1-30:9, 43:4-5, 46:6-21, 47:19-49:11, 50:18-51:6, 86:3-88:16, 88:24-89:10, 92:1-16, 137:18-138:2, 226:5-14, 226:22-227:13, 229:2-11, 230:9-232:24.)

During the relevant timeframe, FaZe Clan maintained its only office and headquarters in Los Angeles, California.  (Bowden Aff., ¶ 2).  This fact alone should subject FaZe Clan to California licensing requirements.  FaZe Clan did not have any offices outside of California.  (*Id.*).  FaZe Clan's sales/branding partnerships department/team was also located in and operated out of FaZe Clan's Los Angeles office.  (Bowden Aff., ¶ 3; Liston Opp. Aff., Ex. 1 (Y. Ali Tr.) at 229:2-11, 230:9-232:24.)  Critically, FaZe Clan's efforts to source the opportunities for Tenney at issue were based out of FaZe Clan's Los Angeles office.  (*Id.*).  Notably, FaZe Clan ignores that in addition to Wiggin, its sales/branding partnerships department/team included at least two other individuals, Melissa Bowden and Richard Webb.  (Bowden Aff., ¶¶ 3-5).  Bowden and Webb, who were in Los Angeles, were both responsible for sourcing the opportunities at issue for Tenney.  (*Id.*).  Again, they did so from FaZe Clan's Los Angeles office.  (*Id.*).

FaZe Clan's depiction of Wiggin's California contacts is also misleading.  In addition to ignoring the other individuals on the FaZe Clan "sales" team who procured or attempted to procure the opportunities at issue, FaZe Clan ignores that Wiggin also worked out of FaZe Clan's Los Angeles office through September 2018, and was sourcing opportunities for Tenney prior to moving to the east coast for personal reasons.  (Bowden Aff., ¶ 6).  Even when Wiggin

---

[3] Ali's testimony reveals that any FaZe Clan performance that occurred outside of California was both negligible and unrelated to the procurement of employment or engagements.

moved to the east coast, he worked "remotely" from home and still had sufficient connections to FaZe Clan's California business.  (*Id*.).

FaZe Clan also ignores that it employed a California "talent management" team that was integral to the procurement process.  (Bowden Aff., ¶ 7; Tenney Opp. Aff. ¶ 8; Liston Opp. Aff., Ex. 1 (Y. Ali Tr.) at 43:4-5, 47:19-49:11, 50:18-51:6, 226:5-14.)  Again, FaZe Clan's talent managers, who were also located in Los Angeles, were exclusively responsible for presenting and discussing the opportunities at issue with Tenney.  (Tenney Opp. Aff. ¶ 8).  If the talent was interested, the talent manager would "finalize the deal".  (Liston Opp. Aff., Ex. 1 (Y. Ali Tr.) at 28:1-30:9; 92:1-16).  FaZe Clan's talent managers' communications with Tenney about these opportunities were at least made from California.  (*Id.* at 86:3-88:16; 88:24-89:10).  In fact, most of these communications with Tenney were in person meetings that occurred in California.  (*Id.* at 89:6-10, 230:9-232:24).  Indeed, Tenney only interacted with FaZe Clan personnel who were based out of Los Angeles.  (Tenney Opp. Aff. ¶ 8.)

Finally, despite FaZe Clan's attempt to characterize Tenney as a non-resident of California, Tenney moved to California at FaZe Clan's request, at least for several months, so that he could live in a FaZe Clan house and collaborate with other FaZe Clan talent.  (Tenney Opp. Aff. ¶ 7.)  Again, it was in California where FaZe Clan was interacting with Tenney, in particular about the opportunities at issue.  (Liston Opp. Aff., Ex. 1 (Y. Ali Tr.) at 89:6-10, 230:9-232:24.)

Accordingly, Tenney has identified sufficient evidence to create a genuine issue of material fact.

### III.   FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That Tenney Breached the Gamer Agreement by Not Paying FaZe Clan Its Share of "In-Game Merchandise"

FaZe Clan's argument that it is entitled to summary judgment on its claim that it should be paid 50% of the millions in revenue Tenney has generated from Epic Games' Support-a-Creator program ("Creator Program") borders on the frivolous.

