UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAZE CLAN INC.,

                Plaintiff,

   vs.

TURNER TENNEY p/k/a "TFUE"

                Defendant.

Case No. 1:19-cv-07200-JSR

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF FAZE CLAN INC. FOR PARTIAL SUMMARY JUDGMENT

Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: +1 (212) 768-6700

*Attorneys for Defendant FaZe Clan Inc.*

114488293\V-3

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | The Court Should Grant Summary Judgment to FaZe Clan on Tenney's Counterclaims and Defenses that Raise the California TAA | 1 |
| | A. | If the California TAA Issues *Tenney* Inserted into this Case Are "Premature," then They Should Be Dismissed as Unripe | 1 |
| | B. | Tenney Blatantly Misrepresents the California Proceedings | 1 |
| | C. | Tenney Fails to Identify Any Alleged Violation within California | 3 |
| II. | | The Court Should Grant Summary Judgment that Tenney Has Breached the Gamer Agreement with Respect to In-Game Merchandise | 4 |
| III. | | FaZe Clan Is Entitled to Summary Judgment on the Section 16600-Related Counterclaims and Defenses | 7 |
| | A. | "In Term" Exclusivity Covenants Do Not Violate Section 16600 | 7 |
| | B. | Tenney's Request to Declare the Post-Termination "Matching Offer" Provision "Unenforceable" Is Not Justiciable | 9 |
| IV. | | Tenney Does Not Identify Triable Issues for His Personal Jurisdiction Defense | 10 |
| V. | | Conclusion | 10 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Angelica Textile Serv., Inc. v. Park*,
  220 Cal. App. 4th 495 (2013) ........................................................................................... 7, 8

*Application Group, Inc. v. Hunter Group, Inc.*,
  61 Cal. App. 4th 881 (1998) ................................................................................................. 9

*Carter et al. v. Wright et al*,
  2001 WL 36518557 (Ca. Dept. Lab. Oct. 11, 2001) ........................................................... 4, 5

*DiStefano v. Maclay*,
  102 Fed. Appx. 188 (2d Cir. 2004) ......................................................................................... 7

*Gilbert Frank Corp. v. Fed. Ins. Co.*,
  70 N.Y.2d 966 (1988) .............................................................................................................. 7

*Guardian Life Ins. Co. of Am., Inc. v. Andraos*,
  2009 WL 10675264 (C.D. Cal. Mar. 26, 2009) ..................................................................... 8

*ITN Flix, LLC v. Hinojosa*,
  686 Fed. Appx. 441 (9th Cir. Apr. 4, 2017) ........................................................................ 8, 9

*John Street Leasehold LLC v. F.D.I.C.*,
  196 F.3d 379 (2d Cir. 1999) .................................................................................................... 7

*Kelton v. Stravinski*,
  138 Cal. App. 4th 941 (2006) ............................................................................................. 8, 9

*Konowaloff v. Metro. Museum of Art*,
  702 F.3d 140 (2d Cir. 2012) ................................................................................................... 9

*Kurtz. v. Verizon New York, Inc.*,
  758 F.3d 506 (2d Cir. 2014) ................................................................................................... 1

*Leads Club, Inc. v. Peterson*,
  2005 WL 8173326 (S.D. Cal. Dec. 1, 2005) ......................................................................... 8

*Marathon Entertainment, Inc. v. Blasi*,
  42 Cal. 4th 974 (2008) ....................................................................................................... 3, 4

*Scott v. Snelling & Snelling, Inc.*,
  732 F. Supp. 1034 (N.D. Cal. 1990) ..................................................................................... 8

*Siegel v. Su*,
   2018 WL 1393984 (C.D. Cal. Mar. 16, 2018) ....................................................................3, 4

*Sun Forest Corp. v. Svilli*,
   152 F. Supp. 2d 367 (S.D.N.Y. 2001) ...................................................................................10

*Techno Lite, Inc. v. Emcod, LLC*,
   44 Cal. App. 5th 466 (2020) .................................................................................................7, 8

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ..................................................................................................................9

*Windstream Services, LLC v. BMG Rights Mgmt (US) LLC*,
   No. 16-CV-05015-KMW, 2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017) ................................3

**Statutes**

28 U.S. Code § 2201, Declaratory Judgment Act ............................................................................9

N.Y. Gen. Oblig. L. § 15-301 .........................................................................................................7

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) .........................................................................................3

Fed. R. Civ. Proc. 56 .....................................................................................................................10

Fed. R. Evid. 602, 701 ....................................................................................................................5

Plaintiff FaZe Clan Inc. ("FaZe Clan") respectfully submits this reply in support of its motion for partial summary judgment (Doc. 46) against defendant Turner Tenney ("Tenney").

