UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAZE CLAN, INC.,

               *Plaintiff,*

     -v-

TURNER TENNEY p/k/a "TFUE"

               *Defendant.*

Civil Action No. 19-cv-07200 (JSR)

ECF Case

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Joshua D. Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel:  (646) 755-3601
Fax:  (646) 755-3599
jliston@blmllp.com

*Attorneys for Defendant*
*Turner Tenney p/k/a "TFUE"*

Dated: New York, New York
      March 26, 2020

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.     Tenney Is Entitled to Partial Summary Judgment On FaZe Clan's First, Second,
       and Third Causes of Action for Breach of Contract ...................................................... 1

       A.  FaZe Clan Did Not Satisfy Its Renewal Obligations ...................................... 1

           1.  Tenney Did Not "Self-Collect" the Monthly Fees ............................. 1

           2.  FaZe Clan's October 2018 Payment of Monthly Fees Was Not Timely ......... 3

       B.  FaZe Clan Failed to Satisfy NY General Obligations Law Section 5-903 ................. 4

       C.  Any Newly Asserted Implied-in-Fact Contract Theory Cannot Be Used to
           Avoid Summary Judgment on the Breach of Written Contract Claims...................... 5

           1.  The Brand New Implied-in-Fact Contract Claim Is Separate and
               Distinct from the Complaint's Breach of the Written Gamer
               Agreement Claim ........................................................................... 5

           2.  FaZe Clan Cannot Raise New Legal Theories to Defeat
               Summary Judgment ......................................................................... 7

II.    Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's FaZe Clan's
       Sixth and Seventh Causes of Action for Intentional Interference with Contracts
       and/or Prospective Business Relationships with "Brand Deal Partners".......................... 7

III.   Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Ninth Cause
       of Action for Unjust Enrichment ...................................................................... 8

CONCLUSION........................................................................................................ 11

# TABLE OF AUTHORITIES

PAGE

C<small>ASES</small>

*Autowest, Inc. v. Peugeot, Inc.*, 287 F. Supp. 718 (E.D.N.Y. 1966)................................. 6

*In re ASARCO, L.L.C.*, 522 F. App'x 209 (5th Cir. 2013)............................................. 6

*Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394 (S.D.N.Y. 2000)............................... 7

*G–I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233 (S.D.N.Y. 2001) ................ 8

*Kolmar Ams., Inc. v. Koch Supply & Trading*, LP, 10–CV–7905, 2011 WL 6382566
    (S.D.N.Y. Dec. 15, 2011).........................................................................................3-4

*Levion v. Societe Generale*, 822 F. Supp. 2d 390 (S.D.N.Y. 2011) .............................. 7

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ..................................... 8

*Meritain Health, Inc. v. ASARCO LLC*, 2012 WL 3651081 (S.D. Tex. Aug. 23, 2012)................ 6

*Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 94 A.D.2d 947
    (4th Dep't 1983) ..................................................................................................... 4

*New York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365 (1940)............................5-7

*Nickel v. Brenton, LLC*, 92 F. Supp. 3d 38 (N.D.N.Y. 2015)........................................ 6

*Paramount Film Distrib. Corp. v State of New York*, 30 N.Y.2d 415 (1972) ................ 8

*Sparks v. Stich*, 135 A.D.2d 989, 991 (3d Dep't 1987) .................................................. 4

*Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516 (2d Cir. 1990).................... 4

*Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 904, 483 N.Y.S.2d 524 (1984), *aff'd*,
    66 N.Y.2d 824, 498 N.Y.S.2d 363, 489 N.E.2d 250 (1985)............................................ 10

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42
    (S.D.N.Y. 2010) ..................................................................................................... 4

STATUTES & RULES

Fed. R. Civ. P. 15(a), (b).................................................................................................. 4

New York General Obligations Law Section 5-903 .................................................. 4-5

Defendant Turner Tenney p/k/a "Tfue" ("Tenney") respectfully submits this memorandum of law in further support of his motion for partial summary judgment.

