UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
FAZE CLAN INC.                      :
                                    :
      Plaintiff,                    :
                                    :        19-cv-7200(JSR)
         -v-                        :
                                    :        OPINION AND ORDER
TURNER TENNEY                       :
                                    :
      Defendant.                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     Now before the Court are the parties' cross-motions for
summary judgment in this action for breach of contract and
ancillary claims sounding in tortious interference and quasi-
contract. For the following reasons, plaintiff FaZe Clan's
motion is granted in part and denied in part. Defendant Tenney's
motions are denied in their entirety.

                          **BACKGROUND**

     Defendant Turner Tenney, aka "TFue," is a social media
celebrity and professional player of the video game Fortnite.
See Compl. ¶¶ 1-10, ECF No. 1 (Aug. 1, 2019). Plaintiff FaZe
Clan, in the words of one of its officers, is an "esports and
entertainment organization that competes in video game
tournaments and creates social media content." Anderson Decl. ¶
2, ECF No. 47-3 (Mar. 5, 2020). FaZe Clan enters into contracts
with "gamers" such as Tenney and "invest[s] in and support[s]"
their careers, working to boost their profiles. Id. ¶ 4.

                              1

In April 2018, Tenney signed such a contract, the "Gamer Agreement," with FaZe Clan. Gamer Agreement, ECF No. 51-1 (Mar. 6, 2020). That contract is the subject of this dispute. The Gamer Agreement, in very brief summary, obligated Tenney to "play[] on FaZe Clan's team, participat[e] in training activities, and participat[e] in various promotional, marketing and social media activities," all in exchange for FaZe Clan's obligation to provide him with "(1) a monthly fee, (2) a share of income from cash prizes won at esports tournaments, and (3) a share of revenue from certain merchandise, apparel, brand deals, and other activities," plus training and other support for his career. FaZe Clan's Statement Pursuant to Local Rule 56.1 ¶¶ 3-4, ECF No. 47-1 (Mar. 5, 2020) (hereinafter "FaZe Clan's 56.1 Statement").

About a year after FaZe Clan and Tenney entered into the Gamer Agreement, the relationship between them soured. In May 2019, Tenney revealed to the public, via his social media channels, that he wanted to end his affiliation with FaZe Clan and start a rival esports organization. See, e.g., Ex. I to Caixeiro Decl., ECF No. 47-4 (Mar. 5, 2020) (containing a screen shot of a YouTube video posted by Tenney, with the description written by Tenney declaring "I want to make it very clear that I tried multiple times for multiple months to get out of this contract. This is what had to be done.").

This public split gave rise to three lawsuits that comprise the current dispute. In May 2019, around the time of Tenney's social media comments described above, Tenney filed two lawsuits against FaZe Clan in California state tribunals, seeking to have the Gamer Agreement declared void ab initio.[1] First, Tenney filed an action before the California Labor Commissioner ("CLC"), arguing that the Gamer Agreement was void under California's Talent Agency Act ("TAA"), Cal. Lab. Code. § 1700.4 et seq., because, he alleged, FaZe Clan was operating as an unlicensed talent agency. See Petition to Determine Controversy, Ex. D to Caixeiro Decl. That same month, Tenney filed a second action in California Superior Court, arguing that the Gamer Agreement was void ab initio on other state law grounds, including California's prohibition of many agreements not to compete under Cal. Bus. & Prof. Code § 16600 et seq. See Petition to Determine Controversy, Ex. E to Caixeiro Decl.

In August 2019, FaZe Clan initiated the instant suit against Tenney in this Court, asserting four causes of action for breach of the Gamer Agreement, Compl. ¶¶ 37-53, and five

---

[1] The relevance of California as a forum is that FaZe Clan has its principal place of business in Los Angeles. Compl. ¶ 2. The parties also entered into the Gamer Agreement in that state, and Tenney lived in Los Angeles, at least intermittently, for several months in late 2018 while he was affiliated with FaZe Clan. Tenney's Decl. in Oppo. to FaZe Clan's Mot. for Forum Non Conveniens, Ex. F to Caixeiro Decl. ¶¶ 2-15.

related tort and quasi-contract claims.[2] For its choice of the New York forum, FaZe Clan relied on a provision of the Gamer Agreement that required "[t]he Parties [to] submit exclusively to the state or federal courts located in New York, NY for any claim hereunder." Gamer Agreement, Introduction: Miscellaneous. As a result of this forum selection clause, FaZe Clan was able to successfully move the California Superior Court to stay that action and allow the parties' claims and defenses to be litigated as part of the instant action.[3] Caixeiro Decl. ¶ 8.

---

[2] Compl. ¶¶ 54-60 (Count Five: Misappropriation of Trade Secrets); id. ¶¶ 61-67 (Count Six: Intentional Interference with Contract); id. ¶¶ 68-73 (Count Seven: Tortious Interference with Prospective Business Advantage); id. ¶¶ 74-78 (Count Eight: Commercial Disparagement); id. ¶¶ 79-84 (Count Nine: Unjust Enrichment).