Tenney signed up with Epic Games – the maker of *Fortnite* – to participate in their brand new Creator Program after the Gamer Agreement expired in October 2018.  (Tenney Opp. Aff. ¶ 17.)  Under the Creator Program, eligible creators would be assigned a code; Tenney's code is "TFue."  *Id.*  When people play Fortnite, they may use Tenney's "TFue" code when they purchase electronic items from Epic Games.  *Id.*  If they do, Tenney receives a small percentage of Epic's revenue.  *Id.*  Between January 29, 2019 (when Tenney first received income from the Creator Program) and December 31, 2019, Tenney received several million dollars from the Creator Program.  *Id.*  For four independent reasons, FaZe Clan is not entitled to any of that revenue.

First, as set forth in Tenney's motion for partial summary judgment (Part II), the Gamer Agreement ended on October 27, 2018, and was not automatically renewed.  All of Tenney's Creator Program revenue was earned and received after the Gamer Agreement ended.

Second, the contractual provision at issue, referring to "in-game/sticker," is clearly ambiguous (at best).  "In-game/sticker" has no clearly defined meaning and FaZe Clan cites no case or source for the proposition that "in-game sticker" unambiguously means revenue generated through the Creator Program.  FaZe Clan's *ipse dixit* that "in-game sticker" is "clearly defined and unambiguous" (Motion at 13), is not well taken.  FaZe Clan argues that no parol

evidence can be utilized to determine the meaning of "in-game/sticker," but without irony, FaZe Clan relies only on alleged parol evidence.

The phrase "in-game/sticker" has a meaning that differs from what appears in FaZe Clan's moving brief.  In fact, that meaning is the same meaning that *FaZe Clan itself* has always applied to the phrase.  On May 23, 2019, FaZe Clan released a public statement and video about the meaning of "in-game/sticker" and announced that FaZe Clan had no right whatsoever to Tenney's Creator Program revenue because such revenue was outside the meaning of the Gamer Agreement.  (Tenney Opp. Aff. ¶ 19.)  FaZe Clan publicly stated that "Tfue's contract has nothing to do with Support-A-Creator" for two reasons.  First, "Tfue was signed [to FaZe Clan] in **April of 2018**, while Epic [Games] announced Support-A-Creator in **October of 2018**."  *Id.* Second, FaZe Clan acknowledged that any income generated from the Creator Code Program is not included in the Gamer Agreement's definition of "In-Game Merchandise."  Specifically, FaZe Clan explained that "**In-game items** [under the Gamer Agreement] refers to **the application of the FaZe logo or brand in a video game**, such as Counter-Strike."  *Id.*  Fortnite players' use of Tenney's creator code has nothing to do with the application of the FaZe Clan logo or brand.  *Id.*  Accordingly, under FaZe Clan's own definition of "in-game/sticker," Creator Program revenue is entirely excluded.

Third, even if Creator Program revenue were included in the definition of "in-game/sticker," FaZe Clan would still not be entitled to any of that revenue, because none of that revenue was generated in connection with Tenney's "Services" under the Gamer Agreement. The Gamer Agreement defines certain income categories including: "[a]ll other income (including, but not limited to, salaries, earnings, fees, royalties, bonuses, share of profits, and gifts, etc.) generated in connection with Gamer's *Services* (whether individually or as part of the

13

Team) from the following sources shall be split as follows: in-game/sticker ("In-Game

Merchandise"): 50% to Gamer and 50% to Company. (Gamer Agreement at 2.)  "Services"

under the Gamer Agreement include Tenney's "Play[ing] on [FaZe Clan's Fortnite] Team, which

includes participating in tournaments and training sessions with the Team and representing the

Team," "Participat[ing] in marketing activities]," and "Participat[ing] in all LAN (Local Area

Network) Tournaments, Major Tournaments, League Matches and Online Tournaments as

requested by the Company (collectively, "Tournaments and/or Matches") participation in

tournaments, participation in marketing activities."  (*Id.*)  Fortnite players using Tenney's

Creator Program code of their own volition and without Tenney's participation does not even

arguably fall under any of these categories, and FaZe Clan does not even try to demonstrate

otherwise.

Finally, FaZe Clan waived any right it may have had to Creator Program revenue.   Under

New York law, "Once a contract is formed, the parties may of course change their agreement by

another agreement, by course of performance, or by conduct amounting to a waiver or estoppel."

*CT Chems. v Vinmar Impex*, 81 N.Y.2d 174, 179 (1993).  Thus, "[c]ontractual rights may be

waived if they are knowingly, voluntarily and intentionally abandoned," and "[s]uch

abandonment may be established by affirmative conduct or by failure to act so as to evince an

intent not to claim a purported advantage."  *Fundamental Portfolio Advisors, Inc. v Tocqueville

Asset Mgt., L.P.*, 7 N.Y.3d 96, 104 (2006) (internal quotation marks omitted).  In this case, FaZe

Clan repeatedly, knowingly, and intentionally told Tenney that FaZe Clan would not collect any

amounts allegedly due under the Gamer Agreement.