I.  **The Court Should Grant Summary Judgment to FaZe Clan on Tenney's Counterclaims and Defenses that Raise the California TAA**

   A.  **If the California TAA Issues *Tenney* Inserted into this Case Are "Premature," then They Should Be Dismissed as Unripe**

FaZe Clan seeks summary judgment on California TAA issues that *Tenney* -- not FaZe Clan -- has injected into this case through his First and Second Counterclaims, and Twenty-Sixth and Twenty-Seventh affirmative defenses.  It, therefore, is not just troubling -- but it calls into question the good faith of Tenney's pleadings in this case -- for Tenney now to argue that this Court lacks the power to adjudicate the very California TAA issues that *he has pled and put before this Court* because they are supposedly "premature."[1]  (Doc. 59 at 4-6).  Tenney cannot have it both ways.  He cannot raise the California TAA as an issue and then claim it is premature for the Court to consider the issue.  If, as Tenney now argues, it is premature for this Court to consider California TAA issues, then summary judgment should be granted in FaZe Clan's favor because the issue is unripe.  *Kurtz. v. Verizon New York, Inc.*, 758 F.3d 506, 514 (2d Cir. 2014) (affirming dismissal of takings question on ripeness ground because it depended on outcome of administrative decisions) ("A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all.").

   B.  **Tenney Blatantly Misrepresents the California Proceedings**

Tenney states:  "FaZe Clan has stipulated that California law applies to Tenney's claims and defenses in this action based on the TAA."  (Doc. 59 at 5).  And, in his Answer and Counterclaims, Tenney alleges "FaZe Clan has also stipulated that California law, in particular

---

[1] Tenney raised the same California TAA claims in his complaint to the California Superior Court, further emphasizing the irony and/or bad faith in Tenney taking the position that such claims are unripe for determination by *this* Court.

1

Section 16600 and the TAA, would apply to the enforceability of the Gamer Agreement." (Doc. 32 at 17, ¶ 6). As described below, these are blatant falsehoods that misrepresent the proceedings that occurred in California Superior Court.

FaZe Clan filed a motion in the parallel California Superior Court case, seeking dismissal or a stay of that action in light of this case and the Gamer Agreement's New York choice of law and venue clause. (*See* Doc. 47-4, at Ex. G). In response, Tenney argued, and the California Court agreed, that the TAA and Section 16600 could not be waived by the choice-of-law provision in the parties' agreement, but the court nevertheless stayed that case on the condition that the parties stipulate FaZe Clan would not argue waiver in this case. (*Id.* at Ex's. G, H ). However, Tenney misrepresents a key fact:  FaZe Clan did not consent to the application of the TAA and Section 16600 in this New York case.  To the contrary, FaZe Clan advised the California Court it would challenge the applicability of those statutes in New York and the California Court expressly agreed it would be appropriate for FaZe Clan to do so.  (*See* Doc. 47-4, Ex. H at 4:26-5:28 ("The Court:  …***I mean, I think that's pretty clear that that might be an issue that comes up in New York as to whether, in fact, Plaintiff had those connections to California, and whether, in fact, California law applies to the unwaivable part***.  ***I'm not determining that right now***. … You're going to New York.  You're going to figure it out."), 6:27-7:13 (What you've [*i.e.*, Tenney's counsel] indicated is that they can challenge whether, in fact, California -- whether there's connections with [Tenney] to California to invoke … the California law.  …***But that first Determination has to be made, and it's not being made by this Court.  … It's being made by the New York Court***.").) Thus, the parties ultimately stipulated that the California law would apply to Tenney's TAA and Section 16600 claims only "***to the extent*** [he] has rights under" those laws.  (Doc. 47-4, Ex. G at Ex. 2 thereto).