## ARGUMENT

### I.  Tenney Is Entitled to Partial Summary Judgment On FaZe Clan's First, Second, and Third Causes of Action for Breach of Contract

#### A.  FaZe Clan Did Not Satisfy Its Renewal Obligations

##### 1.  Tenney Did Not "Self-Collect" the Monthly Fees

Even though FaZe Clan admits that it waited until October 15, 2018, to pay Tenney the Monthly Fees that were due months earlier,  FaZe Clan now argues that Tenney also "self-collected" the Monthly Fees from funds that Tenney purportedly owed to FaZe Clan.  (Opp. Br. at 4-5).  Stated differently, FaZe Clan contends that because the amounts Tenney purportedly owed FaZe Clan on a monthly basis exceeded each $2,000 Monthly Fee, FaZe Clan effectively paid the Monthly Fees to Tenney as required by the Gamer Agreement.  FaZe Clan is wrong.

First, FaZe Clan has failed to demonstrate that Tenney actually owed it at least $2,000 (or any other amount) on the 30th day of each month during the Term.  In fact, FaZe Clan has failed to demonstrate that Tenney ever owed FaZe Clan any money during the Term.  To reach the unsubstantiated conclusion that Tenney was "self-collecting," FaZe Clan relies exclusively on information derived from Tenney's bank account that reflects that Tenney received a combined total of approximately ▮▮▮▮▮ at various times from various sources during the Term.[1] Without any evidence or explanation, FaZe Clan simply assumes that it would be entitled to at least 20% of every dollar that Tenney received during the Term (approximately ▮▮▮▮▮), irrespectively of the source or purpose of any of those monies and whether the Gamer

---

[1] This included twenty-one payments between June 18, 2018 and October 29, 2018.

Agreement entitled FaZe Clan to a percentage of those monies.  The Gamer Agreement,
however, does not entitle FaZe Clan to a percentage of all of Tenney's earnings.  Rather,
Tenney's payment obligations were limited to several discrete categories of earnings.  Tenney
Decl., Ex. 1, at 2-3 ("Compensation").  Here, FaZe Clan failed to present any evidence as to the
purpose or nature of any of the payments identified on Tenney's bank statement, or why under
the Gamer Agreement, FaZe Clan was entitled to a percentage of any of the monies identified on
Tenney's bank statement.[2]

Second, even if FaZe Clan was entitled to a percentage of every dollar Tenney earned
during the Term, which it was not, FaZe Clan still would have been required to pay Tenney a
Monthly Fee on May 30, 2018.  Based on the Tenney bank statement relied on by FaZe Clan,
██████████████████████████████ that FaZe Clan even contends it could be
entitled to.  Accordingly, Tenney certainly did not self-fund the first Monthly Fee on May 30.
FaZe Clan should have at least paid Tenney a Monthly Fee in May 2018.  Any subsequent
payment  of that Monthly Fee would be untimely, and would not satisfy the unambiguous
condition for extending the Gamer Agreement beyond the Term.

Third, any notion that Tenney was self-funding the Monthly Payments is belied by FaZe
Clan's belated payment of the Monthly Fees in October 2018.  In late September 2018, Tenney's
counsel expressly notified FaZe Clan that it had not satisfied the condition for extending the

---

[2] The Trink declaration includes the following vague and conclusory statement: "FaZe Clan has
never received any payments from Tenney, including money that Tenney was required to turn
over to FaZe Clan."  (Trink Decl., ¶ 6.)  This statement is not competent evidence that Tenney
owed FaZe Clan money during the term.  Absent from Trink's declaration is any explanation as
to why Tenney owed any amounts to FaZe Clan, what those amounts were, how those amounts
were calculated, or **when** those amounts should have been paid to FaZe Clan.  FaZe Clan also
relies on Tenney's deposition testimony.  (Tenney Depo., pp. 232:20-233:11).  Tenney, however,
simply testified that he never paid FaZe Clan any portion of his tournament winnings.  There is
no evidence as to when Tenney earned any tournament winnings, in particular during the Term.