[3] As per California procedure, FaZe Clan's motion to the California Superior Court was styled as a motion to transfer for forum non conveniens. Caixeiro Decl. ¶ 8. Tenney opposed that motion on the ground that the forum selection clause was unenforceable because the Gamer Agreement was void in its entirety. Ex. F to Caixeiro Decl. But the California court agreed with FaZe Clan, holding that the forum selection clause was enforceable as a matter of California law, provided that FaZe Clan would stipulate that California law would provide the substantive rule of decision in the foreign forum for any of Tenney's non-waivable state statutory rights, including his claim under Cal. Bus. & Prof. Code § 16600 et seq. See Opinion of California Superior Court, Ex. G to Caixeiro Decl. at 4-6. FaZe Clan then did so stipulate. Stipulation, Id. at Ex. 2.

The parties then raised similar arguments in October 2019, shortly after FaZe Clan filed the instant lawsuit, when Tenney moved this Court to stay or dismiss this action in favor of the California proceedings under the abstention doctrine in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). FaZe Clan opposed this motion on the ground that the

Unlike all the other claims and defenses, however, Tenney's TAA claim is not yet properly before this Court. Under California law, the CLC has exclusive and non-waivable original jurisdiction to adjudicate claims arising under the TAA. See Cal. Lab. Code § 1700.44(a) ("In cases of controversy arising under this chapter, the parties involved shall refer the matters in dispute to the Labor Commissioner . . . ."). That claim, accordingly, remains pending before the California tribunal; but all other issues are now ripe for summary adjudication by this Court.

The parties now move for summary judgment on various claims and defenses. Because these motions primarily involve questions of fact, the Court must grant summary judgment to the moving party on only those issues where the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applying this standard, the Court grants FaZe Clan's motions for summary judgment only with respect to Tenney's personal

---

mandatory forum selection clause should control, notwithstanding the fact that Tenney filed his actions in California before FaZe Clan filed the instant action in New York. After due consideration of these arguments, the Court denied Tenney's motion, declining to reach the question of whether the forum selection clause was enforceable, but rather holding that the facts presented did not meet the very high standard for Colorado River abstention. See Opinion and Order, ECF No. 27 (Nov. 6, 2019).

jurisdiction and otherwise denies them. Further, the Court denies Tenney's motions for summary judgment in their entirety.

### PLAINTIFF FAZE CLAN'S MOTIONS

Plaintiff FaZe Clan moves for partial summary judgment in its favor. First, FaZe Clan moves the Court to enter judgment denying three of Tenney's affirmative defenses. Then, FaZe Clan moves for summary judgment in its favor on one of its breach of contract claims. [4] For the following reasons, these motions are granted in part and denied in part.

### I.   Tenney's Personal Jurisdiction Defense

FaZe Clan first moves the Court to enter summary judgment denying Tenney's first affirmative defense, which argues that this Court lacks personal jurisdiction over him. Tenney's Amended Answer at 9, ECF No. 32 (Dec. 13, 2019). This motion is granted.

The sole basis for this Court's personal jurisdiction over Tenney is the Gamer Agreement; but that agreement not only contains a mandatory forum selection clause in favor of New York, but also, as part of that clause, provides that "each Party consents to the jurisdiction" of the state and federal courts there. Gamer Agreement, Introduction: Miscellaneous. FaZe

---

[4] A March 20, 2020 stipulation between the parties rendered moot some additional summary judgment motions, not discussed herein. ECF No. 64.

Clan appears to concede that Tenney, who is a resident of Florida, would not otherwise be subject to general or specific personal jurisdiction in New York. See FaZe Clan's 56.1 Statement ¶ 15.

As discussed below, however, a forum selection clause ordinarily is binding and enforceable. Tenney's personal jurisdiction defense, therefore, is that the entire Gamer Agreement, including the forum selection clause, is void. The Court rejects this argument. As an initial matter, with certain exceptions noted below but not relevant here, New York law governs the interpretation and enforcement of the Gamer Agreement, see Gamer Agreement, Introduction: Miscellaneous. New York follows the federal rule from M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." See Brooke Grp. Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (N.Y. 1996); see also Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 381 & n.22 (S.D.N.Y. 2001) (explaining that both federal and New York law apply a "strong policy" in favor of enforcing forum selection clauses).[5]

---

[5] It is worth noting that, even if California law were to apply to this question, the California Superior Court, hearing FaZe Clan's motion for forum non conveniens, has already determined that the forum selection clause is enforceable under California