For example, Richard Bengtson (p/k/a FaZe Banks), a part owner of FaZe Clan, testified

that FaZe Clan had not collected income under the Game Agreement "with no plans to and that

was very clear to Tenney." (Liston Opp. Aff., Ex. 1 (R. Benston Tr.) at 136:15-139:9; *see also id.* at 232:16-233:9 ("And, again, I think it's important to note that we never had collected the [Creator] code, and up to this point in time, we had no intention of collecting on any of Turner's splits, like I said before). The reason FaZe Clan had not done so is because Tenney far outperformed the Gamer Agreement and, as Bengston testified, FaZe Clan "felt like we had gotten enough value from him in just the way he was representing our brand that we didn't feel the need or that it was necessarily fair to do that at that time." *Id.* at 136:15-139:9.

Accordingly, for any and all of the reasons stated above, FaZe Clan is not entitled to summary judgment on this portion of its breach of contract claim; Tenney is.

### IV. FaZe Clan Is Not Entitled to Partial Summary Judgment on Its Argument That Tenney's Claims and Defenses Based on California Business & Professions Code Section 16600, et seq., Are Meritless

FaZe Clan argues that Tenney's claims or defenses under California Business and Professions Code § 16600 *et seq.*, ("Section 16600") fail as a matter of law when applying California law.[4]

First, FaZe Clan argues that Section 16600 does not apply to the Gamer Agreement's "in-term" restrictions. Not so. Section 16600 states: "Except as provided in this chapter, **every contract** by which **anyone** is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." *Id.* (emphasis added). Subject to several narrow statutory exceptions, virtually all anti-competitive provisions are unenforceable under California law. *See Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 945 (2008).

---

[4] As discussed, FaZe Clan has stipulated that California law applies to Tenney's Section 16600 claims and defenses.

Critically, and contrary to FaZe Clan's Motion, "in-term" contractually restrictions are usually unenforceable under Section 16600, as a matter of law. *See Kelton v. Stravinski*, 138 Cal. App. 4th 941, 946–48 (2006) (holding that in-term covenant not to compete in partnership agreement was unenforceable as a matter of law); *ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441, 443-444 (9th Cir. 2017) ("Medina argues that § 16600 does not apply to 'in term' non-compete clauses that last only for the term of employment set by the contract. Both California courts and the Ninth Circuit have rejected this argument").

*Kelton* involved a partnership agreement for a warehouse business. The partnership agreement at issue contained a provision limiting the contracting parties' ability to develop or operate other warehouses during the term of the partnership. *Kelton* held that this in-term contract restriction violated Section 16600 and was unenforceable as a matter of law. *See Kelton*, 138 Cal.App. 4th at 946–48. That the parties to the contract were involved in an "ongoing business relationship" would not vitiate Section 16600 and render the covenant not to compete enforceable. *Id.*

In *ITN Flix*, an actor agreed not to play certain roles during the term of the agreement at issue. *ITN Flix* held that this in-term contract restriction violated Section 16600 and was unenforceable as a matter of law. *See ITN Flix*, 686 F. App'x at 443-444. Further, based on the breadth of Section 16600, *ITN Flix* was unwilling to create an exception for personal service contracts in the entertainment industry or elsewhere.

FaZe Clan relies exclusively on *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal.App.5th 462, 470–74 (2020). *Techno Lite*, however, is limited to employer-employee relationships, and is therefore easily distinguishable. *See Id.* ("However, the statute does not affect limitations on an

employee's conduct or duties *while employed*."). *Techno Lite's* limited holding was based on the fact that in California, employees owe their employers an undivided duty of loyalty. *See Id.*

Here, Tenney was not FaZe Clan's employee. The Gamer Agreement was not an employment agreement. In fact, the Gamer Agreement stipulates that Tenney is an independent contractor opposed to an employee: "**Each Party is an independent contractor** and is solely responsible for all of its own employees, subcontractors, labor costs and, except as otherwise provided herein, expenses (including without limitation timely payment of all income taxes, payroll taxes and related withholdings) arising in connection therewith." (Emphasis added). FaZe Clan certainly did not treat Tenney as an employee. (Tenney Opp. Aff. ¶ 9.) Absent from the Motion is any evidence that Tenney was FaZe Clan's employee under the Gamer Agreement. If FaZe Clan is correct, and Tenney was its employee, FaZe Clan has violated California law by misclassifying Tenney as an independent contractor and failing to provide him with required employee benefits.