2

### C. Tenney Fails to Identify Any Alleged Violation within California

The crux of FaZe Clan's summary judgment argument is that the California TAA is inapplicable because FaZe Clan did not procure engagements for Tenney within California, or for work within California.  (Doc. 47 at 10-13).  In his response, Tenney *does not cite a single example* of FaZe Clan's alleged procurement of work for Tenney *from California or for work to occur in California*.  (Doc. 59 at 3-11). Tenney generally refers to FaZe Clan's Los Angeles headquarters, and the fact that it maintained some sales personnel within Los Angeles, but he *does not identify one time* when the California-based team procured a deal for Tenney. (*Id*. at 10).[2]  Thus, at best, Tenney improperly seeks an advisory opinion that FaZe Clan's supposed business practices violate the California TAA; he does not raise a concrete and justiciable dispute about instances of supposedly illicit procurement.  *See Windstream Services, LLC v. BMG Rights Mgmt (US) LLC*, No. 16-CV-05015-KMW, 2017 WL 1386357, *7 (S.D.N.Y. Apr. 17, 2017) (claim predicated on validity of "business model" "seeks the kind of hypothetical and advisory opinion, isolated from concrete facts, that cannot confer jurisdiction upon this court.").[3]

The one case Tenney cites to support his position, *Siegel v. Su,* No. 17-cv-07203, 2018

---

[2] Tenney's primary "evidence" is the declaration of Melissa Bowden, a disgruntled former salesperson who claims that she "sourc[ed] brand and sponsorship opportunities" for FaZe Clan members such as Tenney, yet she did not identify a single instance when her "sourcing" -- whatever that means -- led to procurement of a specific deal for Tenney.  (*See* Doc. 61). Presumably, Ms. Bowden is not confessing to violations of the California TAA, so she must not mean that she engaged in unlicensed procurement within the scope of the act.

[3] The closest Tenney comes to proving a connection between California and any particular deal is that one person from FaZe Clan had conversations in California *with Tenney* -- not third parties -- about two specific deals.  (*See* Doc. 65, Ex. 1 at 90:8-12).  But Tenney cannot legitimately argue that conversations between himself and FaZe Clan (allegedly acting on Tenney's behalf) constitute "procurement."  The California Supreme Court has implied that "procurement" is synonymous with "soliciting." *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 986 (2008) ("The Act … regulates…the act of procuring (or soliciting)…").  Black's Law Dictionary's definition of "procure" similarly focuses on obtaining something from a third party (including, in the example given by Black's, a sexual partner). *Black's Law Dictionary* (11th ed. 2019).

3

WL 1393984 (C.D. Cal. Mar. 16, 2018), is irrelevant. *Siegel* holds that the dormant commerce clause does not prevent the application of the California TAA to: (1) non-residents who engage in prohibited activity within California, and (2) California residents who engage in prohibited activity within California, even if some aspect of the prohibited activity occurred outside of California. *Id.* at *7. But, both situations involve the predicate that substantial prohibited activities actually occurred within California (either by a non-resident, or by a California resident who is also engaging in such activities outside of California), <u>which has not happened here</u>.

In stark contrast, and fully supportive of FaZe Clan's argument, are not only the cases cited in FaZe Clan's moving brief, but also the California Labor Commissioner's decision in *Carter et al. v. Wright et al*, TAC 9-00, 2001 WL 36518557 (Ca. Dept. Lab. Oct. 11, 2001). *Carter* involved allegations that a respondent violated the California TAA where there were "two alleged procurement acts within California's borders," but "substantial violations…likely occurred in the parties['] home state" of Florida. *Id.* at *4. The Labor Commissioner held that, under those facts, it lacked jurisdiction to apply the TAA.[4] Thus, even the Labor Commissioner has declined to apply the TAA where a relatively minimal amount of procurement occurred within California.

II.   **The Court Should Grant Summary Judgment that Tenney Has Breached the Gamer Agreement with Respect to In-Game Merchandise**

It is undisputed that when certain fans bought electronic merchandise from Epic Games for use when playing the video game Fortnite, they applied a code affiliated with Tenney

---

[4] The only difference between this case and *Carter* is that FaZe Clan is headquartered in California, a distinction without a difference because the relevant *conduct* did not occur in California. Indeed, the California Supreme Court has made clear that the TAA governs *conduct*, not parties or labels. *Marathon*, 42 Cal. 4th at 986 ("The Act… regulates conduct, not labels; it is the act of procuring (or soliciting), not the title of one's business, that qualifies one as a talent agency and subjects one to the Act's licensure and related requirements.").