Term and that the Gamer Agreement would automatically expire.  That is, contrary to FaZe

Clan's false contention that Tenney's attorneys "invented" the untimely payments during this

litigation, Tenney's counsel's September 26, 2018 letter to FaZe Clan stated that "**FaZe Clan**

**has not met the required conditions to automatically extend the Agreement for the 36-**

**month Extended Term** …Accordingly, … **the Agreement shall automatically expire and will**

**be of no further force or effect on October 28, 2018**."  Tenney Decl., Ex. 2 (emphasis added).

Critically, in apparent response to Tenney's counsel's letter, FaZe Clan finally paid Tenney the

Monthly Fees that should have been paid months earlier.  Accordingly, FaZe Clan has failed to

create a genuine issue of material fact as to the untimely payment of the Monthly Fees.

## 2. FaZe Clan's October 2018 Payment of Monthly Fees Was Not Timely

FaZe Clan concedes that on October 15, 2018, it ultimately paid Tenney five months of

Monthly Fees for May to September 2018 totaling $10,000.  (Opp. Br. at 6).  These untimely

payments did not satisfy the condition for extending the Gamer Agreement beyond the Term –

that Monthly Fees be paid on a "timely basis."  In Opposition, FaZe Clan does not dispute either

the existence or meaning of this unambiguous condition to extending the Gamer Agreement's

six-month Term.  Likewise, FaZe Clan does not dispute that its October 15 payment was not

timely, and that the Gamer Agreement required FaZe Clan to pay those fees months earlier.[3]

Notably, "where a definite time of performance is specified in a contract, time is of the

---

[3] FaZe Clan's argument that it had a 30-day cure period in which to pay the Monthly Fees is
wrong.  (Opp. Br. at 5 & n.4).  The cure period applies only to certain "material breaches" of the
Gamer Agreement.  Tenney Dec., Ex. 1, Terms and Conditions at 6(d).  There is no cure period
for FaZe Clan to fulfill any of the express "conditions" set forth in order for the Term of the
Gamer Agreement automatically to extend.  *Id.* at 1 ("Term").  In fact, the Gamer Agreement's
renewal provision specifically excludes reference to the Terms and Conditions, which includes
the "cure" provision.  *Id.* ("[N]otwithstanding anything to the contrary set forth in this
Agreement (including the T&Cs) . . . .").

essence unless the circumstances affirmatively indicate a contrary intent." *Kolmar Ams., Inc. v. Koch Supply & Trading*, LP, 10–CV–7905, 2011 WL 6382566, at *8 (S.D.N.Y. Dec. 15, 2011) (quoting *Sparks v. Stich*, 135 A.D.2d 989, 991 (3d Dep't 1987)).  That time was of the essence in terms of the Monthly Fees condition to the Gamer Agreement's extension is underscored by the parties' inclusion of the words "timely basis."  Contract provisions specifying dates for performance are "strictly enforced."  *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 523 (2d Cir. 1990).  When time is of the essence, a condition precedent must be immediately performed as required.  *See Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 94 A.D.2d 947, 947 (4th Dep't 1983).  Condition precedents must be strictly enforced.  *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 74 (S.D.N.Y. 2010).  Accordingly, FaZe Clan's markedly late payment of the Monthly Fees did not satisfy the condition to extending the Gamer Agreement's Term.

### B.  FaZe Clan Failed to Satisfy NY General Obligations Law Section 5-903

As demonstrated in Tenney's Opening Brief, the Gamer Agreement did not renew for an independent reason:  FaZe Can failed to provide proper written notice to Tenney under New York General Obligations Law Section 5-903.  Citing a New York state court case, FaZe Clan initially argues that Tenney waived this defense because he did not plead this defense in his Amended Answer.  (Opp. Br. at 7).  But under the Federal Rules, Tenney did not waive this defense, as the Court has discretion to permit amendment of defenses through trial.  *See* Fed. R. Civ. P. 15(a), (b).  Here, if necessary, such amendment would be non-prejudicial because there is no factual dispute that FaZe Clan failed to provide the written notice.

FaZe Clan also argues that Section 5-903 is inapplicable because the Gamer Agreement does not provide Tenney a termination right in connection with the automatic extension.  (Opp.