The record contains no facts that would raise a triable question as to whether the forum selection clause is unenforceable under this standard. The only such fact even suggested by Tenney is the bare assertion in his memorandum of law that he was not "specifically aware of the forum selection clause" or "focused on it at all," Tenney's Mem. of Law in Oppo. to FaZe Clan's Mot. for Partial Summary Judgment at 19, ECF No. 59 (Mar. 19, 2020). But even if true, that fact does not come close to suggesting that the clause was unreasonable.[6]

Nevertheless, Tenney argues that any grant of summary judgment in FaZe Clan's favor would be premature because the CLC action, in which decision remains pending, could potentially invalidate the entire Gamer Agreement, including the forum selection clause. This is unpersuasive. In situations like this, courts applying New York law have determined the enforceability of a forum selection clause separately from the validity of any foreign-law defenses to contract enforcement. See Sun Forest Corp., 152 F. Supp. 2d at 378-80 (holding that the New York

---

law. See Opinion at 8-9, Ex. G to Caixeiro Decl. Tenney raises no arguments that this holding was incorrect.

[6] Indeed, it is difficult even to accept Tenney's assertion that he was not aware of the forum selection clause, as FaZe Clan has produced an original version of the Gamer Agreement that contains Tenney's initials on each page of the document. Original Gamer Agreement, Ex. A to Anderson Decl. at 4-16.

court had personal jurisdiction over a defendant based on a forum selection clause, even while the defendant argued that the entire contract, including the forum selection clause, was unenforceable under Ontario law). Moreover, even if the CLC eventually rules in Tenney's favor on the TAA claim, there is no risk that this Court's personal jurisdiction ruling alone would unduly prejudice Tenney, because Tenney could simply assert the TAA as a defense at a later stage of this action. FaZe Clan's motion is accordingly granted.

## II. Tenney's Defenses and Counterclaims Under California's Talent Agency Act

FaZe Clan next moves for summary judgment in its favor on all of Tenney's defenses and counterclaims arising from the TAA, Cal. Lab. Code § 1700.4, et seq.[7] This statute prohibits anyone from "procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists," unless they have a license for doing so. Cal. Lab. Code. §§ 1700.4(a) & 1700.5. As explained above, the merits of Tenney's TAA claims

---

[7] Specifically, FaZe Clan moves for summary judgment denying: Tenney's first counterclaim (declaratory relief for violations of the TAA), his second counterclaim (de novo review of the California Labor Commissioner decision), his twenty-sixth affirmative defense (FaZe Clan's failure to exhaust administrative remedies before the California Labor Commissioner before filing this suit), and his twenty-seventh affirmative defense (invalidity of the Gamer Agreement under the TAA). See Tenney's Amended Answer at 13, 20-24.

are not properly before this Court. California law designates the CLC as the original tribunal for all TAA claims; Tenney may not waive his substantive and procedural rights under the TAA, should any apply.[8] See Cal. Lab. Code. § 1700.44. FaZe Clan now moves for summary judgment, however, on the threshold ground that all of its work on behalf of Tenney occurred outside of California, and that there is accordingly no possibility that the TAA will apply.

This motion raises the question of whether the CLC's original jurisdiction to adjudicate the merits of any TAA claim also extends to a question of whether the TAA applies in the first instance. The answer is, it does. In Styne v. Stevens, 26 Cal. 4th 42, 54 (Cal. 2001), the California Supreme Court interpreted § 1700.44(a) not only to vest the CLC with mandatory original jurisdiction over all disputes arising under the TAA, id. ("Disputes must be heard by the Commissioner, and all remedies before the Commissioner must be exhausted before the parties can proceed to the superior court."), but also, importantly, to vest the CLC with  "exclusive jurisdiction to determine his jurisdiction over issues colorably arising under the [TAA]." Id. n.6 (emphasis supplied). The TAA, therefore, "empowers [the CLC] alone to decide, in the first instance,

_____

[8] This is, accordingly, one area in this dispute where New York law does not provide the rule of decision.

whether the facts do bring the case within the Act." Id. (citing United States v. Superior Court, 19 Cal. 2d 189, 195 (Cal. 1941)). Styne firmly resolves this question in Tenney's favor.

In any event, Tenney also raises a genuine dispute of material fact as to whether FaZe Clan's work on behalf of Tenney occurred entirely outside of California. This Court denies FaZe Clan's motion on this independent ground as well.  Although it is undisputed that Willis Wiggin, the account director who procured sponsorship opportunities for Tenney, worked remotely from his home in Bergen County, NJ, Wiggin Decl. ¶¶ 1, 3-4, ECF No. 47-5 (Mar. 5, 2020), Tenney introduces evidence that Wiggin collaborated with three Los Angeles-based FaZe Clan employees, Richard Webb, Melissa Bowden, and Youssef Ali, on Tenney's account. Bowden Aff. ¶¶ 3-4, 7, ECF No. 61 (Mar. 20, 2020); Ali Depo. Tr. at, e.g., 28:1-30:9, 46:6-21, 47:19-49:11, ECF No. 65-1 (Mar. 20, 2020). Such activities by FaZe Clan on Tenney's behalf are potentially regulated by the TAA because they occurred in California. See Siegel v. Su, No. 2:17-cv-7203 (CAS), 2018 WL 1393984, at *7 (C.D. Cal. Mar. 16, 2018) ("[U]nlicensed personal managers with sufficient contacts in California are subject to the Labor Commissioner's jurisdiction.").