Second, FaZe Clan argues that Tenney's claim as to the Gamer Agreement's post-term provision(s) are not ripe and that there is no justiciable controversy. FaZe Clan ignores that Tenney has asserted a claim under California Business and Professions Code § 17200 *et seq*. ("Section 17200"). Section 17200 precludes a person or entity from engaging in unfair competition, defined as business practices that are unlawful, unfair or fraudulent. Under either Tenney's Section 17200 or declaratory relief claim, Tenney should not be required to wait for FaZe Clan to enforce or try to enforce an otherwise illegal contract provision before he is entitled to seek relief from that illegal provision. Declaratory relief operates "prospectively" to declare future rights, rather than to redress past wrongs. *Travers v. Louden*, 254 Cal.App.2d 926, 931 (1967). Declaratory relief is designed "to set controversies at rest before they lead to repudiation

of obligations, invasion of rights or commission of wrongs…" *Travers*, 254 Cal.App.2d at

931.  If FaZe Clan wants to stipulate that it will never enforce the post-term provisions at issue,

Tenney is happy to enter into such a stipulation, therefore rendering that portion of this lawsuit

moot. s

## V.     FaZe Clan Is Not Entitled to Partial Summary Judgment on Tenney's Personal Jurisdiction Defense

FaZe Clan is not entitled to summary judgment on Tenney's personal jurisdiction

defense.  (Motion at 22-23.)  On November 6, 2019, this Court denied Tenney's motion to

dismiss for lack of personal jurisdiction, ruling that, at the dismissal stage, FaZe Clan had

satisfied its minimal burden to make a "prima facie" showing of personal jurisdiction over

Tenney.  (Doc. 27, at 9.)  FaZe Clan satisfied that showing by pointing to the Gamer

Agreement's forum selection clause, which is the only alleged basis for personal jurisdiction.  In

its opinion, this Court also expressly left open the possibility that Tenney's personal jurisdiction

argument could prevail at a later stage: "Whether this portion of the contract [*i.e.*, the forum

selection clause] is enforceable is a question for the Court to decide at a later stage of the

litigation." *Id.*

FaZe Clan has adduced no other basis for personal jurisdiction after discovery, and

again relies on the forum selection clause.  *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902

F.2d 194, 197 (2d Cir. 1990) ("After discovery, the plaintiff's *prima facie* showing, necessary to

defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the

trier, would suffice to establish jurisdiction over the defendant.").  This case presents an unusual

circumstance in that the CLC is actively considering Tenney's petition to have the Gamer

Agreement declared void *ab initio* in light of FaZe Clan's violations of the TAA.  *See supra*

Point II.  In light of the CLC's exclusive original jurisdiction over such claims, FaZe Clan's

motion for partial summary judgment on Tenney's personal jurisdictional defense should be deferred until the CLC's determination, because there is no other basis alleged for personal jurisdiction if the Gamer Agreement is void *ab initio*. *See Sterling Natl. Bank v. Eastern Shipping Worldwide*, 35 A.D.2d 222, 222 (1st Dep't 2006) (holding that a forum selection clause may be unenforceable if "a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching"). FaZe Clan has adduced no evidence that Tenney was specifically aware of the forum selection clause or that he focused on it at all, *cf. Confederación Sudamericana de Fútbol v. International Soccer Marketing, Inc.*, 161 A.D.3d 581, 582 (1st Dep't 2018) (noting that party challenging forum selection clause had proposed revisions to clause), so there is nothing unfair about denying this portion of FaZe Clan's motion.[5]

## CONCLUSION

For the reasons set forth above, Tenney respectfully requests that the Court deny FaZe Clan's motion in its entirety.

---

[5] Despite FaZe Clan's suggestion to the contrary, Tenney has always argued that, if the Gamer Agreement is declared void ab initio by the CLC, then personal jurisdiction would be lacking. (Dkt. No. 18, at 19.)

Dated: New York, New York
      March 19, 2020

BEYS LISTON & MOBARGHA LLP

By: */s/ Joshua D. Liston* _____

   Joshua D. Liston
     (jliston@blmllp.com)
   641 Lexington Ave., 14th Floor
   New York, New York 10022
   Tel:  (646) 755-3601
   Fax:  (646) 755-3599

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*