4

("Tfue") and, as a result, Epic paid Tenney a portion of the purchase price for this in-game merchandise.  It also is undisputed that Tenney kept 100% of that money even though the Gamer Agreement states the parties would split, 50/50, all "in-game/sticker ('In-Game Merchandise')" generated "in connection with Gamer's Services."  Doc. 47-3, Ex. A at 2.  And Tenney admitted, under oath, that digital costumes (known as "skins") are "in-game merchandise," for which he received a highly lucrative percentage of the sales price from Epic.  (Doc. 47-4, Ex. A at 118:24-119:5) ("Q. You get [a] percent of that in-game merchandise; correct?  A. Yeah, the in-game skins."); *see also* Doc. 58-3, at Ex. C (Tenney's bank report, containing amounts he received from Epic Games, Inc.).

Tenney's opposition asserts three lines of attack, none of which have merit.  *First*, Tenney argues that "In-Game Merchandise" should not have its plain, usual and obvious meaning:  *i.e.*, electronic merchandise purchased for use within a game.  However, there is no ambiguity in this term and, in any case, Tenney does not present evidence that he had a different understanding of this term when he entered the Gamer Agreement.[5]  To the contrary, Tenney admitted at his deposition that In-Game Merchandise includes Epic's sales of Fortnite skins.  *Id.*

*Second*, Tenney argues that revenue from In-Game Merchandise was not generated through the "Services" he was providing to FaZe Clan under the Gamer Agreement.  But the agreed upon definition of "Services" is broad, and encompasses all manner of "[p]laying on [FaZe Clan's] Fortnite team," "[p]anticipating in marketing activities," and "[r]epresent[ing] the

---

[5] Tenney's primary "evidence" that "In-Game Merchandise" has a different meaning consists of out-of-court opinion statements contained in a YouTube video posted long after the Gamer Agreement was entered, made by non-lawyers who neither drafted, negotiated, nor signed the Gamer Agreement. (Doc. 59 at 13.)  Such "evidence" violates the parol evidence rule (*see* FaZe Clan's opening brief at 15-16), and involves inadmissible legal opinions, attributed to lay witnesses who lacked personal knowledge about the negotiation and intent of the Gamer Agreement.  Inadmissible evidence cannot create a triable issue of fact.  *ABB Indus. Sys., Inc. v. Prime Tech.*, Inc., 120 F.3d 351, 357 (2d Cir. 1997); Fed. R. Evid. 602, 701.

5

Company in social media as instructed by Company…" Doc. 47-3, Ex. A at 1-2. Tenney ignores that the revenue from Epic was generated through Tenney's playing of Fortnite as part of FaZe Clan's team and under FaZe Clan's banner, and through his marketing of FaZe Clan in social media videos, posts and streaming. Indeed, as set forth in greater detail in FaZe Clan's opposition to Tenney's partial motion for summary judgment,[6] Tenney promoted and monetized his Epic code using FaZe Clan's logo, while streaming his Fortnite matches and with the help of FaZe Clan's personnel. Put simply, streaming Fortnite matches and making money while doing so is *exactly* one of the things that that FaZe Clan contracted Tenney to do.

Moreover, Tenney's suggestion that the Epic creator code was a legitimate side business is belied by the fact that such a side business would violate the Gamer Agreement. For example, in Section 4.c. of the Gamer Agreement's Terms and Conditions, Tenney grants to FaZe Clan the *exclusive* right to use his name and likeness in connection with advertising, promotion, marketing, and all facets of FaZe Clan's business (*e.g.*, esports). Doc. 47-3, Ex. A at Terms & Conditions § 4.c. Similarly, Section 5.c. of the Gamer Agreement prevents Tenney from engaging in marketing, promotional and endorsement activities during the term of the Gamer Agreement without FaZe Clan's approval. *Id.* at § 5.c. Thus, Tenney could not have generated revenue from his Epic code without breaching the Gamer Agreement.