Br. at 7.)  Notably, FaZe Clan's argument further undermines its own argument that Tenney's

counsel's September 26, 2018 letter to FaZe Clan regarding the non-renewal was in any way

deficient.  FaZe Clan now concedes that no such letter was necessary.  Second, a separate

condition to extend the contract provides that no extension will occur unless both parties agreed

on a gaming chair FaZe Clan would provide.  Tenney Decl., Ex. 1 ("Term" at (iv)).  This is

sufficient conditionality to bring the Gamer Agreement within the scope of Section 5-903.

### C. Any Newly Asserted Implied-in-Fact Contract Theory Cannot Be Used to Avoid Summary Judgment on the Breach of Written Contract Claims

FaZe Clan attempts to overcome partial summary judgment on the Complaint's first

through third causes of action for breach of the **written** Gamer Agreement by asserting a new

and unpled cause of action and legal theory - that there was some "implied-in-fact" contract that

existed post-October 2018.  (Opp., pp. 8-9).  At best, FaZe Clan claims that there might be a **new**

implied-in-fact agreement that was formed after the Gamer Agreement expired in October 2018.

Any assertion that there was a new and distinct implied-in-fact agreement after the Gamer

Agreement expired cannot be used to avoid partial summary judgment as to FaZe Clan's causes

of action for breach of the written Gamer Agreement.  Moreover, as FaZe Clan's operative

Complaint does not allege any implied-in-fact agreement or breach thereof, FaZe Clan cannot

raise this new legal theory for the first time in opposition to summary judgment.

### 1. The Brand New Implied-in-Fact Contract Claim Is Separate and Distinct from the Complaint's Breach of the Written Gamer Agreement Claim

FaZe Clan's new breach of implied-in-fact agreement theory should not prevent the Court

from granting partial summary judgment on the Complaint's causes of action for breach of the

written Gamer Agreement, which expired.  Although continued performance after the expiration

of a written agreement can sometimes support the existence of a new, implied-in-fact agreement,

it is not sufficient to render termination of an expired agreement ineffective. *See New York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365, 371 (1940); *Meritain Health, Inc. v. ASARCO LLC*, 2012 WL 3651081, at *5 (S.D. Tex. Aug. 23, 2012); *In re ASARCO, L.L.C.*, 522 F. App'x 209 (5th Cir. 2013) (applying New York law). Moreover, continued performance sometimes can create a new implied-in-fact agreement on an "at-will" basis with the same payment terms as in the expired written agreement reliance, but not an implied-in-fact agreement regarding other substantive terms, such as a new fixed term or withdrawing the notice of termination. *See Autowest, Inc. v. Peugeot, Inc.*, 287 F. Supp. 718, 721 (E.D.N.Y. 1966); *New York Tel. Co.*, 282 N.Y. at 371.

FaZe Clan claims that *New York Tel. Co.*, supports the contention that even a written notice of termination can be "rendered ineffective by subsequent acts or words of the parties." (Opp. Br. at 9).[4] Not so. *New York Tel. Co.*, involved a fixed-term written agreement between telephone providers concerning "joint traffic". The agreement was cancelable by either party on 90 days' notice, which the defendant provided. Thereafter, the parties continued to cooperate in handling joint traffic, but the defendant refused to pay the contractual rates for plaintiff's services. *New York Tel. Co* affirmed the trial court's determination that the original contract was terminated. The court acknowledged that continued performance by the parties "may at times permit a finding that the parties impliedly agree that their rights and obligations in connection with such business should continue to be measured as provided in the old contract." *Id.* at 371. Nevertheless, the court explained that "[e]ven in such case, however, the reciprocal obligations arise from the **new implied contract**" and, as such, any assertion that the old terms governed the

---

[4] Similarly, FaZe Clan's reliance on *Nickel v. Brenton, LLC*, 92 F. Supp. 3d 38 (N.D.N.Y. 2015) is misplaced. The *Nickel* court merely affirmed denial of summary judgment on a claim for breach of implied-in-fact contract, but did not address a cause of action for breach of written contract.

relationship would depend on a showing of "intent to make such a **new contract** [that] is expressed or may be fairly inferred from the conduct of the parties."  *Id.* (emphasis added). Here, the written Gamer Agreement expired on its own terms.  Accordingly, whether there was a new implied agreement should not prevent summary judgment on the causes of action for breach of the old written agreement which expired.