**III. Tenney's Defenses and Counterclaims Under California's Business and Professions Code**

FaZe Clan next moves the Court for summary judgment denying all of Tenney's counterclaims and defenses under § 16600 et seq. of California's Business and Professions code.[9] With certain exceptions, these statutes void contractual agreements not to compete. See id. § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). The Gamer Agreement contains three such restrictions on Tenney's right to compete with FaZe Clan, all lasting for as long as the agreement remain in force. Specifically, the Gamer Agreement provides, first, that Tenney grants FaZe Clan an exclusive license to his name and likeness, Gamer Agreement § 4(c); second, that Tenney agrees not to work for a gaming organization other than FaZe Clan or endorse any product not approved by FaZe Clan, id. § 5(a); and third, that Tenney grants FaZe Clan a right to approve any third-party request for his services, id. § 5(b). FaZe Clan's second claim for breach of contract asserts a violation of these provisions, and Tenney raises § 16600 as a defense.

---

[9] Under this heading, FaZe Clan moves for summary judgment on Tenney's fourth counterclaim (declaratory judgment for violation of § 16600), Tenney's fifth counterclaim (injunctive relief and restitution), and Tenney's tenth affirmative defense to Count Two of FaZe Clan's complaint, which alleges breach of the Gamer Agreement for work with other organizations. See Tenney's Amended Answer at 10, 26-30.

FaZe Clan now moves for summary judgment in its favor, which the Court denies. By their plain terms, these restrictions fall within the ambit of § 16600.[10] FaZe Clan responds that case law has interpreted this statute not to prohibit in-term restraints in contracts between independent contractors, but the Court reads the relevant case law otherwise. Although California courts have read § 16600 not to bar in-term restraints in a contract between employer and employee, e.g., Techno Lite, Inc. v. Emcod, LLC, 44 Cal. App. 5th 462 (Cal. Ct. App. 2020); Angelica Textile Servs., Inc. v. Park, 220 Cal. App. 4th 495 (Cal. Ct. App. 2013), these cases are inapposite because Tenney was not FaZe Clan's employee. Gamer Agreement, Introduction: Relationship of Parties ("Each Party is an independent contractor."). Outside that context, state and federal courts applying California law typically hold that § 16600 does bar in-term agreements not to compete. E.g., Kelton v. Stravinski, 138 Cal. App. 4th 941 (Cal. Ct. App. 2006) (reviewing a non-compete

---

[10] As with the TAA claims, California law provides the substantive rule of decision here, notwithstanding the Gamer Agreement's choice of law provision. As described above, FaZe Clan and Tenney stipulated to the California Superior Court that "[t]o the extent Turner Tenney has rights under . . . Cal Bus. & Prof. Code § 16600 et seq., California law applies to claims and defenses asserting those rights, if those claims and defenses are brought in New York." Stipulation, Ex. G to Caixeiro Decl. at Ex. 2. The Court reads this stipulation to have amended the Gamer Agreement's choice of law clause with respect to these issues.

provision in a contract between business partners). Indeed, in a recent non-precedential decision, a panel of the Ninth Circuit relied on Kelton to hold that § 16600 barred an in-term non-compete provision in a contract between two independent contractors, a filmmaker and an actor. ITN Flix, LLC v. Hinojosa, 686 Fed. App'x 441 (9th Cir. 2017) (memorandum). Although not binding on this Court, ITN Flix is strong persuasive authority. It is, first, consistent with the reasoning of Techno Lite that the exception for employer-employee contracts relates to the unique attributes of the employment relationship, i.e., the fact that "[d]uring the term of employment, an employer is entitled to its employees' undivided loyalty." 44 Cal. App. 5th at 471 (internal quotation marks omitted). Moreover, ITN Flix is consistent with the general instruction of the California Supreme Court that "section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 949 (Cal. 2008).[11] The Court

---

[11] In response, FaZe Clan cites cases for the proposition that employees and independent contractors are treated similarly for purposes of § 16600. See Guardian Life Ins. Co. of Am., Inc. v. Andraos, No. 07-cv-5732 (SJO) (FMO), 2009 WL 10675264, at *3 (C.D. Cal. Mar. 26, 2009); Leads Club, Inc. v. Peterson, No. 05-cv-1717 (JMA) 2005 WL 8173326, at *11 (S.D. Cal. Dec. 1, 2005). But all of these cases are, at best, inapposite, and more likely harmful to FaZe Clan's argument. None stands for the proposition that non-compete provisions lasting for the term of the contract are permitted in agreements between independent contractors;

therefore declines to read California law in FaZe Clan's favor on this issue.