*Third*, Tenney claims FaZe Clan has waived its right to receive revenue from in-game merchandise. But, Tenney's argument is precluded by the language in the Gamer Agreement requiring both parties' written consent for a waiver to occur. Gamer Agreement (Doc. 47-3, Ex. A at 4 (Miscellaneous Section)) at 4 ("[T]he observance of any provisions hereof may be

---

[6] *See* Doc. 58 at 15-16; Doc 58-3, Ex. A at 115:4-118:3, 118:16-119:5; Doc. 58-3, at Ex. C; at 15-16; Doc. 58-2 at ¶ 3.

waived…only with the written consent of both Parties…");[7] N.Y. Gen. Oblig. L. § 15-301; *DiStefano v. Maclay*, 102 Fed. Appx. 188, 189 (2d Cir. 2004).  In any case, "waiver should not be lightly presumed" and requires "a clear manifestation of intent by defendant to relinquish" a contractual right.  *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988).  The fact that FaZe Clan did not immediately file a lawsuit to force Tenney to turn over the In-Game Merchandise revenue is not a waiver.  *See Bank of Am, N.A. v. Wm. V. Schmidt Co., Inc.*, No 10 Civ. 4926, 2011 WL 1334844, *7 (S.D.N.Y. Mar. 25, 2011).  And Tenney's reference to statements made in the context of contract renegotiations occurring through 2019, by a non-executive and non-lawyer who was not authorized to waive positions on behalf of FaZe Clan, cannot be a waiver.  *See John Street Leasehold LLC v. F.D.I.C.*, 196 F.3d 379, 382 (2d Cir. 1999).

### III. FaZe Clan Is Entitled to Summary Judgment on the Section 16600-Related Counterclaims and Defenses

#### A. "In Term" Exclusivity Covenants Do Not Violate Section 16600

The California Court of Appeals' January 21, 2020 opinion in *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 466 (2020), unequivocally holds that "in term" restrictive covenants do <u>not</u> violate Section 16600: "**the statute does not affect limitations on an employee's conduct or duties *while employed*.**" *Id.* at 471 (emphasis added; italics in original).  *Techno Lite* drew heavily on the 2013 opinion in *Angelica Textile Serv., Inc. v. Park*, 220 Cal. App. 4th 495, 509 (2013), which has the same holding:  "[Because][plaintiff's] claims are based

---

[7] There are limited exceptions where an oral modification can be enforced despite a "written modification" requirement, specifically if there has been:  (1) partial performance of an agreement to modify, or (2) inducement to rely which is unequivocally referable to the modification.  *DiStefano, v. Maclay*, 102 Fed. Appx. 188, 189 (2d Cir. 2004); *John Street Leasehold LLC v. F.D.I.C.*, 196 F.3d 379, 382 (2d Cir. 1999).  Neither situation is present here.  Tenney does not present evidence of the terms of any supposed "agreement" to modify the Gamer Agreement (much less an enforceable agreement supported by consideration), and he does not claim to have been induced to do anything he was not already doing.

7

on [defendant]'s conduct during his employment by [plaintiff] … they are in no sense barred by … section 16600." *See Techno Lite*, 44 Cal. App. 5th at 472-72 (discussing *Angelica*).

Tenney's contention that *Techno Lite* and *Angelica* are "limited to employer-employee relationships," to the exclusion of "independent contractor" relationships, is meritless. *Techno Lite* and *Angelica* do not discuss the employee/contractor distinction at all, nor do they suggest that their holdings turn on that classification. *See id.* Moreover, Tenney's position conflicts with a wealth of Section 16600 jurisprudence that *does* discuss this distinction, all of which holds that Section 16600 applies *equally* to employees and contractors. *See Guardian Life Ins. Co. of Am., Inc. v. Andraos*, 2009 WL 10675264, at *3 (C.D. Cal. Mar. 26, 2009) ("The Court sees no reason why the California Supreme Court's interpretation of [Section 16600] would apply differently to employees versus independent contractors."); *Leads Club, Inc. v. Peterson*, 2005 WL 8173326, at *11 (S.D. Cal. Dec. 1, 2005) (rejecting argument that Section 16600 "only applies to employees and not to independent contractors"); *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1040 (N.D. Cal. 1990) (Section 16600 "applies to independent contracting agreements").