### 2.  FaZe Clan Cannot Raise New Legal Theories to Defeat Summary Judgment

Where, as here, a plaintiff fails to assert a separate legal theory until filing its opposition to summary judgment, the Court may not consider such a new legal theory in deciding the motion.  *See Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407–09 (S.D.N.Y. 2000); *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 399 & n.4 (S.D.N.Y. 2011) (granting motion for summary judgment on grounds court could not consider new, unpleaded theory based on oral modification of pleaded contract).  *Beckman* explained that "[b]ecause a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'"  *Id.*  As such, FaZe Clan's belated assertion of an implied-in-fact contract cannot form a basis for avoiding summary judgment.

## II.  Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Sixth and Seventh Causes of Action for Intentional Interference with Contracts and/or Prospective Business Relationships with "Brand Deal Partners"

Tenney is entitled to summary judgment on FaZe Clan's Sixth and Seventh Causes of Action that he tortiously interfered with contracts and prospective business relationships between FaZe Clan and certain of its "brand deal partners."  None of FaZe Clan's arguments undermines this conclusion.  First, with respect to all but one of the brand deal partners, at most, FaZe Clan alleges that Tenney made public his dissatisfaction with FaZe Clan.  FaZe Clan does not cite a

single case in which such allegations are sufficient to establish either tort claim.  Second, with

respect to ████████, FaZe Clan states that "FaZe Clan lost the deal when Tenney went to

████████ himself to negotiate his own, separate sponsorship deal."  The only "evidence"

offered for this statement is an affidavit by Lee Trink, FaZe Clan's CEO, but the affidavit does

not actually constitute evidence that Tenney either concluded a deal with ████████, that

Tenney caused ████████ to breach a contract with FaZe Clan, or that Tenney "acted with the

sole purpose of harming plaintiff or used dishonest, unfair or improper means."  *See G–I*

*Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253–54 (S.D.N.Y. 2001).

## III.    Tenney Is Entitled to Judgment as a Matter of Law on FaZe Clan's Ninth Cause of Action for Unjust Enrichment

FaZe Clan argues that "Tenney ignores the heart and substance of FaZe Clan's unjust

enrichment" (Opp. Br. at 17), but in reality, FaZe Clan has now realized that the Gamer

Agreement did not automatically extend beyond October 27, 2018, and they must find a new

theory under which to try to seize Tenney's earnings.  FaZe Clan has shifted gears and now seeks

Tenney's income under its thinly-pleaded unjust enrichment claim.

However, as the New York Court of Appeals has held, "'The essential inquiry in any

action for unjust enrichment... is whether it is against equity and good conscience to permit the

defendant to retain what is sought to be recovered.'"  *Mandarin Trading Ltd. v. Wildenstein*, 16

N.Y.3d 173, 182 (2011) (quoting *Paramount Film Distrib. Corp. v State of New York*, 30 N.Y.2d

415, 421 (1972)).  In *Paramount*, the Court of Appeals wrote, "Generally, courts will look to see

if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still

remains with the defendant, if there has been otherwise a change of position by the defendant,

and whether the defendant's conduct was tortious or fraudulent."  *Id.* (citations omitted)).  Save

one item, none of the evidence FaZe Clan marshals comes close to establishing either that FaZe

8

Clan provided benefits to Tenney between October 28, 2018 through May 15, 2019 under a mistake of fact or law, that Tenney's conduct was tortious or fraudulent, or that Tenney was unjustly enriched.[5]

As detailed in Tenney's opposition to FaZe Clan's motion for partial summary judgment, after the Gamer Agreement ended on October 27, 2018, the parties negotiated outside public view to see if a new arrangement made sense for both parties, but when that effort failed, Tenney announced his public break with FaZe Clan in May 2019.  During that negotiation period, each side provided benefits to the other, including Tenney using his popularity and talents to promote FaZe Clan.  But none of those benefits were provided to the other in any way that could be deemed unjust and FaZe Clan's new effort to do so blatantly misrepresents the record.  In fact, FaZe Clan itself agreed that the benefits it provided Tenney during this period were for the express purpose of convincing Tenney to sign a new agreement with FaZe Clan – and that Tenney provided significant value to FaZe Clan in return.  As FaZe Banks testified:

> Q And if you look at the -- kind of the first  full tweet up there where it says in all caps, "OKAY, LAST TWEET." Do you see that? . . . [I]t says:  "To clarify, Turner's contract does outline splits in prizes, ad revenue, stuff like that. But again, we've collected absolutely none of it with no plans to and that was very clear to him…. Is that a true statement?....

> THE WITNESS: It was true for the time, yes, yes, it was. . . .

> Q And how did you know that it was very clear to Turner that there were no plans to collect any of the splits?

> A . . . . In Turner's case, he -- especially under the -- under the outline of his original agreement, way exceeded expectations. I loved the way he was representing our brand. He was competing at a high level, which is what we originally hoped and expected, and beyond that he developed into a -- a superstar on social media as kind of the face of, not only our Fortnite venture, but kind of

---

[5] Until discovery in this litigation, Tenney did not realize that he received certain small, apparently automatic payments from FaZe Clan after their public break in May 2019.  Tenney concedes that those payments should be returned to FaZe Clan.

Fortnite in general for a little while. And obviously we appreciated that. I personally found a tremendous amount of value in that, and I always told him -- yeah, I mean, as it stands today, referring to before all of this happened, before May of 2019, as it stands right now -- I mean, "You're awesome. We have no plans on taking any of your Twitch revenue." We felt like we had gotten enough value from him in just the way he was representing our brand that we didn't feel the need or that it was necessarily fair to do that at that time. Now those feelings in -- in the way we approached that stuff with each member varies on performance at the time. It's all relative to what time we're talking about.

. . . . [I] [f]lat out told him, "Yeah, we're not going to take any of your Twitch stuff. Anything that we're not directly a part of in producing or" – "or generating for you, we're just going to leave that alone. We're going to" -- "we're going to let you keep all of it." **Obviously in the spirit of trying to make him happy and trying to come to some sort of new deal, I didn't want to rock the boat any more than it needed to be. Again, I didn't feel like we had to. I felt like we received enough value in the way he was representing our brand in carrying the FaZe name. I felt like at that time that was more than we could ask for in that we were happy to let him keep our share of -- of all revenue.**

Liston Opp. Aff., Ex. 2 (Dkt. No. 65-2) at 136:15-139:9; *see also id.* at 135:9-14

("Obviously on [FaZe Clan's] side I'm -- I'm trying to get across to my guys, 'Hey, let's' – 'let's come to some new agreement. Turner's grown a significant amount. Let's make sure he's happy. It's worth it for both sides. Let's just' – 'let's just get this done, like" -- yeah."); Compl. ¶ 5 ("In an effort to maintain a positive relationship with Tenney, FaZe Clan offered several revised versions of the Gamer Agreement beginning just five months after entering into the agreement.").  FaZe Clan is obviously upset that the negotiations did not lead to a new agreement, but the fact remains that Tenney did not receive any unjust benefit during that time.  *Cf. Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 904, 483 N.Y.S.2d 524 (1984) ("The fact that the parties continue to deal under some sort of informal arrangement does not, without more, mean that all the terms of the expired formal contract continue to apply"), *aff'd*, 66 N.Y.2d 824, 498 N.Y.S.2d 363, 489 N.E.2d 250 (1985).

**CONCLUSION**

Tenney respectfully requests that the Court grant him summary judgment on the issues and claims set forth above.

Dated: New York, New York
      March 26, 2020

                              BEYS LISTON & MOBARGHA LLP


                              By: */s/ Joshua D. Liston* _____
                                  Joshua D. Liston
                                    (jliston@blmllp.com)
                                  641 Lexington Ave., 14th Floor
                                  New York, New York 10022
                                  Tel:  (646) 755-3601
                                  Fax:  (646) 755-3599

                                  *Attorneys for Defendant*
                                  *Turner Tenney p/k/a "TFUE"*

11