### IV.  FaZe Clan's Breach of Contract Claim

Lastly, FaZe Clan moves for summary judgment in its favor on its first cause of action against Tenney, which alleges that Tenney breached the Gamer Agreement by failing to share a particular source of revenue with FaZe Clan.[12] Compl. ¶¶ 37-40.

Specifically, Epic Games, the maker of Fortnite, manages a program known as "Support-A-Creator," through which prominent Fortnite players, including Tenney, design certain products that are then offered for sale within the Fortnite platform. When a

---

all, rather, establish that § 16600 <u>prohibits</u> such agreements, both in the employer-employee and independent contractor contexts, when they survive the term of the contract.

For that reason, the Court also denies FaZe Clan's motion for summary judgment with respect to Tenney's counterclaims arising from the single non-compete provision of the Gamer Agreement that survives the termination of the contract, namely, FaZe Clan's right during the three months following the expiration of the contract to match any offer that another Fortnite team makes to Tenney. Gamer Agreement § 5(c). FaZe Clan's only argument here is that these counterclaims must be rejected because FaZe Clan has never exercised this matching right. But insofar as Tenney seeks only declaratory relief, he need not wait for FaZe Clan to exercise such right, especially because, as further detailed below, there is a genuine dispute of material fact as to whether the Gamer Agreement is still in force.

[12] Tenney, in effect, cross-moves on this issue through his argument, discussed below, that the Gamer Agreement expired before he received any of the revenue at issue here. As the Court explains in a subsequent section, that argument is unpersuasive.

Fortnite player buys products associated with a particular
creator's code, that creator receives a small percentage of
Epic's revenue. One such product is a "skin," akin to an outfit
worn by a player's likeness within the game. Tenney designed
skins that were offered for sale within Fortnite, earning him
millions of dollars of revenue over the course of 2019. Aff. of
Tenney in Oppo. ¶ 17, ECF No. 62 (Mar. 20, 2020); Tenney Depo.
Tr, Ex. A to Caixeiro Decl. at 118:24-119:5; 225:4-226:12. He
declined to share any of this revenue with FaZe Clan. Id.

FaZe Clan now argues that this constituted breach of the
Gamer Agreement by Tenney, and FaZe Clan moves for summary
judgment in its favor. The Gamer Agreement requires Tenney to
share specific percentages of various categories of "salaries,
earnings, fees, royalties, bonuses, share of profits, and gifts,
etc. . . . generated in connection with Gamer's Services," Gamer
Agreement, Introduction: Compensation, including, as here
relevant, fifty percent of "In-Game Merchandise," a term defined
only as "in-game/sticker." Id. Through this motion, FaZe Clan
argues that the skins constitute such merchandise for the
purposes of the Gamer Agreement.

Under New York law, the elements of a breach of contract
claim are (i) the existence of a contract; (ii) performance of
the contract by one party; (iii) breach by the other party; and
(iv) damages suffered as a result of the breach. First Investors

16

Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir.1998).
The only element in dispute here is the first, that is, whether
the Gamer Agreement obligates Tenney to split this revenue with
FaZe Clan.

"The primary objective of a court in interpreting a
contract is to give effect to the intent of the parties as
revealed by the language of their agreement." Compagnie
Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, 232
F.3d 153, 157 (2d. Cir. 2000). But because the term "in-game
merchandise" is vague, and because its definition as "in-
game/sticker" is totally unhelpful in discerning its meaning,
the Court must look to extraneous evidence of what the parties
intended.

The Court accordingly takes note of the overwhelming
evidence, introduced by Tenney, that the parties prior to this
litigation did not intend the term "in-game merchandise" to
encompass Tenney's sales through the Support-A-Creator Program.
First, Tenney cites deposition testimony from Richard Bengtson,
aka "FaZe Banks," a part-owner of FaZe Clan, that "we never had
collected the [Creator] code [revenue], and up to this point in
time, we had no intention" to do so. Bengston Depo. Tr. at
232:16-233:9, ECF No. 65-2 (Mar. 20, 2020). Second, and even
more persuasively, Tenney includes in the record a link to a
YouTube video, published by FaZe Clan on May 23, 2019, in which

a representative of the organization expressly states that the contract between the parties does not require Tenney to split his Support-A-Creator revenue. See FaZe Clan Video, ECF No. 65-3 (Mar. 20, 2020). Beginning at timestamp 1:25 of the video, the speaker states, "[w]e've seen a little miscommunication in terms of community understanding about 'in-game items' and what that might mean and what that applied to. Let us be very on-the-record right now: that has nothing to do with Support-A-Creator codes. . . . Anybody who thinks that has anything to do with dipping into the pockets of Support-A-Creator codes is sorely wrong." Id. At the same time, the video displays the written message that "Tfue's contract has nothing to do with Support-A-Creator. Tfue was signed in April of 2018, while Epic announced Support-A-Creator in October of 2018. In-game items refers to the application of the FaZe logo or brand in a video game . . . ." Id.