Tenney's opposition cites only a single California appellate opinion (*Kelton v. Stravinski*, 138 Cal. App. 4th 941 (2006)), which pre-dates *Techno Lite* by 14 years and is irreconcilable with the subsequent *Techno Lite* opinion. *Kelton* held that <u>all</u> restrictive covenants were illegal under Section 16600 -- "in term," "post-term," or otherwise -- unless they fell within one of two statutory exceptions. *Id.* at 946 (citation omitted). *Kelton*'s interpretation of the statutory scheme is irreconcilable with, and has been effectively replaced by, the California Court of Appeal's more recent opinions in *Angelica* (2013) and *Techno Lite* (2020), discussed above.

Even less persuasive is Tenney's citation to the unpublished, non-precedential three-page Memorandum Opinion in *ITN Flix, LLC v. Hinojosa*, 686 Fed. Appx. 441 (9th Cir. Apr. 4, 2017). *ITN Flix* pre-dates *Techno Lite* and, like the opposition brief itself, cites only a single

California opinion: the 2006 *Kelton* opinion. *See ITN Flix*, 686 Fed. Appx. at *444. *ITN Flix* is unpersuasive for the same reasons that *Kelton* is unpersuasive. Not surprisingly, no case -- federal or state -- has cited *ITN Flix* with approval. Of course, even *published* federal opinions are not binding on this Court as to the interpretation of state statutes, much less an *unpublished* Memorandum Opinion that is self-designated as "not precedent." *See id.* at 443.

### B. Tenney's Request to Declare the Post-Termination "Matching Offer" Provision "Unenforceable" Is Not Justiciable

Tenney's request for a "declaration" that the Gamer Agreement's "Matching Offer" provision violates Section 16660 is an improper request for an advisory opinion regarding speculative and hypothetical future events that may never transpire. (Doc. 59 at 17-18). Article III requires an injury that is "actual or imminent, not 'conjectural' or 'hypothetical'" (*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)), and the federal Declaratory Judgment Act requires a "controversy … of sufficient immediacy and reality" (*Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 147 (2d Cir. 2012) (quotation omitted)). Tenney's requested "declaration of rights" fails both requirements. There is no evidence in the record that Tenney received a Matching Offer or that he anticipates receiving such an offer in the near future. (Gamer Agreement (Doc. 47-3, Ex. A) at § 5.c.) Whether such an offer will ever exist is pure speculation.[8]

Moreover, it is impossible to determine in advance whether California law (*i.e.*, Section 16600) would even apply to such a hypothetical future offer of work to Tenney. That choice-of-law analysis would depend on factors that are unknowable at this time, including whether the hypothetical future offer comes from a team within or outside of California, whether the offer

---

[8] In fact, under Tenney's theory of the case, both the Gamer Agreement and the three-month Matching Period have *already* expired, rendering the controversy moot. *See Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 894 (1998) (where post-term restrictive covenant had expired, former employee's "individual claims for declaratory relief … were and are entirely moot").

involves work within or outside of California, and where Tenney resides at the time of the offer. Such issues cannot be adjudicated in advance, in the abstract.

### IV. Tenney Does Not Identify Triable Issues for His Personal Jurisdiction Defense

Where the plaintiff makes a prima facie showing of personal jurisdiction -- as FaZe Clan has done through reference to the Gamer Agreement's jurisdiction clause -- the burden shifts to the defendant to identify triable issues of fact regarding the enforceability of that clause. *Sun Forest Corp. v. Svilli*, 152 F. Supp. 2d 367, 379-83 (S.D.N.Y. 2001). Rather than identifying disputed issues of material fact, Tenney asks this Court to defer ruling on this aspect of FaZe Clan's motion until a determination is made, at some later time, as to whether the Gamer Agreement is "void" *in its entirety*. (Doc. 59 at 19). Tenney's tactic is improper for two reasons.