This, at the very least, is sufficient to raise a genuine factual dispute as to whether the parties intended the Gamer Agreement to cover the revenue stream at issue. Alternatively, the YouTube video raises a genuine dispute as to whether FaZe Clan is equitably estopped from collecting this revenue, particularly since the video was published as part of a public relations offensive to protect the organization's image in light

of its dispute with Tenney. FaZe Clan's motion for summary judgment on this breach of contract claim is accordingly denied.

## DEFENDANT TENNEY'S MOTIONS

Defendant Turner Tenney moves for partial summary judgment in his favor on FaZe Clan's three breach of contract claims, as well as summary judgment in his favor on FaZe Clan's claims for intentional interference with contract, intentional interference with a prospective business advantage, and unjust enrichment.[13] For the following reasons, these motions are denied.

### I.   FaZe Clan's Breach of Contract Claims

Tenney first moves for partial summary judgment in his favor on all of FaZe Clan's breach of contract claims. In Tenney's view, the Gamer Agreement expired on October 27, 2018, leaving FaZe Clan with no actionable claim for any purported breach occurring after that date, because FaZe Clan failed to satisfy a condition precedent for the Agreement's renewal.

By way of brief background, FaZe Clan and Tenney entered into the Gamer Agreement on April 27, 2018. The introductory section of the contract provided that its "term" would initially be for six months, i.e., until October 27, 2018, subject to an automatic, further extension of thirty-six months provided that

---

[13] As above, certain additional motions were rendered moot by the parties' March 20 stipulation, dismissing certain claims, counterclaims, and defenses. ECF No. 64.

each side satisfied certain conditions precedent. Gamer
Agreement, Introduction: Term. As relevant here, one such
condition was that FaZe Clan must pay a monthly fee of $2,000 to
Tenney "on a timely basis," defined elsewhere in the
introductory section to mean by the thirtieth day of each month
during the initial term of the agreement. Id.

It is undisputed that FaZe Clan did not make the $2,000
payment to Tenney on May 30, June 30, July 30, August 30, or
September 30 of 2018. See Defendant's Rule 56.1 Statement of
Undisputed Facts ¶ 9, ECF No. 50 (Mar. 6, 2020); Response to
Defendant's Rule 56.1 Statement of Undisputed Facts ¶ 9, ECF No.
58-1 (Mar. 19, 2020). On September 26, 2018, Tenney's then-
counsel sent FaZe Clan a letter providing notice that "FaZe Clan
has not met the required conditions to automatically extend the
Agreement for the 36-month Extended Term," though not
specifically mentioning the monthly payments. Non-Renewal Letter
at 1, ECF No. 51-2 (Mar. 6, 2020). FaZe Clan responded to Tenney
by letter dated October 15, 2018. Response Letter at 1, Ex. A to
Trink Decl., ECF No. 58-4 (Mar. 19, 2020). Although the letter
states that Tenney's claims are unfounded, id., on that same
day, as both sides acknowledge, FaZe Clan made five $2,000
payments to Tenney, corresponding to the monthly payments for
the months of May through September. Response to Defendant's
Rule 56.1 Statement of Undisputed Facts ¶ 9. FaZe Clan then paid

the $2,000 monthly fee for the month of October on November 20, 2018. Id.

In Tenney's view, these payments were not "timely" because they were not made by the 30th day of the corresponding month. This leads Tenney to argue that the agreement expired on October 27, 2018, thus extinguishing any claim for breach of the Gamer Agreement arising after that date.[14] But the Court need not, and does not, reach the question of whether the parties renewed the Gamer Agreement as a matter of law. This is because, at the very least, the evidence in the record raises a genuine dispute of fact as to whether the Gamer Agreement remained in force as a contract implied-in-fact. "Under New York law, the parties' conduct after the expiration of a written contract, including one party's continued rendition of services, the other's acceptance of those services and payment in accordance with the terms of the written contract can establish a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract." Andrews v. Sotheby Intern. Realty, Inc., 12-cv-8824 (RA), 2014 WL 626968, at *8

---

[14] Tenney also argues in his motion papers that the Gamer Agreement expired on October 27, 2018 for the independent reason that FaZe Clan did not notify Tenney of its intention to renew, as required by N.Y. Gen. Oblig. Law § 5-903. But the Court declines to consider the merits of this defense, finding that Tenney waived it by failing to plead it in his answer.

(S.D.N.Y. Feb. 18, 2014) (internal quotation marks and alterations omitted).