*First*, Rule 56 is mandatory where, as here, there are no genuine issues of fact and law. Fed. R. Civ. Proc. 56(a) ("The Court <u>shall</u> grant summary judgment…")(underscore added).[9] *Second*, even if Tenney had raised a triable issue of fact whether the Gamer Agreement is void *as a whole* (which he has not), it does not follow that the forum selection / consent to jurisdiction clause *itself* is unenforceable. *See*, *e.g.*, *Sun Forest*, 152 F.Supp.2d at 380, 393-98 (granting plaintiff's motion for summary judgment as to personal jurisdiction, based on contract's forum selection clause, even where disputed issues of fact precluded summary judgment as to whether that contract was "voidable under New York law"). In other words, courts "address the validity of the forum-selection clauses *separately* from the defenses to the [contract] on the merits." *Id.* at 380 (emphasis added).

### V. Conclusion

Accordingly, FaZe Clan's motion for partial summary judgment should be granted.

Dated: Los Angeles, California          By: */s/ Manny J. Caixeiro*

---

[9] Notably, Tenney does not -- and cannot -- claim that Fed. R. Civ. P. 56(e) applies.

| | |
|---|---|
| March 26, 2020 | DENTONS US LLP |
| | |
| | Joel D. Siegel (admitted *pro hac vice*) |
| |    (joel.siegel@dentons.com) |
| | Manny J. Caixeiro (Bar No. MC-0218) |
| |    (manny.caixeiro@dentons.com) |
| | Paul M. Kakuske (admitted *pro hac vice*) |
| |    (paul.kakuske@dentons.com) |
| | 601 South Figueroa Street, Suite 2500 |
| | Los Angeles, California 90017-5704 |
| | +1 (213) 623-9300 |
| | |
| | Justin N. Kattan |
| |    (justin.kattan@dentons.com) |
| | 1221 Avenue of the Americas |
| | New York, New York 10020-1089 |
| | +1 (212) 768-6700 |
| | |
| | *Attorneys for Plaintiff FaZe Clan Inc.* |

114488293\V-3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this case. My business address is Suite 2500, 601 South Figueroa Street, Los Angeles, California 90017-5704.

A true and correct copy of the document, <u>REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF FAZE CLAN INC. FOR PARTIAL SUMMARY JUDGMENT</u>, was served in the manner stated below.

**1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>March 26, 2020</u>, I checked the CM/ECF docket for this case and determined that the following person/s is/are on the Electronic Mail Notice List to receive NEF transmission at the email address/es stated below.

Judd R. Spray
Law Office of J.R. Spray
450 7th Avenue, 33rd Floor
New York, NY 10123-3300

Counsel for Plaintiff
T: 347 409 0211 / F:
E: juddspray@juddspraylaw.com/jspray@mselaw.com

Joshua D. Liston
Beys Liston & Mobargha LLP
641 Lexington Avenue, 14th Floor
New York, NY 10022-4503

Counsel for Defendant
T: 646 755 3600 / F: 646 755 3599
E: jliston@blmllp.com

**2. <u>SERVED BY UNITED STATES MAIL &/~~OR~~ DIRECT EMAIL</u>:** On <u>March 26, 2020</u>, I or an attorney on the matter served the following person/s and/or entity/ies in this case at the last known address/es by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class postage prepaid, and addressed as follows, and/~~or~~ to the email address/es indicated. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Bryan J. Freedman
Freedman & Taitelman, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067-6007

Counsel for Defendant
T: 310 201 0005 / F: 310 201 0045
E: bfreedman@ftllp.com

**3. <u>SERVED BY PERSONAL DELIVERY, NEXT BUSINESS DAY OR FACSIMILE TRANSMISSION</u>:** Pursuant to F.R.Civ.P. 5 and/or controlling Local Rules, on <u>March 26, 2020</u>, the following person/s and/or entity/ies was/were served by personal delivery, overnight mail service, or (for those who consented in writing to such service method) by facsimile transmission. Listing the judge here constitutes a declaration that personal or next court day delivery to the judge <u>will be completed</u> no later than the time indicated, if any.

Honorable Jed S. Rakoff
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 14B
New York, NY 10007-1312

➲ By Messenger to the Judge's Dropbox w/ NEF behind by 5pm the next court day
☐ By Next Business Day [Trkg# _____]
☐ By Facsimile to _____
☐ By Email to RakoffNYSDChambers@nysd.uscourts.gov

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 26, 2020 | Frederick Kalve | *[signature]* |
|---|---|---|
| Date | Printed Name | Signature |

**PROOF OF SERVICE – Case No. 1:19-cv-07200-JSR**