Here, notwithstanding Tenney's position in this litigation, the facts suggest that the parties continued to act until May 2019 as though the Gamer Agreement were in force. As explained in a declaration from FaZe Clan's CEO Lee Trink, for several months after the contract's purported expiration, Tenney continued playing on FaZe Clan's Fortnite team. Trink Decl. ¶ 7a, ECF No. 58-4 (Mar. 19, 2020). And, with FaZe Clan's permission, Tenney continued to use FaZe Clans' branding and logo in videos and social media posts. Id. ¶ 7e (citing corroborating screen shots dated as late as April 2019). FaZe Clan, for its part, continued promoting Tenney's social media profiles and publicizing his victories at video game tournaments, id. ¶¶ 7b & 7c, and continued providing services to Tenney including social media coaching and travel planning, id. ¶¶ 7f-7h. Moreover, other FaZe Clan "gamers" appeared in videos that Tenney posted online. Id. ¶ 7d. FaZe Clan also continued paying the monthly fees required by the Gamer Agreement to Tenney, and Tenney accepted this money. Id. ¶¶ 6, 7j (citing a bank receipt showing a $2,000 transfer dated January 21, 2020). It was not until the spring of 2019, roughly six months after the purported expiration of the Gamer Agreement, that Tenney publicly announced to his social media followers that he was no

longer affiliated with FaZe Clan. Tenney Depo. Tr. at 117:23-118:3, Ex. A to Caixeiro Opp. Decl., ECF No. 58-3 (Mar. 19, 2020).

All of this is more than sufficient to raise a genuine dispute of fact as to whether the Gamer Agreement remained in force as a contract implied-in-fact.

Tenney advances two further responses, but neither persuades the Court. First, Tenney argues that, even if the parties had entered into a new implied-in-fact contract, it would not necessarily have the same terms as the Gamer Agreement. See New York Tel. Co. v. Jamestown Tel. Corp., 282 N.Y. 365, 369-71 (N.Y. 1940) (holding that an implied-in-fact contract arising after the termination of a written contract need not have the same terms as the original contract). But New York Tel. Co. is distinguishable on the ground that, there, the parties' intent to terminate the original contract was much clearer than it was here, where all parties continued to act as though the original agreement were in effect for several months after its purported termination. Moreover, an inquiry into the terms of any contract implied-in-fact is premature, being relevant only to damages and not to liability.

Second, Tenney cites § 6(e) of the Gamer Agreement, a paragraph entitled "Obligations Upon Termination," which states, among other terms, that the "Company's use of Gamer's Services

23

after termination of the Agreement shall not be deemed a reinstatement or renewal of the Agreement without the written agreement of the parties hereto." In Tenney's view, this language precludes the Court from implying a contract in fact based on the parties' conduct after the purported termination of the Agreement. The Court, however, does not read this language so broadly. This provision may demonstrate an intent by the parties that a renewal of the agreement not be implied based on limited post-termination engagements between the parties, but the facts here demonstrate a far more extensive relationship between FaZe Clan and Tenney after October 2018, far surpassing what might be deemed merely "Company's use of Gamer's Services." Where, as here, the parties carried on as though the original agreement were still fully in force, the language of § 6(e) does not preclude an implied-in-fact renewal of the contract.

## II.  FaZe Clan's Non-Contract Claims

Finally, Tenney moves the Court for a grant of summary judgment dismissing three of FaZe Clan's non-contract causes of action.

### a. Intentional Interference with Contract

FaZe Clan's sixth cause of action accuses Tenney of intentionally interfering with contracts between FaZe Clan and eight "brand deal partners." Compl. ¶¶ 63-64. Specifically, FaZe Clan alleges that Tenney induced these brand partners to breach

their contracts with FaZe Clan and instead to do business directly with Tenney as part of his plan to create an independent Fortnite team. Compl. ¶ 64.

The elements of a tortious interference claim in New York are "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to the plaintiff." Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993). Tenney now moves for summary judgment, arguing that FaZe Clan has introduced no evidence as to the second and third elements. Tenney further relies on his own affidavit, dated March 5, 2020, in which he asserts that he was unaware of seven of FaZe Clan's eight brand partner contracts, and that he did not induce any of them to breach their contracts with FaZe Clan. Tenney Decl. ¶¶ 18-22, ECF No. 51 (Mar. 6, 2020).

The Court disagrees. As to Tenney's knowledge of the brand partner contracts, Tenney admitted in his deposition to knowing about "deals" between FaZe Clan and two of the brand partners, Wix and Digital Storm. Tenney Depo Tr. at 187:17-188:2; 193:11-14, Ex. A to Caixeiro Opp. Decl., ECF No. 58-3 (Mar. 19, 2020). Tenney's knowledge of these "deals" in general raises an inference that he was aware of the specific contracts. Moreover, FaZe Clan's Fortnite players wore jerseys with Nissan's logo on

them, according to a declaration from FaZe Clan's CEO. Trink
Decl. ¶ 12. This is also sufficient to raise a genuine issue of
fact as to whether Tenney was aware of the contract with Nissan.

As to Tenney's intentional inducement of the brand
partners' breaches, the Trink Declaration explains that FaZe
Clan lost its deal with brand partner Digital Storm when Tenney
"went to Digital Storm himself to negotiate [] his own, separate
sponsorship deal." Trink Decl. ¶ 10. The same declaration
provides further corroborating evidence for FaZe Clan's claim,
including that FaZe Clan's brand partnership with Wix was
delayed after Tenney reneged on an earlier promise to
participate. Id. ¶ 11. Additionally, Tenney's public statements
against FaZe Clan in May 2019 had a materially negative impact
on FaZe Clan's ability to maintain its relationships with these
brand partners, which suggests, in light of this context, that
Tenney may have intended for his public statements to induce the
brand partners to breach their contracts with FaZe Clan. See id.
¶¶ 9-17. FaZe Clan's claim for intentional interference with
contract may therefore proceed to trial.

> **b. Intentional Interference with a Prospective Business
>     Advantage**

FaZe Clan's seventh cause of action is that Tenney
intentionally interfered with the organization's prospective
business advantages in the form of additional brand partnerships

that FaZe Clan was negotiating at the time of its public split with Tenney. Compl. ¶¶ 68-70. In support of this claim, FaZe Clan alleges that Tenney intentionally undermined FaZe Clan's brand partnership deal with the mobile payments company Venmo, as well as other potential deals. Trink Decl. ¶¶ 14-15. The four elements of this cause of action are "(1) a prospective contractual relation or business with a third party; (2) defendants' interference with that relation; (3) [that] defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair or improper means; and (4) injury to the plaintiff." G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 253-54 (S.D.N.Y. 2001).

The issues here are much the same as those involved in the intentional interference with contract claim. Tenney again argues that FaZe Clan has not produced evidence that Tenney knew of and interfered with FaZe Clan's prospective brand partnerships, especially because this claim requires "a higher degree of interference" than does a claim for intentional interference with contract, G-I Holdings, 179 F. Supp. 2d at 254. But for similar reasons as above, the Court finds that FaZe Clan raises a sufficient factual dispute. FaZe Clan's strongest evidence is, again, the declaration of its CEO, Lee Trink. As to the prospective deal relevant to Count Seven, Trink states that FaZe Clan was in the process of negotiating a deal with Venmo

that was scheduled to launch around May 2019, but which fell
through due to Tenney's negative public statements about FaZe
Clan. Trink Decl. ¶ 14. Tenney again relies on his assertion in
his own affidavit that he was not aware of any prospective
business relationships between FaZe Clan and other brand
partners, and that he did not contact or induce any such
partners to terminate their relationships with FaZe Clan in
favor of doing business directly with him. Tenney Decl. ¶¶ 23-
25. But because a juror might arguably find FaZe Clan's evidence
to be more credible, owing to Trink's first-hand involvement in
the relevant negotiations, the Court finds that FaZe Clan has
raised a genuine dispute of material fact.

### c. Unjust Enrichment

Finally, FaZe Clan's ninth cause of action, pled in the
alternative to its breach of contract claims, is for unjust
enrichment. Tenney moves for conditional summary judgment in his
favor, arguing that, in the event that the CLC declares the
Gamer Agreement to be void under the TAA, such a holding would
also bar FaZe Clan from recovering under a theory of unjust
enrichment. Tenny relies on a footnote in Yoo v. Robi, 126 Cal.
App. 4th 1089, 1104 n.30 (Cal. Ct. App. 2005), which states that
the policy rationale of the TAA is so strong that the statute
forbids unlicensed talent agents from recovering from their
clients either in contract or in quasi-contract.

The Court disagrees with this rationale. The California Supreme Court in Marathon Entertainment, Inc. v. Blasi, 42 Cal. 4th 974 (Cal. 2008) appears to have read narrowly this point in Yoo, finding that the TAA permits partial recovery for an unlicensed talent agency operating in violation of the statute. Id. at 995-96. The reasoning of Marathon suggests, therefore, that this Court could award some recovery to FaZe Clan under a theory of unjust enrichment even if the Gamer Agreement is void under the TAA, and provided that FaZe Clan does not otherwise succeed on its breach of contract claims. Tenney's motion for summary judgment on this claim is accordingly denied.

## CONCLUSION

For the foregoing reasons, FaZe Clan's motions for summary judgment are granted in part and denied in part. Tenney's motions are denied in their entirety. The parties are directed to jointly call the Court by no later than Wednesday, June 24 to set a trial date.

SO ORDERED.

Dated: New York, NY
       June 17, 2020

_____
United States District Judge

29